UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
UNITED STATES OF AMERICA,                              :
                                                       :
    - v. -                                             :     S1 05 Cr. 1115 (WHP)
                                                       :
ULYSSES THOMAS WARE,                                   :
    a/k/a "Thomas Ware,"
                                                       :
            Defendant.
                                                       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**GOVERNMENT'S MEMORANDUM OF LAW
IN OPPOSITION TO MOTION TO DISMISS ON DOUBLE JEOPARDY GROUNDS**


                                                MICHAEL J. GARCIA
                                                United States Attorney for the Southern
                                                District of New York


ALEXANDER H. SOUTHWELL
STEVEN FELDMAN
Assistant United States Attorneys

    - Of Counsel -

# **TABLE OF CONTENTS**

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

The Court Should Deny The Dismissal Motion Because There
Is No Double Jeopardy Issue . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

   A.  Relevant Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

   B.  Applicable Legal Principles . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

   C.  Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                :

UNITED STATES OF AMERICA,            :

   - v. -                                        :      S1 05 Cr. 1115 (WHP)

ULYSSES THOMAS WARE,              :
      a/k/a "Thomas Ware,"
                                                :

           Defendant.
                                                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### GOVERNMENT'S MEMORANDUM OF LAW
### IN OPPOSITION TO MOTION TO DISMISS ON DOUBLE JEOPARDY GROUNDS

The Government respectfully submits this memorandum of law in opposition to the motion to dismiss the Indictment on double jeopardy grounds made by defendant on April 2, 2007. For the reasons set forth below, the motion should be denied in its entirety.

### ARGUMENT

**THE COURT SHOULD DENY THE DISMISSAL MOTION BECAUSE THERE IS NO DOUBLE JEOPARDY ISSUE**

    **A.**    **Relevant Facts**

On September 14, 2006, a superseding Indictment was returned by a grand jury sitting in the Southern District of New York charging Ware with one count of conspiracy to commit securities and wire fraud and one count of securities fraud. *United States v. Ware*, S1 05 Cr. 1115 (WHP). These counts allege that from around 2001 through around 2002, Ware, and his co-conspirator Jeremy Jones, engaged in a scheme to artificially inflate the market price of and market demand for the common stock of two companies – Service Systems International, Ltd. ("Service Systems"), a Canadian corporation that traded on the Over-the-Counter Bulletin Board

and purported to be in the environmental purification business and Investment Technology, Inc. ("Investment Technology"), a Nevada corporation that traded on the Over-the-Counter Bulletin Board and purported to be in the online gaming business.

Specifically, the Indictment alleges that in order to fraudulently induce investors to purchase Service Systems and Investment Technology stock, Ware, among other things, caused to be transmitted throughout the United States: (a) press releases containing materially false and misleading information concerning the business and plans of Service Systems and Investment Technology; (b) press releases with baseless stock price predictions that omitted the compensation Ware was receiving for promoting the stock of Service Systems and Investment Technology; and (c) press releases containing misrepresentations and omissions concerning the entity issuing the press releases. After artificially pumping up the price and volume of the Service Systems and Investment Technology stock through use of these fraudulent press releases, Ware then sold, and attempted to sell, stock in Service Systems and Investment Technology at a substantial profit.

Trial commenced January 16, 2007.[1] When Court ended on Thursday, January 18, 2007, Jeremy Jones was on cross-examination. On Sunday, January 21, 2007, the Government was informed, and then informed the Court and the parties, that Mr. Jones had been hospitalized in Atlanta and was not available to continue his testimony when trial resumed on January 22, 2007. *See* Ltr. to Court from AUSAs Southwell and Feldman dated Jan. 21, 2007; *see also* Trial Tr. 430-31 (noting Mr. Jones's coughing the previous Thursday and admission into the hospital on Sunday). At the Government's request, and with the consent of defendant, the trial proceeded

---

[1] At the final pre-trial conference on January 12, 2007, the Government noted for the Court and defendant that Jeremy Jones had a pre-existing medical issue. *See* 1/12/07 Tr. at 3.

with other Government witnesses on Monday, January 22nd. That evening, the Government sent the Court and defendant another update on Mr. Jones's condition, providing some additional detail concerning his condition – that he was suffering from renal failure and elevated blood pressure – and the current estimate as to when he might be released from the hospital.  *See* Ltr. to Court from AUSAs Southwell and Feldman dated Jan. 22, 2007.

The next morning, the Government advised the Court and the defendant that we were unable to obtain further information concerning Mr. Jones's condition and offered to provide the name and telephone number of the doctor.  Trial Tr. 616.  Ware then moved for a mistrial.  Trial Tr. 618.  Ware argued that it would be unduly prejudicial on the defense to wait for at least a week for Mr. Jones to resume cross-examination.  *Id.*  Ware then made clear: "So, the defense would move for a mistrial based on that." *Id.*  The Government opposed that request, asserting that it was premature.  Trial Tr. 620.  After soliciting alternative approaches, the Court noted that it thought Ware's "application has significant merit" but gave the Government additional time to ascertain better information about Mr. Jones's condition.  Trial Tr. 621-22.

