06/08/2017 RECUSAL/DISQUALIFICATION &  MOTION TO DISMISS VOID INDICT       1/16

Case No. 05-cr-1115 (SDNY) (WHP)
U.S. v. Ware, et al.

Submitted by Petitioner

*Ulysses D. Ware, Esq.*

Ulysses T. Ware, Esq.
Reg. No. 56218-019
Beamont Complex (low)
P.O. Box 26020
Beaumont, TX 77720
Filed this 8th day of June 2017 pursuant to Houston v. Lack

LEGAL MAIL

In the United States District Court
For the Southern District of New York

United States v. Ware

EMERGENCY MOTION

———

Petitioner's Motion pursuant to 28 USC §§455(a) and (b) to Disqualify
William H. Pauley, III for judicial bribery, and Motion to Dismiss Indictment
and Motion to Disqualify the Entire United States Attorneys Office (SDNY) for Fraud.

———

Comes now the Petitioner and moves this Court pursuant to 28 USC §§455(a),

(b), and the Due Process Clause of the Constitution, (the "Law"), to disqualify

William H. Pauley, III for actual judicial bias, prejudice, conflict of interests,

and judicial bribery, a judicial structural error of the first magnitude -- the

bribery of Pauley by SEC lawyer Spencer C. Barasch, via Pauley's alma-mater, Duke

School of Law, via Barasch's law firm, Andrews & Kruth, LLP, during the pendency

of the 05-cr-1115 proceedings, for the entry of Dkt. #17 (May 19, 2006 Discovery

Order), and the Pauley Bribe Order, Dkt. #35 (January 8, 2007 obstruction of jus-

tice and witness tampering order), collectively, (the "Pauley Bribe Orders"), see

Dkt. ##84 and 88 (05-cr-1115 (SDNY)) for details of Pauley's bribery.

A.    Declaration of Facts.

Petitioner incorporates by reference as if set forth herein, in heac verba,

and make the same a part hereof, Ex. #1-1 and Ex. #1-2 in 12-cv-4397-TWT (NDGA)

as the factual basis to disqualify Pauley for bribery. A per se judicial structural

error. See Arizona v. Fulminante, 499 U.S. at 308-12; cf., Dkt. ##84, 88 (05-cr-

1115).                              (1)

B.      The legal standards for disqualification of Pauley for bribery and fraud.

Pursuant to federal law, 28 USC §§455(a), (b), and (e) and the Constitution's Due Process Clause, Pauley being bribed by SEC and DOJ lawyers, and federal judges for the performance of judicial functions and entry of the Pauley Bribe Orders, as a matter of law Pauley actually had and currently has a substantial, personal, penal, and pecuniary interest in the outcome of the adjudication of the merits of pending pleadings in the court. Accordingly, see Tumey v. Ohio, 273 U.S. 510, 523 (1927) and In re IBM Corp., 45 F.3d 641 (2d Cir. 1994) Pauley is per se automatically disqualified from all judicial involvement, nunc pro tunc, September 2005.

Furthermore, Pauley is named as an adverse party-opponent in fraud on the court, Rule 42(a)(1) criminal contempt, and other matters currently pending in the district court. The outcome of which will have disasterous and devastating penal and pecuniary consequences and effects on Pauley's and his unindicted coconspirators' interests, cf., 28 USC §455(e). Pauley has a palpable actual conflict of interest in favor of his own personal interest to such an extent an "unconstitutionally high probability of bias" exist such that "actual bias need not be proved." see Caperton v. A.T. Massey Coal Co., 556 U.S. 868, 887 (2009). And Pauley has exhibited pre-trial, trial, and post-trial, an egregious, callous, and execrable "deep-seated antagonism" towards Petitioner that any reasonable disinterested person would agree "fair judgment" in the proceedings by Pauley was impossible.

Furthermore, Pauley being named as an adverse-party opponent in numerous pleadings before the district court, Pauley was required, sua sponte, to have disqualified himself from all judicial proceedings. In re Murchison, 349 U.S. 133, 135 (1955) ("To this end no man can be a judge in his own case ....").

The Due Process Clause expresses the public policy of the United States "clearly requires a fair trial in a fair tribunal before a judge with no actual bias against the defendant or interest in the outcome of his particular case." Bracy v. Gramley, 520 U.S. 899, 904-05 (1997).

In the proper case §455 should be applied "retroactively." Liljeberg v. Health Serv. Acq. Corp., 486 U.S. 847 (1988); and if there is a critical factual dispute in regard to the recusal record the issue(s) should be resolved via an evidentiary hearing. Barksdale v. Emerick, 853 F.2d 1359, 1362 (6th Cir. 1988) and Easley, 853 F.2d at 1358 (same).

The Court is Arizona v. Fulminante, 499 U.S. 279, 308-12 (1991) explained that an actually biased or prejudiced trial judge constituted an egregious judicial structural error, a constitutional error of first magnitude. Which contaminated the entire proceedings. Was not subject to "harmless error analysis." And if established required "automatic reversal" of all judgments and orders. Id. at 308-12.

C.   Discussion, Analysis, and Conclusion.

The trial record in the district court, see Dkt. ##84 and 88, and Ex. ##1-2 and 1-2 (12-cv-4397-TWT (NDGA)), all undisputed by Pauley, and therefore are not in controversy in this proceeding establish that Pauley, was offered, paid, and/or promised a bribe, pay off, favor, illegal gratuity, donation, contribution, and other pecuniary benefits, (the "Money"), for the performance of or nonperformance of judicial functions apropos the 05-cr-1115 proceedings. Pauley was offered and paid the Money by Barasch, Southwell, Norris, Garcia, Feldman, Goldin, Kelley, Peikin, Sand, Andrews & Kruth, LLP, Dawson, the SEC, the DOJ, Thrash, Murphy, and others, see Dkt. #84 (05-cr-1115). Pauley was paid the Money to hide, cover up, suppress, and conceal material Brady exculpatory and impeachment evidence, (the "Brady Evidence"), see ¶33 of 03-0831 (D. NV) bogus, frivolous, and unsigned complaint, Dkt. #1 (07/14/2003 submitted but not legally filed or docketed lacking a Rule 11(a) signature by an admitted lawyer).

Pauley was paid the Money, via his alma-mater, Duke School of Law, via Barasch's law firm, Andrews & Kruth, LLP, to hide, conceal, and cover up the fact that both Norris and Barasch were in 2007 under civil and criminal investigation

by the SEC and DOJ for professional misconduct and unethical behavior. See Norris
v. SEC, 675 F.3d 1349, 1351-53 (Fed. Cir. 2012) (Norris admitted to being mentally
insane and suffering from multiple mental illnesses in and before 2007).

Pauley was paid the Money by the DOJ and SEC lawyers, and federal judges
to cover up, suppress, hide, and conceal the ongoing judicial and prosecutorial
corruption conspiracy then ongoing in the 03-0831 (D. NV) and 05-cr-1115 proceed-
ings; and to cover up, conceal, and suppress ¶33 of the 03-0831 (D. NV) bogus,
frivolous, and unsigned complaint's Art. II, §3 Executive Branch's litigation
position, (the "Litigation Position"). See also concealed SEC Brady email of Norris.