After the lunch break on Tuesday, January 23rd, the Government provided physician progress notes related to Mr. Jones's condition to the Court and the defendant.  *See* Trial Tr. 740-42; Court Ex. 2.  The Government also reported on a conversation with Mr. Jones's treating physician, in which the doctor said that after Mr. Jones's blood pressure had gone down, it had gone back up, and that he was unable to predict when Mr. Jones might be released from the hospital.  Trial Tr. 740.  The defendant then moved again for a mistrial.  Trial Tr. 742-43.  Specifically, Ware's stand-by counsel argued for a mistrial after representing that Ware had given him authority to do so and after Ware made clear that "I authorize Mr. Becker to speak on

my behalf and I adopt his statements as my own." Trial Tr. 742.  Stand-by counsel then argued that continuing with testimony from other witnesses was "unproductive and prejudicial to Mr. Ware" and than the Court "should at this point declare a mistrial." Trial Tr. 742-43.  The Court gave both parties the opportunity to be heard and indicated that, although he was "inclined towards a mistrial," he would continue taking evidence that afternoon.  Trial Tr. 744.

Later that afternoon, Mr. Jones's treating physician faxed an affidavit which was provided to the Court and the defendant.  *See* Trial Tr. 796-97; Court Ex. 3.  Stand-by counsel, expressly with Ware's permission, immediately again moved for a mistrial at the side bar.  Trial Tr. 797.  The Court recessed the jury and heard again from defendant, through stand-by counsel, with Ware's express consent, after asking whether Ware had an application.  Trial Tr. 798-99; *see also* Trial Tr. 798 ("MR. WARE: Your Honor, I authorize Mr. Becker to speak on my behalf and adopt his statements as my own.  MR. BECKER: Your Honor, Mr. Ware and I have discussed what the appropriate remedy is in light of this affidavit . . . .").  The defendant then argued that because the affidavit made clear that Mr. Jones was critically ill and would need to be hospitalized for an indefinite period of time, there seemed to be two "conceivable remedies."  Trial Tr. 798-99.  The defendant argued that the Court could strike all of Mr. Jones's testimony and the exhibits admitted through Mr. Jones, but acknowledged that it would be impossible for the jury to parse that out so did not advance that remedy.  Trial Tr. 799.  The defendant then made clear, "So, it seems to us then that the only remedy at this point would be a mistrial."  *Id.*  The Court then inquired of Ware, "Mr. Ware, do you adopt those statements by Mr. Becker and move for a mistrial at this time?," to which Ware responded, "Yes, sir, I do." *Id.*  The Government urged the Court to at least wait until the following Monday to see if Mr. Jones's

condition improved.  Trial Tr. 799-800.  The Court then ordered a mistrial.  Trial Tr. 800-01.

The Court explained:

> Ultimately the decision whether to grant a mistrial is within the sound discretion of this court.  Based on the affidavit of Dr. Crenshaw, which has been generated apparently within the last hour, it's clear to this court, if not to the government, that Mr. Jones is not coming back to this courtroom any time soon.  And the notion of putting everybody's life on suspense for what is nothing other than a fool's errand is not something this court is going to do. . . . His future and his ability to testify in this court are uncertain, to say the least. . . . There is no constitutional issue presented here because the defendant has moved for a mistrial; and it seems to me not to grant it would simply raise potential Sixth Amendment issues, because the defendant has not had an adequate opportunity to complete his cross-examination of Mr. Jones. . . . I'm going to end the madness now by declaring a mistrial.

Trial Tr. 800-01.

By motion dated April 2, 2007, Ware moved to dismiss the Indictment alleging essentially that the Government had somehow procured the mistrial and thus that double jeopardy precluded the trial scheduled to commence April 16, 2007.

### B.      Applicable Legal Principles

The Double Jeopardy Clause of the Fifth Amendment protects a criminal defendant from successive prosecutions for the same offense.  U.S. Const., Amend. V.  As the Supreme Court has explained, however, "in the case of a mistrial declared at the behest of the defendant, quite different principles come into play.  Here the defendant himself has elected to terminate the proceedings against him, and the 'manifest necessity' standard has no place in the application of the Double Jeopardy Clause."  *Oregon v. Kennedy*, 456 U.S. 667, 672 (1982).  Indeed, it is well settled that "principles of double jeopardy do not bar a second prosecution following a mistrial declared at the request of the defendant."  *United States v. Millan*, 17 F.3d 14, 18 (2d Cir. 1994), absent a finding that the Government "actually intended to provoke a mistrial."  *Millan*, 17 F.3d

at 18; *see also United States v. Goldstein*, 479 F.2d 1061, 1065-66 (2d Cir. 1973) (defendant's consent to mistrial would have "ended the matter" of double jeopardy); *United States v. Gori*, 282 F.2d 43, 47 & n. 5 (2d Cir. 1960) (waiver or consent bars later double jeopardy claim), *aff'd*, 367 U.S. 364 (1961).[2]