Pauley was paid the Money, via Duke School of Law, the conduit and facilita-
tor of the bribery of federal judges (i.e., Pauley, Peck, Evans, Tjoflat, and
others both known and unknown) to suppress, hide, and conceal from the public
and the 05-cr-1115 trial jury the indisputable fact, an Art. II, §3 unreviewable
and nonjusticiable ipso facto, dispositive, binding judicial admission that the
United States and its privies as of July 14, 2003 had conceded that INZS and SVSY's
press releases, (the "Immaterial Press Releases") all were (1) immaterial, civilly
and criminally, and (2) exempt and/or immune 'subject matter' not within the scope
of Article III judicial review in any proceeding, in any court. Federal or state.
The Art. II, §3 Litigation Position expressed in ¶33 of the 03-0831 complaint
was sacrosanct, absolutely final, not subject to any judicial revision, and consti-
tuted an Executive Branch political decision outside the federal or state courts'
lawful 'subject matter' jurisdiction. Nixon, 418 U.S. at 693.

INZS and SVSY's Immaterial Press Releases as of July 14, 2003 as a matter
of, ipso facto, necessarily constituted Brady exculpatory/impeachment evidence
within the scope of the May 19, 2006, Dkt. #17, Discovery Order and the Brady
doctrine. Pauley was paid the Money to aid and abet and in conspiracy with the
DOJ and SEC lawyers' and federal judges' criminal acts to willfully violate and

(4)

impede, and obstruct the lawful compliance with a court order, Dkt. #19, the Disco-
very Order, 18 USC §§2, 201(b), 241, 242, 371, 401(3), 1509, 1503, and 1512; and
the Constitution's Due Process Clause's Brady doctrine. See 18 USC §§401(3), 1509.

Pauley was paid the Money, bribed, to enter the January 8, 2007, Dkt. #35,
Pauley Bribe Order, see Dkt. #84 (05-cr-1115), as the illegal means and method
to criminal violate Petitioner's "fundamental right" to compel and present as
witnesses the 03-0831 (D. NV) SEC lawyers having Brady exculpatory and impeachment
evidence apropos (1) the INZS and SVSY Immaterial Press Releases and (2) the United
States July 14, 2003 Article II, §3 political decision Litigation Position.

Pauley was paid the Money, was bribed, by Dawson, Southwell, Barasch, Norris,
Peikin, McKown, Kelley, Garcia, Goldin, Feldman, Fish, Douvas, Bharara, Thrash,
Sand, Murphy, Hannan, Webster, Martin, Koratash, Fairchild, Makol, and others
collectively, (the "Criminals"), to suppress, hide, cover up, conceal by trickery,
fraud, deceit, and other nefarious means and methods all access by Petitioner
to subpoena and compel via the Sixth Amendment's Compulsory Process Clause, each
of the Criminals to give sworn testimony in 05-cr-1115. Each testifying that INZS
and SVSY's Immaterial Press Releases were exempt and immune 'subject matter' not
subject to civil or criminal process. Each Criminal would have also testified
that the United States as of July 14, 2003, given the Art. II, §3 Litigation Posi-
tion's necessary legal implications lacked all probable cause to (1) seek arrest
warrants or (2) indict Ulysses T. Ware or Jeremy Jones for (i) securities fraud
or (ii) conspiracy to commit securities fraud with respect to the Immaterial Press
Releases. See ¶33 of the July 14, 2003 03-0831 (D. NV) bogus and unsigned DOJ-
SEC complaint. The USA's Art. II, §3 unreviewable litigation position.

Given the Immaterial Press Releases are currently exempt or immune from
all Article III judicial review or jurisdiction, see Nixon, 418 U.S. at 693, exempt
or immune as of July 14, 2003, as a matter of law, ipso facto, Article III juris-

diction is lacking in all federal and state courts, and agencies. Id.

It is a fundamental axiom of constitutional law, see Baker v. Carr, 362
U.S. 186, 217 (1962) and the Confiscation Cases 7 Wall 454, 456-59 (1869) that
the Executive Branch of the Federal Government has sole and exclusive control
over and authority to determine the litigation position of the United States in
regard to any fact, issue, or claim. In any trial or appellate proceeding. see
Heckler v. Cheney, 470 U.S. 821, 831 (1985), United States v. Batchelder, 442
U.S. 114, 123-24 (1979); and SEC v. Citigroup Global Mkts., Inc., 752 F.3d 285,
297-98 (2d Cir. 2013) (pooler, J.) (judiciary has no authority and "clearly" abused
its discretion in challenging the executive branch's discretion in what charges
to bring against the defendant. District court reversed and remanded to approve
SEC's settlement on terms determined by SEC, and not court, to be fair).

It is indisputable in the Trial Record that Pauley was paid the Money, was
bribed, by the Criminals, see Dkt. #84 (05-cr-1115) to obstruct, impede, frustrate
Petitioner's access to Brady evidence, and to impede, delay, and obstruct Petiti-
oner's right to enforce the Discovery Order's terms and "continuing" conditions
pursuant to Fed. R. Crim. P. 42(a)(1) and Fed. R. Civ. P. 70(e). See Dkt. #17 at 5-8.

Pauley was paid the Money, bribed, by the Criminals to not enforce the Disco-
very Order's terms and conditions, see Tr. 5-8, (May 19, 2006, Dkt. #17, Pauley,
J.) and order each of the Criminals to be subpoenaed and compelled to testify consis-
tent with the United States July 14, 2003 Art. II, §3 Litigation Position taken
at ¶33 of the 03-0831 (D. NV) unsigned complaint. Exempting and immunizing INZS
and SVSY's Immaterial Press Releases from all federal or state court judicial
review. Nixon, 418 U.S. at 693; Citigroup, 752 F.3d at 297-98.

Ergo, applying the legal standard of Steel Co., 523 U.S. at 93-95, INZS and
SVSY's Immaterial Press Releases, immunized and exempted by Art. II, §3 political
authority cannot form the basis of a live Art. III "case or controversy." Thus,

at this stage of the proceedings no extant Article III "case or controversy" exist

apropos INZS and SVSY's Immaterial Press Releases, nunc pro tunc July 14, 2003.

See ¶33 of the unsigned 03-0831 (D. NV) bogus and frivolous DOJ/SEC's complaint.

Even being paid the Money, bribed, Pauley, a purported Art. III federal

udge, as well as Kearse, Sack, Hall, Newman, Thrash, Julie E. Carnes, Ed Carnes,

Preska, Sweet, Frank M. Hull, Beverly B. Martin, Tjoflat, Marcus, Jordan, Wilson,

Dubina, Fay, Jill Pryor, William Pryor, Rosenbaum, Griesa, McMahon, Peck, Dolinger,

Dawson, the State Bar of Georgia, the Supreme Court of Georgia, the Admin. Office

of the U.S. Courts, the FBI, the SEC, the Bureau of Prisons, or other privies

of the United States, including the Office of the Solicitor General, (the "OSG"),

all are bound absolutely by the Executive Branch's July 14, 2003 Litigation Posi-

tion in regard to INZS and SVSY's Immaterial Press Releases. Confiscation Cases, Id.

Ergo, ipso facto, and by necessary legal implication an acquittal on the

merits of all charges in 05-cr-1115 (SDNY) and prohibiting Sweet, J. in 04-cr-

1224 (SDNY) from basing his bogus and VOID consecutive sentence on the VOID AB

INITIO 05-cr-1115 proceedings. Baker, 362 U.S. at 217; Federated, 452 U.S. at 398-99.

Pauley's judgments and Sweet's judgments all are null and VOID AB INITIO.