As the Second Circuit explained in *United States v. Huang*, 960 F.2d 1128, 1133 (2d Cir. 1992):

> Where the original trial has not been completed and the defendant himself or herself has moved for or consented to a mistrial, however, a retrial is normally not barred. [A] motion by the defendant for a mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error. The reason for allowing a retrial in such circumstances is that [w]hen the defendant requests a mistrial, he is deemed to have deliberately elected to forgo his valued right to have his guilt or innocence determined before the first trier of fact. Thus, the Double Jeopardy Clause guards against government oppression; it does not relieve a defendant of the consequences of his voluntary choice to accept a mistrial.

*Huang*, 960 F.2d at 1133 (quotations and citations omitted); *see also United States v. Podde*, 105 F.3d 813, 816 (2d Cir. 1997) ("Consistent with those purposes, the law is clear that double jeopardy does not apply when a mistrial is declared at the request of the defendant. 'A defendant's motion for a mistrial constitutes "a deliberate election on his part to forgo his valued right to have his guilt or innocence determined before the first trier of fact,"' and he may not defend on double jeopardy grounds if the state seeks to determine his guilt before a second trier of fact.") (quoting *Oregon v. Kennedy*, 456 U.S. at 676).

As noted above, "[w]hen the Government engages in misconduct intended to provoke a

---

[2] It is equally well established that the failure of a jury to agree on a verdict constitutes manifest necessity, such that double jeopardy principles pose no bar to retrial. *Richardson v. United States*, 468 U.S. 317, 323-24 (1984); *see also Arizona v. Washington*, 434 U.S. 497, 509 (1978) ("[a] mistrial premised upon the trial judge's belief that the jury is unable to reach a verdict [has] long [been] considered the classic basis for a proper mistrial.").

mistrial, the Double Jeopardy clause protects the defendant from reprosecution." *Millan*, 17 F.3d at 18. The Supreme Court, however, has made clear that mere "bad faith conduct" or "harassment" on the part of the Government is insufficient to preclude reprosecution; rather, the Court must determine if the prosecution actually intended to provide a mistrial. *Kennedy*, 456 U.S. at 679; *see also United States v. Pavloyianis*, 996 F.2d 1467, 1474 (2d Cir. 1993) (requiring "deliberate" prosecutorial misconduct). "Negligence, even if gross, is insufficient." *Huang*, 960 F.2d at 1133.

Additionally, under Federal Rule of Criminal Procedure 26.3, prior to ordering a mistrial, "a court shall provide an opportunity for the government and for each defendant to comment on the propriety of the order, including whether each party consents or objects to a mistrial, and to suggest any alternatives."

### C.   Discussion

In a rambling and completely unfounded submission, which echoes his earlier submissions alleging vast conspiracies against him, Ware contends that the Government somehow caused Mr. Jones to be hospitalized and thus double jeopardy should prevent his retrial. This motion and all of the related relief sought should be denied as there is no legal or factual basis for the motions.

As an initial matter, the record is crystal clear that Ware himself moved for the mistrial. Not once, not twice, but three times. *See* Trial Tr. 618, 742-43, 797-99. Thus, the protections of the Double Jeopardy Clause are not applicable and do not bar Ware's reprosecution. *Kennedy*, 456 U.S. at 679; *Millan*, 17 F.3d at 18. Moreover, although Ware's motion for a mistrial was express, it also may be implied from the totality of the circumstances based on Ware's failure to

object on a number of occasions.  *Goldstein*, 479 F.2d at 1067.

The Government also did not "goad" the defendant into seeking a mistrial, did not suborn perjury from Mr. Jones, and did not "allow" Mr. Jones to "flee the jurisdiction."  Ware offers nothing in the way of facts to support his spurious allegations and they should be summarily rejected.  The record – including an affidavit from Mr. Jones's treating physician, *see* Court Ex. 3 – also makes it clear that Mr. Jones was in fact quite sick and no further inquiry was necessary (or requested by Ware).  Finally, Ware now offers a number of purported alternatives to the mistrial – a number of which are completely baseless – but he did not offer these alternatives at the time the Court elicited alternatives to the situation and the Court did sufficiently consider alternatives to declaring the mistrial.

Ware's motion to dismiss the Indictment based on double jeopardy grounds therefore should be denied.

## CONCLUSION

For the foregoing reasons, the Government respectfully submits that the Court should deny defendant's motion to dismiss in its entirety.

Dated:   New York, New York
         April 10, 2007

Respectfully submitted,

MICHAEL J. GARCIA
United States Attorney
Southern District of New York

By:  /s/
ALEXANDER H. SOUTHWELL
STEVE FELDMAN
Assistant United States Attorneys
(212) 637-2417 / 2484