The Indictment failed to charge an "offense" -- securities fraud and conspi-

racy to commit securities fraud apropos the Immunized and Exempt 'subject matter'

i.e., not an extant Art. III "case or controversy" within the scope of Art. III

judicial review -- and therefore pursuant to 18 USC §3231 the district court (Pau-

ley, J.) lacked all jurisdiction to enter final judgment on the merits of the

VOID INDICTMENT's charges (claims). see Steel Co., 523 U.S. at 93-95; Nixon, 418

U.S. at 693; and Confiscation Cases, Id. at 456-59.

Not later than June 22, 2017 all judgments must be vacated, set aside, and

reversed; the VOID Indictment dismissed with prejudice; an Order entered directed

to the Bureau of Prisons to immediately release Ulysses T. Ware, Esq. from all

custody 'related to' 'premised on' or in any way in whole or in part 'dependent

on' any charges based on the Immaterial Press Releases, i.e., exempt or immunized

'subject matter' not within the scope and purview of Article III jurisdiction

or review. Else see 28 USC §2241(c)(1) habeas corpus statute.

                                    II.

A.    Recusal of U.S. Attorneys Office (USAO) for fraud on the court and conspiracy
      to obstruct justice, conspiring with the district judge, Pauley, J. and
      other federal judges and prosecutors, and private lawyers.

Contentions.

      Petitioner contends that the Trial Record developed sub judice is undisputed

by the USAO and its lawyers that the district judge, Pauley, J., colluded, conspi-

red, aided and abetted, and acted in concert with the USAO to criminally violate

the May 19, 2006, Dkt. #17, Discovery Order, to criminally violate Petitioner's

fundamental right to due process of law, the right to a neutral prosecutor, the

fundamental right to an impartial and unbiased trial judge, the fundamental right

to subpoena and compel the SEC's lawyers involved in 03-0831 (D. NV) lawsuit to

provide Brady exculpatory and impeachment evidence, and the fundamental right

to be free from all criminal indictment in the absence of probable cause, collec-

tively, (the "Fundamental Rights").

      Petitioner asserts that the USAO and its lawyers' egregious, callous, insi-

dious prosecutorial misconduct, and conspiracy with the trial and appeals judges

(Kearse, Sack, Hall, and Newman) constituted a deliberate, intentional, criminal,

and bad faith 'plan and scheme' to obstruct justice and tamper in the "adminis-

tration of justice"; and constituted an actual conflict of interest where the

USAO's lawyers will be both witnesses and advocates in regard to the proceedings

before the district court and on appeal. see United States v. Badamenti, 794 F.2d

821, 828 (2d Cir. 1986); see also United States v. Basciano, 763 F. Supp. 2d 305,

314 n. 8 (EDNY 2011) ("An entire U.S. Attorney's Office should only be disqualified

if ever, when special circumstances [i.e., bad faith, perjury, bribery, fraud, collusion, conspiracy, fabricated evidence, obstruction of justice, fabricated indictment, Brady violations, fabricated Rule 11 plea, etc] demonstrate that the interest of justice could only be advanced by this drastic remedy." (emphasis added).

Petitioner asserts that the cummulative instances of criminal obstruction of justice and prosecutorial misconduct committed by the USAO's lawyers and the federal judges' apropos the 04-cr-1224 and 05-cr-1115 proceedings constitute "special circumstances" defiling the judicial machinery to such an extent the "interest of justice" cannot be advanced in the public's interest. Especially where several of the USAO's lawyers are guilty of criminal obstruction of justice, aiding and abetting, and conspiracy to bribe a federal judge(s), i.e., Pauley, Sweet, Sand, Thrash, Mullins, Tjoflat, Evans, Peck, Dolinger, Kearse, Sack, Hall, Jones, Newman, Hawthorn, Crone, McMahon, Griesa, Preska, and other federal judges 'paid off' and/or bribed by the USAO's lawyers to cover up, hide, suppress, and conceal all evidence of USAO lawyers' crimes in 04-cr-1224 and 05-cr-1115 proceedings.

Kearse, Sack, and Hall in conspiring with the USAO rigged and fixed and defiled the judicial machinery of the appellate process to impede, delay, and obstruct Petitioner's fundamental right to due process of law. Done by implementing bogus and risible process and procedures, i.e., the risible "motion for leave to appeal" -- a determination on the merits -- where all courts currently as a matter of law, and by necessarily legal implication are prohibited from any and all Art. III judicial review of any issue or claims resolved actually or necessarily, by the United States July 14, 2003 Litigation Position in regard to the INZS and SVSY's Immaterial Press Releases. Exempted and Immunized 'subject matter' not within the scope of any alleged 'merits review' by the Court of Appeals apropos the moot 05-cr-1115 proceedings. see Nixon, 418 U.S. at 693; Baker, 362 U.S. at 217.                              (9)

All Article III federal courts and all state courts are prohibited by the
'separation of power' doctrine from exercising any Art. III jurisdiction, even
in a bogus alleged 'merits review' by the Court of Appeals with respect to the
05-cr-1115 proceedings. Notwithstanding the August 18, 2009 superseding final
judgment on the 'merits' entered in 07-5670-Cr (XAP) (2d Cir.), Gov.-I: a final
judgment on the merits of (1) materiality, (2) market efficiency, and (3) insuffi-
cient government trial evidence. In favor of Petitioner. Protected by res judicata
and the preclusive effect of the Double Jeopardy Clause and 'separation of power'
preclusive estoppel. Nixon, 418 U.S. at 693. See also Federated, 452 U.S. at 398-401.

The cummulative effect of the USAO's conspiracy to obstruct justice by cons-
piring with the trial and appellate judges' and defendants' lawyers (Bachner,
Garland, Samuel, Arora, and Kirton) by having defendant Jeremy Jones enter a bogus
Rule 11 plea to a nonoffense, recommended by his CJA lawyer Kirton, who was cons-
piring with the USAO's lawyers (Southwell, Goldin, Feldman, and Garcia) is just
the type of "special circumstance" the federal courts view as justification for
disqualification of the entire USAO: the entire management structure, and rank
and file all were complicit in the conspiracy to obstruct justice.

Furthermore, the USAO's management structure orchestrated an illegal plan
and scheme to defile the independence of the grand jury process by conspiring
with FBI special agent David Makol. Makol with the consent and express knowledge
of the USAO, cf., with ¶33 of 03-0831 complaint, the USA's Art. II, §3 Litigation
Position, judicially admitting and conceding INZS/SVSY's Press Releases were in
fact immaterial. And by implication not civilly or criminally actionable; nor
permitted to form the factual basis for Makol's and the USAO's bogus and fabricated
arest warrants for Ware and Jones. Nor were the Immaterial Press Releases permitted
to be used by the USAO to form probable cause for  VOID AB INITIO 05-cr-1115 Makol
perjured Indictment. Perjury suborned by the USAO's lawyers and management struc-
ture.                                   (10)

The USAO's lawyers and management structure colluded, conspired, and obst-
ructed justice by aligning and merging the Executive Branch with the Judiciary
in violation of the 'separation of power' doctrine. The Executive and Judicial
branches merged their individual constitutional interests, combined their discre-
tion, and criminally violated due process of law by having Pauley and the appellate
judges' rather than exercise independent discretion and judgment, effectively func-
tion as agents of the Executive Branch, as prosecutors rather than Article III
judicial officers. Cf., Baker, 362 U.S. at 215-17 (judiciary incompetent to execute the laws).

As an example of the illegal merger of functions, Pauley conspired with
the USAO's lawyers, acted as a member of the USAO's trial team and aided and abet-
ted the criminal violation of the Discovery Order, Dkt. #17. Pauley assisted the
USAO by concealing and suppressing the SEC lawyer Jeffrey B. Norris' email to
Jeremy Jones. Brady exculpatory evidence subject to the Discovery Order's terms
and conditions. Pauley and the USAO conspired with the SEC's lawyers and concealed,
hid, suppressed, and covered up Norris' email to Jones, (the "SEC Brady Email"),
which confirmed the SEC did not believe there was any conspiracy between the defen-
dants; and confirmed that the USAO had deliberately and intentionally misled a
federal grand jury by perjured and fabricated evidence of a conspiracy while know-
ing there was no conspiracy apropos the Immaterial Press Releases.

Pauley and the USAO jointly selected government agent Gary G. Becker, Esq.,
as appointed 'stand-by' counsel. Becker was appointed by the USAO and Pauley to
act as a mole and provide the USAO access to Mr. Ware's confidential trial strate-
gies. Becker was appointed by Pauley and the USAO after Mr. Ware terminated govern-
ment agent, special AUSA Michael F. Bachner, Esq., Mr. Ware's retained covert
government agent hired by Edward T.M. Garland, Esq. on behalf of the USAO and
Pauley in furtherance of the criminal conspiracy Jim Crow racially-motivated hate
crime 05-cr-1115 and 04-cr-1224 prosecutions. Bachner's perfidy forced Mr. Ware
into pro se status.                    (11)

Mr. Ware fired SAUSA Bachner after Bachner adamantly refused to file a motion
to suppress all USAO evidence obtained from the SEC's illegal and VOID 03-0831
(D. NV) litigation. Bachner after being retained and paid by Mr. Ware then refused
to as agreed to file the motion to suppress. Bachner informed Mr. Ware that he
was refusing to file the motion to suppress because, "the [USAO] and Pauley will
punish me ... let me work you out a good plea deal ... Southwell will take 4-5
years ... if you go to trial in this case [      ] Pauley is going to kick your
ass big time ... he is not built like that ... everyone up here knows Pauley is
a fool ... you better let me help you, else Pauley is going to punch your ticket
... you can count on it ...." (emphasis in original). (the "Bachner Confession").

If called as a witness at the evidentiary hearing SAUSA Bachner, Becker,
Kirton, Garland, Arora, Samuel, Southwell, Goldin, Feldman, Norris, Dawson, and
others all will testify that Pauley organized, aided and abetted, colluded, and
conspired with the USAO and private lawyers to violate the Discovery Order, Dkt.
#17; Pauley organized and assisted the USAO's trial strategy; Pauley and the USAO
conspired to have Jones' lawyer, Kirton, pressure and bully Jones into entering
a bogus Rule 11 plea to an nonexistent conspiracy. A bogus conspiracy completely
impeached and discredited by Norris' SEC Brady Email, Brady evidence subject to
the Discovery Order. Pauley and the USAO needed Jones to plead guilty to the bogus
conspiracy charge (18 USC §371), to give Pauley cover and as pretext to allow
the USAO's trial witnesses (the black nigger Stooges, Jones, Williams, Epps, Sadler
and Jackson), collectively, (the "Nigger Stooges"), to commit perjury knowingly,
and suborned by the USAO. The admission of suborned hearsay fabricated testimony.

The USAO, the SEC, and the federal judges' conspired to and in fact did
bribe, pay off, and/or provide Pauley with a financial benefits via Duke School
of Law, Pauley's, Peck, Evans, Tjoflat, and SEC lawyer Barasch's alma-mater, for
Pauley, Peck's, Evan's, Tjoflat's, and others criminal obstruction of justice

(12)

service, e.g, see 15-12568-F and 16-13978-G (11th Cir.) for Tjoflat's risible
and pathetic 11 USC §1109(b) fraud apropos GFMT and Mr. Ware's Rule 9024/60(d)(3)
fraud on the court motions; see also Supreme Court 16-5858 deliberate fraud on
the court in regard to the Hobbs Act Inside-Trading conspiracy, 02-cv-2219 (SDNY)
and the 03-93031-mhm (BC NDGA) Chapter 11 bankruptcy fraud conspiracy covered
up, hid, suppressed, and concealed by the Supreme Kangaroo Court of the United
States and its "best and brightest" Justices."

Pauley and the USAO had to suppress, conceal, hide, and cover up ¶33 of
the 03-0831 (D. NV) complaint's USA's Art. II, §3 political decision Litigation
Position. Why? Because on July 14, 2003 the United States on behalf of its privies,
the SEC, the FBI, the BOP, the AOC, and the DOJ and its lawyers, judicially admit-
ted and conceded INZS/SVSY's Press Releases were in fact immaterial. Which comple-
tely impeached and was dispositive to the DOJ, Pauley's, and the USAO's bogus
arrest warrants, Indictment, grand jury perjury, bogus and VOID trial, VOID convic-
tion, and VOID sentence. That is why Pauley was bribed by the SEC, the USAO, the
DOJ, and federal judges' to cover up ¶33 of the 03-0831 (D. NV) complaint. Which
was fatal to the Nigger Stooges' known and suborned perjured trial testimony fab-
ricated by Pauley, the USAO, the DOJ, the SEC, and the Supreme Court's "best and
brightest" Justices'. See Tr. 5-7 of Dkt. #17, May 19, 2006 Discovery Order.

Just imagine had Mr. Ware been permitted to exercise his Sixth Amendment
"fundamental right" to subpoena and compel the four (4) white SEC lawyers involved
in the preparing the DOJ-SEC's bogus unsigned complaint's ¶33. Each white SEC
lawyer, before an all hand-picked white jury, hand-picked by Pauley and the USAO.
Each white SEC lawyer (Barasch, Norris, Martin, Webster, Hannan, et al.) and the
white federal judge, Kent J. Dawson all would have testified before the all white
jury that INZS and SVSY's Press Releases were in fact immaterial. Blowing up the
USAO's entire case. An untenable situation for the Jim Crow USAO lawyers' and
Pauley. So what did they do to prevent the white SEC lawyers from testifying in

for Mr. Ware in 05-cr-1115 that the USAO's case was a complete sham? They did what any self-respecting Jim Crow fraud, "the best and brightest", would have done. They bribed Pauley for the entry of Dkt. #35. The Pauley Bribe Order, Janaury 8, 2007. Entered by Pauley in violation of the Sixth Amendment. Entered to obstruct justice. Entered as witness tampering. Entered to violate the Discovery Order, Dkt. #17, see Tr. 5-8, i.e., suppression of the <u>white</u> SEC lawyers' Brady exculpatory and impeachment evidence, i.e., ¶33 of the 03-0831 (D. NV) <u>unsigned</u> complaint.

If the all <u>white</u> hand-picked jury had heard the sworn testimony of the <u>white</u> SEC lawyers' testifying that the USAO's case was a complete fraud and scam, compared to the Nigger Stooges' known perjured testimony. Who do you think the all <u>white</u> hand-picked jury would have believed? The Nigger Stooges? Or the <u>whites</u>? Of course the <u>whites</u>. Else why go to the trouble and expense of having an all <u>white</u> hand-picked jury in the first place? And pay for the Pauley bribe?

There you have it. In plain sight. What everyone is afraid to say. The raw and naked truth. That is what has been hid, covered up, suppressed, and concealed.

THE TRUTH!

The truth the Supreme Court of the United States in 10-6449 covered up.

"All evil deeds eventually come to the light."


Submitted by Petitioner:

_Ulysses T. Ware, Esq._
Ulysses T. Ware, Esq.
June 8, 2017
Beaumont Concentration Camp
Beaumont, TX 77720

I Ulysses T. Ware, under oath and subject to the penalty of perjury, having personal knowledge of the facts, pursuant to 28 USC §1746 make this Declaration of material facts in support of probable cause to seek arrest warrants for William H. Pauley, III, Robert W. Sweet, Thomas W. Thrash, Jr., Margaret H. Murphy, Gerald B. Tjoflat, Amalya L. Kearse, Robert D. Sack, Peter W. Hall, Jon O. Newman, Preet Bharara, David N. Kelley, Michael J. Garcia, Alexander H. Southwell, Nicholas S. Goldin, Steven D. Feldman, Andrew L. Fish, Maria E. Douvas, Steven R. Peikin,

Richard Zabel, Joon Kim, Donald B. Verilli, Jr., Eric H. Holder, Jr., Loretta
Lynch, Joan McKown, Jeffrey B. Norris, Spencer C. Barasch, John C. Martin, Stephen
Webster, Stephen Korotash, Rebecca R. Fairchild, Michael F. Bachner, Gary G. Becker
Edward T.M. Garland, Marlon Kirton, Jeremy Jones, Myron Williams, Carlton Epps,
Rick Sadler, Charles H. Jackson, Richard Baud, Maria Font, David Makol, Manibur
S. Arora, Donald F. Samuel, Orinda D. Evans, Andrew J. Peck, Michael H. Dolinger,
Ruby Krajick, Margaret M. Garnett, Benjamin H. Torrance, Alexander J. Wilson,
Katherine Polk-Failla, Sarah E. Paul, Joyce Bihary, C. Ray Mullins, Pat Sinback,
M. Regina Thomas, Linda T. Walker, Gail McKenzie, Sallie Q. Yates, John A. Horn,
James H. Morawetz, Kent J. Dawson, Johnnie B. Rawlingson, Alfred T. Goodwin, Frank
M. Hull, William Pryor, Jill Pryor, Beverly B. Martin, Stanley Marcus, Charles
R. Wilson, James N. Hatten, Julie E. Carnes, Ed Carnes, Colleen McMahon, Loretta
A. Preska, Thomas P. Griesa, Zack Hawthorn, Marcia A. Crone, Rachel Chapa, Darlene
Drew, Kim Jones, Thomas J. McCarthy, Dennis S. Meir, John W. Mills, III, Thomas
V. Sjoblom, Ari Rabinowitz, Kenneth A. Zitter, Peter T. Fay, Joel Dubina, Robin
S. Rosenbaum, Roberta Smith, Christopher Jackson, Diedra Gordan, Johnnie Butt,
Michelle Charles, and others known and unknown, collectively, (the "Unindicted
Coconspirators").

Ulysses T. Ware, Esq.
June 8, 2017
Beaumont, TX 77720


*****


End of Document.


Certificate of Service

I Ulysses T. Ware, Esq. this 8th day of June, 2017 have served acting U.S.

Attorney (SDNY) Mr. Joon Kim, Esq. with notice of the filing of this motion.

Ulysses T. Ware, Esq.


Attachments: Ex. ##1, 2, 3, 9, and 10.


(15)

Ulysses T. Ware, Esq.
Reg. No. 56218-019
Beaumont Complex (Low)
P.O. Box 26020
Beaumont, TX 77720

Filed on June 8, 2017

U.S. v. Ware, 05-cr-1115 (SDNY)

RE: Disqualification Motion.

Service Copy

Office of the U.S. Attorney (SDNY)
U.S. Dept. of Justice
1 St. Andrews Plaza
New York, NY 10007

Attn: Mr. Joon Kim, Esq.



Case No. 05-cr-1115 (SDNY)

Exhibits ##1, 2, 3, 9, and 10

June 8, 2017 Motion to Disqualify/Recuse/Dismiss Void Indictment.

LEGAL MAIL

Submitted by:

Ulysses T. Ware, Esq.

Jeffrey B. Norris
Attorney for Plaintiff
U.S. Securities and Exchange Commission
Burnett Plaza, Suite 1900
801 Cherry Street, Unit #18
Fort Worth, Texas 76102-6882
(817) 978-6452
(817) 978-4927 (fax)

*FILED ENTERED / RECEIVED SERVED ON...*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA
LAS VEGAS DIVISION

*SEC/DOJ's unsigned complaint.*

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

    vs.

INVESTMENT TECHNOLOGY, INC.,
THOMAS D. VIDMAR,
ROSENFELD, GOLDMAN & WARE, INC.,
ULYSSES "THOMAS" WARE,
SMALL CAP RESEARCH GROUP, INC.,
and CENTENNIAL ADVISORS, L.L.C.,

    Defendants.

CV-S-03-0831-KJD-RJJ



**COMPLAINT**

Plaintiff, Securities & Exchange Commission ("Commission"), alleges as follows:

**SUMMARY**

1.  This case involves a fraudulent "pump and dump" scheme involving the common stock of Investment Technology, Inc. ("Investment Technology"), a shell corporation based in Las Vegas, Nevada. The stock

*1-1*

*a133 below*



*SEC's concession of immateriality.*

31.  In reality, these glowing descriptions and rosy predictions had no basis in fact. Far from being the leader in the on-line casino business, the Investment Technology website did not generate a single cent of revenue for Investment Technology. Indeed, during the approximately three-month blitz of reports and press releases touting the company's casino operation and stock, not a single wager was placed on the on-line casino's website. Moreover, no wager has ever been made on the website at any time.

32.  The reports produced by Ware, RGW, Small Cap Research, and Centennial presented their recommendations of Investment Technology and its stock in terms that led readers to believe the recommendations were objective and disinterested. None of these reports disclosed that Ware and/or RGW had received 7.5 million Investment Technology shares for their capital-raising and promotional efforts.

33.  For the two months prior to the casino promotion, Investment Technology stock had an average daily volume of 194,000 shares. During the three-month campaign, the average daily volume increased to 757,000 shares traded, with volume in excess of 2 or 3 million on several days. The misleading and fraudulent promotional campaign *did not have the intended effect of increasing the company's stock price;* however, because of the demand generated by the dissemination of positive, but false, information about Investment Technology, Vidmar and Ware, as set forth below, were able to sell collectively approximately 8.8 million shares of Investment Technology stock without causing a complete collapse of the stock's price.

SEC v. Investment Technology, Inc., et al.
COMPLAINT

14

*1-3*

the market place concerning the track record and prospects of Investment Technology and its on-line casino operation. Through April 22, 2002, when the Commission issued a trading suspension of Investment Technology stock, Defendants jointly issued over 20 press releases or "analyst reports" under the names RGW, Small Cap and Centennial. The press releases and reports were prepared by, or under the direction of Ware, and approved in advance by Vidmar. The releases and reports were distributed over the business wires and several were posted on a financial website prepared by Ware.

30.  The information disseminated into the market place by Defendants was rife with blatant misrepresentations and omissions. The releases and analysts reports, for example, referred to Investment Technology as "a leader in the on-line gaming industry" and touted the company's "experienced management", its "innovative marketing and costs structure," its "established customer base", and its "traffic growth". A February 7, 2002 release by Ware and Centennial Advisors made the outlandish claim that on February 3, 2003 alone, the day of the Super Bowl, Investment Technology accepted over 100,000 wagers, totaling more than $4 million. The releases and reports recommended that readers should purchase Investment Technology stock, stating repeatedly that the stock was undervalued and projecting that the price of Investment Technology shares, then trading at prices ranging from $.017 to $.04, would quickly accelerate to a price of $.40 per share and could realistically be expected to attain a price of $5.00 per share.

SEC v. Investment Technology, Inc., et al.
COMPLAINT

*1-2*

13

VI.

Enter an Order for such further relief as this Court may deem just and proper.

*SEC/DOJ fraud on the court*

Respectfully submitted,

*Not signed by Norris,*
*cf. Dkt. #155 n.3*
*(03-0831)*

*See Rule 11(a).*

JEFFREY B. NORRIS
District of Columbia Bar No.: 424258
Attorney-in-Charge

SECURITIES & EXCHANGE COMMISSION
Burnett Plaza, Suite 1900
801 Cherry Street, Unit #18
Fort Worth, TX 76102-6882
(817) 978-3821-6452
FAX (817) 978-4927

*(1)*

Of Counsel:
SPENCER C. BARASCH
District of Columbia Bar No.: 388568
ROBERT C. HANNAN
Texas Bar No. 08924700
JOHN C. MARTIN
District of Columbia Bar No. 443436

*(2)*

SECURITIES AND EXCHANGE COMMISSION
Fort Worth District Office
Burnett Plaza, Suite 1900
801 Cherry Street, Unit #18
Fort Worth, TX 76102-6882

SEC v. Investment Technology, Inc., et al.
COMPLAINT

*1-4*

25

*Appx. #80:* Pauley Bribe Order

**Panel 2-1 (X #2)**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1-8-07

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-against-

ULYSSES THOMAS WARE,
                          Defendant.

05 Cr. 1115 (WHP)

ORDER

*Pauley Witness Tampering / obstruction of justice Order*

WILLIAM H. PAULEY III, District Judge:

[¶ 1] By letter applications dated December 1, 2006 and December 19, 2006, Ulysses Thomas Ware ("Defendant" or "Ware") sought an adjournment of the January 16, 2007 trial date and a suppression hearing. This Court denied these applications in separate orders on December 11, 2006 and December 19, 2006, respectively.

[¶ 2] On November 28, 2006, the *Government* filed an *in limine* motion, seeking to *preclude* Defendant from offering at trial any evidence of collusion between the Securities and Exchange Commission ("SEC") and the United States Attorney's Office ("USAO") ("November 28 motion"). On December 28, 2006, the *Government filed another in limine motion* seeking to preclude Defendant from cross-examining certain Government witness regarding collateral matters ("December 28 motion") On January 2, 2007, Defendant filed a motion, seeking (a) an adjournment of the January 16, 2007 trial date; (b) a *suppression hearing* concerning (c) documents and information obtained from the SEC; a log prepared by the SEC and the USAO of all documents, telephone calls and *email correspondence* between the two; and (d) other related relief ("January 2 motion"). Finally, by letter dated January 5, 2007, Defendant points

*Radex bribe*
Ⓧ *Why?*

*→ (Appx. #82-1 never disclosed by USAO)*

SA-40

**Panel 2-3 (X #14)**

the record to Ware's arguments that the USAO exerted any control whatsoever over the SEC's civil investigation or enforcement action. Finally, there is no authority for Ware's proposition that the Government was required to give him notice that a criminal investigation or proceeding was imminent. (Oral Arg. Tr. pg. 103.)

This Court finds that Defendant has offered only conclusory allegations and speculation of collusion between the USAO and the SEC. While Defendant argues that these agencies' roles in contact "directly after" July 2003, he mischaracterizes the Jeffrey Norris affidavit dated October 3, 2006. The Government represents that the SEC civil investigation started in June or July of 2002 while the USAO's criminal investigation did not begin until after a referral from District Judge Sand in December 2001. (See Transcript of Hearing on May 19, 2006; pgs. 6-7.) Defendant does not refute the Government's time line. Even if there were a temporal overlap between the civil and criminal investigations, information sharing is not subject to suppression where the investigations are independently motivated. See United States v. Tweel, 177 F. Supp. 846 (SDNY 1995). Accordingly, Defendant was provided no factual basis for a suppression hearing.

*(cf. Appx. #66 in Schlapp Part XIII)*

B.   Defendant's January 2 Application

In his January 2 Application, Defendant's requests for orders requiring the Government to disclose communications between the SEC and the USAO are denied. For the reasons set forth above, Defendant's conspiracy theory is rejected because Defendant has failed to proffer any credible evidence supporting it.   *( nothing but an affidavit )*

C.   The Government's November 28 Motion

The lack of factual support for Ware's allegations also forms the basis for the

*Dkt #80, all void*

**Panel 2-2 (EX #14)**

[¶ 1] eight different orders requiring the Government to provide information, *emails* and logs to Defendant immediately. The relief sought on January 2, 2007 largely overlaps with relief requested in Defendant's January 2 motion or at argument on January 5, 2007. In turn, Defendant's January 5 application essentially reiterates his earlier requests for relief on December 1, 2006 and December 19, 2006.

[¶ 2]    A.   Defendant's January 2 Motion

Defendant's January 2 motion revolves around alleged improper collusion between the SEC and the USAO. At the January 5, 2007 hearing, Ware clarified his argument:

Any documentation, communication subsequent to December 3, 2003 during the ongoing civil litigation in Nevada is subject to suppression because notice was not given by the SEC nor Mr. Southwell's office that an *imminent criminal* investigation was ongoing pertaining to the same conduct was ongoing in the civil litigation. That information is subject to suppression, your Honor, because notice was not given in the civil litigants in the civil action in Nevada.   *(05-cv-1515)*

(Transcript of Oral Argument, dated Jan. 5, 2007 ("Oral Arg. Tr.") pg. 29.)

[¶ 3]    Assistant United States Attorney ("AUSA") Alexander Southwell responded "that    1
this case did not come about as a referral from the SEC, and to [his] knowledge, Mr. Norris [his]   2
counsel for the SEC] never contacted the [USAO's] office or the FBI about this case prior to   3
when the FBI contacted Mr. Norris sometime after December 2003." (Oral Arg. Tr. pg. 30.) As   4
for Ware's assertion of collusion between the USAO and the SEC, AUSA Southwell   5
represented that none of the correspondence between these agencies concerned "what should   6
happen in the civil litigation, [what] depositions should be taken or anything of that ilk. It was   7
all in the nature primarily of Mr. Norris reporting on what had happened in the proceeding,   8
mostly public events and providing documents." (Oral Arg. Tr. pgs. 29-30.) There is nothing in   9

**Panel 2-4 (EX #14)**

SA-41

## Pauley's pay off (the bribe)

[¶ 1] Government's motion to preclude evidence of alleged collusion between the SEC and the USAO. For the reasons discussed above, this Court finds that Ware is precluded from *alleging collusion between the agencies.*

[¶ 2]   In its November 28 motion, the Government further moves to introduce evidence of Ware's obstructive conduct in the course of the SEC investigation. Specifically, the Government seeks to introduce the affidavit of Myron Williams submitted by Ware to the SEC. (See Transcript of January 3, 2007 at pgs. 10-11.) The Government argues that this evidence is directly admissible because it involves the same illegal activity alleged in this action. Although this evidence may be admissible on this basis, the Government must first demonstrate that the allegedly obstructive conduct was intended to prevent detection of the criminal fraud for which he was indicted.

[¶ 3]   The Government argues alternatively that the evidence is admissible as 404(b) evidence on the issues of knowledge and intent. If Ware raises lack of knowledge or intent as a defense, then such evidence is admissible. See United States v. Mickens, 926 F.2d 1323, 1328 (2d Cir. 1989) (providing a three-part test to determine admissibility of "other crimes" under Rule 404(b)).

[¶ 4]   D.   The Government's December 28 Motion

The Government moves to preclude Defendant from cross-examining Government witness Jeremy Jones concerning 1997 and 1999 misdemeanor convictions for deposit account fraud, which is commonly known as the issuance of a bad check. The Government's argument under Rule 609 lacks merit. While the Government may claim during direct examination that Jones' criminal convictions resulted from an "unintentional oversight",

691

Jones' assertions concerning check fraud bear on his credibility. Accordingly, Defendant may question Jones about his 1997 and 1999 convictions.

The Government also seeks to preclude cross-examination of Cactus Epps concerning 1991 arrest for deposit account fraud and a 2002 misdemeanor conviction for driving with a suspended license. The 1997 arrest is not an appropriate basis for inquiry. The unfair prejudice outweighs any probative value. Moreover, the misdemeanor conviction for driving with a suspended license is irrelevant and is precluded under Rule 609.

Finally, the Government seeks to admit Certified Public Documents as self-authenticating under Rule 902(4) and as business records under Rule 803(6). If these documents are indeed certified public records or business records maintained in the normal course, they are admissible provided that they are relevant.

The balance of the parties' respective applications are denied. A final pre-trial conference is scheduled for January 12, 2007 at 3:00 p.m.

Dated: January 8, 2007
New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

#14                    2-5

---

MANDATE

Superseding Final Judgment

UNITED STATES COURT OF APPEALS
FOR THE
SECOND CIRCUIT

At a Stated Term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 18th day of August, two thousand and nine,

PRESENT:  Amalya L. Kearse
          Robert D. Sack,
          Peter W. Hall,
          Circuit Judges.

United States of America,
    Appellee-Cross-Appellant,

v.

Ulysses Thomas Ware, also known as Thomas Ware,
    Defendant-Appellant-Cross-Appellee,

Isiney Town,
    Defendant.

07-5670-cr

JUDGMENT
Docket Number:

The appeal in the above-captioned case from a judgment of United States District Court for the Southern District of New York having been submitted on the district court record and the parties' briefs. On consideration thereof,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the judgment of the District Court is AFFIRMED and the matter is REMANDED for additional proceedings in connection with sentencing in accordance with the opinion of this Court.

FOR THE COURT,
Catherine O'Hagan Wolfe, Clerk

_____
Catherine O'Hagan Wolfe, Clerk

By: _____
Judy Fluxcord, Motions Staff Attorney

7-4 A-3
3-2

---

Ex. #9: Kearse's fraud.

UNITED STATES OF AMERICA, Appellee-Cross-Appellant -v.- ULYSSES THOMAS WARE, also
known as Thomas Ware, Defendant-Appellant - Cross-Appellee.
UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
577 F.3d 442; 2009 U.S. App. LEXIS 18440; Fed. Sec. L. Rep. (CCH) P93,377
Docket Nos. 07-5222-cr(L);07-5670-cr
April 22, 2009, Submitted
August 18, 2009, Decided

Editorial Information: Subsequent History
Petition denied by Ware v. United States, 131 S. Ct. 432, 178 L. Ed. 2d 344, 2010 U.S. LEXIS 8241
(U.S., 2010)Appeal after remand at, Decision reached on appeal by United States v. Ware, 2011 U.S.
App. LEXIS 1832 (2d Cir, N.Y., Jan. 26, 2011)

Editorial Information: Prior History

Appeal from a judgment of the United States District Court for the Southern District of New York, William
H. Pauley III, Judge, convicting defendant of securities fraud and conspiracy to commit securities fraud
and wire fraud, see 15 U.S.C. § 78j(b) and 78 U.S.C. § 2; 18 U.S.C. § 371.United States v. Ware, 2006
U.S. Dist. LEXIS 101837 (S.D.N.Y., Dec. 8, 2006)

Disposition:    Conviction affirmed; matter remanded for additional proceedings in connection with
                sentencing.

Counsel     MICHAEL J. GARCIA, United States Attorney for the Southern District of
            New York, New York, New York (Nicholas S. Goldin, Andrew L. Fish, Assistant United States
            Attorneys, New York, New York, of counsel, for Appellee.
            ULYSSES THOMAS WARE, Brooklyn, New York

            Defendant-Appellant, Pro Se

Judges: KEARSE, SACK, and HALL, Circuit Judges.

CASE SUMMARY

PROCEDURAL POSTURE: The United States District Court of the Southern District of New York
following a jury trial convicted defendant of securities fraud, in violation of § 10(b) of the Securities
Exchange Act of 1934, 15 U.S.C. § 78j(b), S.E.C. Rule 10b-5, and 18 U.S.C.S. §§ 2, 371. Defendant
was sentenced to 97 months' imprisonment, a three-year term of supervised release, a fine of $ 25,000,
and forfeiture of $ 278,385. Defendant appealed. Defendant's double jeopardy challenge was meritless
and forfeiture of $ 278,385. Defendant appealed a mistrial that was granted over the government's objection. There
was no indication that a witness's absence during the trial for medical reasons during his
cross-examination was prompted by the government or that defendant was goaded into causing a
mistrial.

OVERVIEW: At defendant's first trial, ... government had described his participation
in defendant's securities fraud scheme. Defendant was in the process of cross-examining this witness
when the trial was adjourned for the weekend. During the weekend, the witness was hospitalized.

A02:CASES

9-1



Kearse found on the court, cf.

Ex.# I-3 ¶33 (03-0831 (D.NV) Complt.)

"No effect on price" (DOJ-SEC Admin)

[Immaterial press releases]

Defendant's motion for a mistrial was erroneously granted over the government's objection, but his motion to dismiss based on double jeopardy was denied. There was no inference that the witness's absence was procured by the government or that the government attempted to causela mistrial or good defendant into moving for a mistrial. The evidence at trial was ample to permit the jury to find that defendant, in conjunction with the purchase or sale of a securities of two corporations, violated 17 C.F.R. § 240.10b-5, and hence was guilty of securities fraud. The evidence was also ample to permit the jury to find him guilty of conspiracy in violation of 18 U.S.C.A. § 371. The district court's findings were not insufficient to reveal the federal bars that the criminal activity involved five or more participants or was otherwise extensive under U.S. Sentencing Guidelines Manual § 3B1.1(a).

## Left column (bottom)

defendant—and his contention that he should have been allowed to argue to the jury that there was such misconduct—individually for the reasons stated by the district court in an Order dated January 6, 2007, and in an in-limine ruling on the record on May 15, 2008. We reject Ware's contention that the district judge should have recused himself, as we find in the record no basis for recusal. We reject Ware's double jeopardy and sufficiency challenges for the reasons that follow.

→ Dkt. # 17

→ DKt. #35 (Pauley Bride Orders)

A02CASRS

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Service Master Agreement.

9-4

56218019

## Right column (top) — Background

DTF F.3d 446) KEARSE, Circuit Judge.

Defendant pro se Ulysses Thomas Ware appeals from a judgment entered in the United States District Court for the Southern District of New York following a jury trial before William H. Pauley III, Judge, convicting him of securities fraud, in violation of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), Rule 10b-5 promulgated thereunder by the Securities Exchange Commission ("SEC"), and 18 U.S.C. § 2, [517 F.3d 441] and conspiracy to commit securities fraud and wire fraud, in violation of 18 U.S.C. § 371. Ware was sentenced principally to 97 months' imprisonment, to be followed by a three-year term of supervised release, a fine of $ 25,000, and forfeiture of $ 226,588. On appeal, Ware contends, inter alia, that his right to be free from double jeopardy was violated, that the evidence was insufficient to support his convictions, and that the court made errors in reviewing. We find on much of any of Ware's contentions except his challenge to the sufficiency of the district court's reasoning findings as to his role in the offenses. On that basis, we remand for additional proceedings as all other respects we affirm.

I. BACKGROUND      CF., Ex. I-3 at ¶33 ("no effect on price")

The present prosecution focused on the conduct of Ware with respect to a "pump and dump" scheme from December 2001 through April 2002, involving the issuance of fraudulent press releases that (1) artificially inflated the prices of the publicly traded shares of two small companies: Genesis Systems International, Ltd. ("Genesis Systems"), and Investment Technology, Inc. ("Investment Technology"). The government's evidence at trial indicated press releases issued of Ware's SONAG (primary then (2) two participants in the drafting of the press releases, Jeremy Jones and Carleton Epps; chiefly should-be present in price and trading volume of the companies' shares corresponding to the dates on which such press releases were issued; and testimony from several investors who invested in Investment Technology in reliance on Ware's press releases, only to see the stock become worthless (3) when the artificially inflated price evaporated. As discussed in Part II.B. below, the government contained materially false and misleading representations favorable to the companies, under entitled original information that was favorable, causing their stock prices to rise. Ware, who had acquired stock in the companies, sold most of his stock while causing the false press releases to be issued, reaping profits of more than $ 200,000 in a five-month period.

Ware was tried on one count of securities fraud and one count of conspiracy to commit securities fraud and wire fraud. After a first trial ended in a mistrial, reexamined by the District of Jersa (five Part II.A. below), Ware was retried and convicted by both counts. He was sentenced principally as indicated above, calculated as discussed in Part II below.

→ See R-3 (Ex. #10)', Markets irrelevant:

## II. CHALLENGES TO THE CONVICTION

On appeal, Ware makes numerous challenges to his conviction, including contending that his prosecution was the product of government misconduct, that the district judge should have recused himself, that his right to be free from double jeopardy was violated, and that the evidence was insufficient to support his conviction on either count. We reject Ware's charges of government press release immaterial

A02CASRS

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Service Master Agreement.

9-3

56218019

## Right column (bottom)

# 05-cv-1115

# Ex. # 10: Law of the Case

insufficient to establish market activity, and, and vide, S. Tr. 75-76, the markets were insufficient and declined to void any restitution to the Government, i.e., the defendant was the prevailing party on that portion of the district court's judgment.

Moreover, on 10/12/2007, Dkt. 193, S. Tr. 21 L 18-19, the district court, on request and motion by the defendant, agreed with the defendant's arguments, rejected the Government's frivolous argument, and ruled in the defendant's favor stating:

**R-1**  Mr. Ware (the defendant) has requested a Fatico (evidentiary) hearing challenging the government's trial proof ... If the government wants to press for restitution then I (agree with the defendant the government's trial proof was insufficient and ... think we should have a Fatico (evidentiary) hearing concerning money other things the efficiency of the matter (the DOJ and SEC's accusation. (emphasis added). (the "Fatico Ruling"). R-1.

The district court's Fatico Ruling was a favorable evidentiary ruling in favor of the defendant, after trial, a Rule 29(c) ruling, on an element of the government's factual burden of proof: money. Accordingly applying the rule of law in Morris Lloyd, 430 U.S. at 571-73, and circuit precedent in U.S. v. Lynch, 163 F.3d 711, 715 (2d Cir. 1998), double jeopardy was triggered on 10/12/2007 protecting the district court's Fatico Ruling which constituted per se reasonable doubt.

Furthermore, on 10/12/2007, S. Tr. 33 L 11-14 the district court informed and put the government on notice as to exactly what the scope of the Fatico evidentiary hearing would include. The district court stated:

**R-2**  If the government is advancing a fraud on the market theory, then the government should be able to prove (after the jury has been discharged, and initial judgment transmitted, in violation of the Due Process Clause, and In re Winship, 397 U.S. 358, 365 (1970)) the elements (materiality, loss causation, etc.) of a fraud on the market theory. That is what a (Fatico post-trial Rule 29(c) evidentiary) hearing would be about. (emphasis added). (the "Fatico Scope Ruling"). R-2.

On 10/24/2007, Dkt. 193, S. Tr. 75-76, the district court, having offered the government opportunities to come forth with proof beyond a reasonable doubt — ruled in favor of the defendant, after the government waived its post-trial Rule 29(c) Fatico evidentiary hearing to present evidence to sustain its trial burden of proof.

The district court ruled at S. Tr. 75-76:

Moreover, the government has failed to address all but two of the nine affiliated market factors. The government also declined (waived and forfeited) the Court's (post-trial Rule 29(c)) invitation to present evidence (in violation of the Due Process Clause and In re Winship) on this issue. Accordingly, this Court declines to award restitution in this case. (emphasis added). (the "Insufficiency Ruling"). R-3.

The district court's record is clear, Dkt. 93, S. Tr. 75-76, that on 10/24/2007 the district court ruled in favor of the defendant, ruling the government's evidence was insufficient and ruled the markets (or DOJ and SEC's) evidence were in fact insufficient as a matter of law and fact, BINDING ON THE GOVERNMENT'S CASE.

R

10-1

Ulysses T. Ware, Esq.
Reg. No. 56218-019
Beaumont Complex (Low)
P.O. Box 26020
Beaumont, TX 77720

Filed on the 8th day of June 2017

U.S. v. Ware
Case No. 05-cr-1115 (SDNY) (WHP)

RE: Motion to Disqualify Pauley
and the USAO's Motion to dismiss void
Indictment, Counts #'s 1, 2, 3, 9, and 10.

_Ulysses T. Ware, Esq._
Ulysses T. Ware, Esq.
June 8, 2017, filed

Crim.
Docketing

USM-9
SDNY

RECEIVED
JUN 19 2017

Office of the District Clerk
U.S. District Court (SDNY)
500 Pearl St.
New York, NY 10007

## Certificate of Service

I Ulysses T. Ware certify that I have this 26th day of May 2021 served a copy of:

Please file the enclosed pleadings:

1.                                        **Exhibit #UTW-02**
                                **Ulysses T. Ware's May 22, 2021 Affidavit.**

2.                **Ulysses T. Ware's  May 26, 2021, (i) Resubmission of Dkt. 239 for immediate adjudication based on newly discovered evidence, and; (ii) request for an evidentiary hearing to resolve all disputed issues of material fact in.**

on AUSA Melissa A. Childs at her purported official DOJ email account: melissa.childs@usdoj.gov;

and also served the same on Acting United States Attorney (SDNY) Ms. Audrey Strauss at

audrey.strauss@usdoj.gov.; and served Notice of Motion via the U.S. Mail addressed to:

AUSA Melissa A. Childs, Esq.
Office of the United States Attorney
86 Chambers St.
3rd Floor
New York, NY 10007

/s/ Ulysses T. Ware
Ulysses T. Ware