# Case Nos. 05cr1115 (SDNY) and 04cr1224 (SDNY)

Submitted on May 26, 2021, by:

/s/ Ulysses T. Ware

*Ulysses T. Ware*

Ulysses T. Ware, individually, and as
the legal representative for the estate
of Mary S. Ware.
123 Linden Blvd.
Suite 9-L
Brooklyn, NY 11226
(718) 844-1260 phone
utware007@gmail.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

United States of America, et al.,
      Plaintiff, Petitioner,
      Cross Respondent,


     v.

Ulysses T. Ware, et al.,
      Defendant, Respondent,
      And Cross Petitioner.

---

**Exhibit #UTW-2.0: May 22, 2021, Affidavit-Declaration.**

**Ulysses T. Ware's May 26, 2021, (i) Submission of his May 22, 2021 Affidavit-Declaration in support of Dkt. #239; (ii) and in support of Dkt. 239 for immediate adjudication based on newly discovered evidence; (iii) request for an evidentiary hearing to resolve all disputed issues of material fact in Dkt. ##239, 250, and to be filed Fed. R. Crim. P. Rule 42(b) Application for the United States, and the Unindicted Coconspirators named at Fact # 172 in Exhibit #UTW-2.0.**


     Comes now Ulysses T. Ware, defendant-respondent-cross-petitioner, and moves this Court for an

evidentiary hearing to resolve all disputed issues of material fact regarding the attached Affidavit-

Declaration of Ulysses T. Ware dated May 22, 2021, Exhibit #UTW-2.0, and the claims in Dkt. #239.

12/12/2012
Declaration of Ulysses Thomas Ware

State of Georgia
County of Fulton
City of Atlanta
12/12/2012

I Ulysses Thomas Ware being of the age of majority, and having personal knowledge of the foregoing facts, under oath and subject to the penalty of perjury, this Declaration is made pursuant to 28 USC §1746, and the declarant states the following:

¶1

On or about 08/05/2012 Ulysses Thomas Ware, the Petitioner, filed a Rule 46 application with the Ninth Circuit Court of Appeals in SEC v. Small Cap Research Group, Inc., et al., 05-15638, (the "Appeal").

¶2

The Application filed by the Petitioner alleged that the Securities and Exchange Commission's (the "SEC's") lawyers (Jeffrey B. Norris, Michael Post, and Mark L. Pennington) committed a fraud on the Court during the Appeal, and failed to set the record straight that the SEC pled the the United States (the real party in interest) out of court on 07/14/2003 (see Dkt. #1 at ¶¶30, 31, and 33, the "SEC Judicial Admissions)). Cf. Ex. at 22-23 for SEC's judicial admissions in 0831 complt. (Dkt. #1).

¶3

Petitioner further contends that the Office of the Solicitor General (the "OSG"), pursuant to federal law (18 USC §3742(b)) and federal regulations (28 CFR §0.20 (a, b)) is tasked with conducting all litigation on behalf of the United States in the courts of appeal and the U.S. Supreme Court. Cf. Appx. I at 65-73 prosecutorial misconduct.

¶4

With the Application the Petitioner filed Exhibit #4, a petition for an extraordinary writ to the Supreme Court of the United States, which was served on Mr. Donald B. Verilli, Jr., the Solicitor General of the United States on 07/23/2012. Cf. Application Rule 29 proof of service in Ex. #4. (See Appx. I at 74-78 for pet. to S. Court).

¶5

Mr. Verilli, the Solicitor General of the United States, and a member of the Supreme Court's bar, had a "continuing duty [of candor]" (quoting Fasari v. Steinberg, 419 U.S. 379, 391 (1975) (Burger, C.J.) (concurring)) to the courts in U.S. v. Ware, 05-Cr-1115 (WHP)(SDNY), ("1115"), the Supreme Court regarding Ware v. United States, 10-6449 (2010) (petition for certiorari), the 0831 court, the Supreme Court of Georgia (regarding its erroneous 10/06/2008 order of disbarment), and the District Court (NDGA) (regarding its erroneous 10/30/2008 order to suspend based on the superseded 10/30/2007 (Dkt. #96) judgment in 1115, to "set the record straight" and exercise his "continuing duty [of candor]" and inform each court that 1115 became moot on 10/12/2007. Cf.

10/12/2007 ruling of the 1115 trial judge (Pauley, J.) at S. Tr. 30-31, (Ex. at 2-3).

¶6

On 10/12/2007 at the purported sentencing hearing of Mr. Ware in 1115, after the jury allegedly on April 30, 2007 (Ex. at 21) returned verdicts of guilty on the conspiracy count and the securities fraud count of the 1115 indictment (never mind the indisputable fact that on 07/14/2003 the SEC on behalf of the United States pled the United States (the real party in interest) out of court in 0831, judicially admitting at ¶¶30, 31, and 33, that INZS' press releases were: (a) projections (¶30); ("predictions") (¶31); "and did not have the intended effect of increasing the company's [INZS'] stock price." (¶33) (emphasis added). Cf. 0831 complt. Dkt. #1.; see Ex. at 22-23, (the "SEC's Judicial Admissions"), Judge Pauley acquitted Mr. Ware at Ex. at 2 L22-25.

¶7

The SEC's binding Judicial Admissions pled in the United States' (the real party in interest) complaint (Dkt. #1) bound the SEC, the United States, and the 0831 District Court with respect to the INZS press releases, i.e., the United States and its privies (the SEC, the USAO(SDNY), and the OSG) were prohibited from arguing and asserting the materiality of INZS' press releases in any subsequent proceeding (the 09/20/2005 fraudulent affidavit by FBI S.A. Makol presented in 05-MAG-1630 (SDNY) (arrest warrants for Mr. Ware regarding INZS' press releases); the 10/26/2007 (Dkt. #7) grand jury testimony of S.A. Makol to procure the fraudulent 1115 indictment; at trial in 1115 in the opening and closing by AUSA Southwell and Feldman; at sentencing on 10/12/2007 and 10/26/2007 (see Ex. at 1-15); on appeal in U.S. v. Ware, 07-5222-Cr, (see Ex. at 20-21; and on remand, Dkt. #124:1115 (Gov't 09/17/2009 Remand Submission, which was not docketed). Cf. SEC's 0831 judicial admissions at Ex. at 22-23, the law of the case.

¶8

The United States (the real party interest in 0831) and its privies (the SEC, the USAO, FBI S.A. Makol, AUSAs Fish, Southwell, Douvas, Feldman, and Polk-Failla, (the "DOJ Agents")) were prohibited from arguing or asserting the materiality of INZS press releases in any proceedings; therefore, lacking the statutory factual element of proof of materiality (conceded by the SEC on 07/14/2003 in the 0831 complaint at ¶¶30, 31, and 33) (see Ex. at 22-23), the United States Attorney (Michael J. Garcia and his proxies, surrogates, and alter-egos) lacked any lawful authority (28 USC §547(1)) to (i) on 09/20/2005 seek arrest warrants for Mr. Ware (see. ¶7, supra); (ii) on 10/26/2007 (Dkt. #7) seek an indictment of Mr. Ware based on the INZS press releases; and (iii) pursuant to 18 USC §3231 to present any evidence to a federal court in 1115, i.e., Mr. Ware is actually and factually innocent of all charges in 1115 as a matter of law.

¶9

The 1115 district court lacking an indictable offense as charged in the 1115

12/13/2012

indictment, lacked all 18 USC §3231 jurisdiction over the subject matter of the 1115 indictment: the 1115 proceedings are null and void ab initio, a nullity.

¶10

Furthermore, because the 0831 proceedings were null and void as soon as the SEC -- (who on 04/16/2012, see Dkt. #155 in 0831, disavows the 0831 complaint claiming that the 0831 complaint was not actually signed by a SEC lawyer, i.e., the United States in violation of 28 USC §1654 appreared in 0831 pro se, nullifying the 0831 proceedings), which prohibited the USAO (SDNY) from any use of the 0831 proceedings in 1115 or in U.S. v. Ware, 04-Cr-1224 (RWS)(SDNY), ("1224"), where delusional SEC lawyer Jeffrey B. Norris, Esq. testified on behalf of the United States as a FRE 404(b) witness. Cf. Dkt. #107:0831 exhibits for Norris' perjurious testimony in 1224 on behalf of the United States to falsely convict Mr. Ware for criminal contempt.-- on 07/14/2003 filed the 0831 complaint, the USAO (SDNY) was prohibited from using any evidence collected by the SEC in 1115 or 1224, i.e., materiality was res judicata and collateral estoppel against the United States and its privies regarding INZS' press releases.

¶11

On 04/29/2005 SEC lawyer Norris at the fraudulent SEC-USAO show cause hearing attempting to have Mr. Ware arrested and held in contempt of court (see Dkt. #80:0831), after the SEC had pled the United States out of court on 07/14/2003, Mr. Norris, pursuant to 18 USC §§6002-04, immunized Mr. Ware and forced Mr. Ware to waive his Fifth Amendment right to remain silent, and forced Mr. Ware in the hall way outside District Judge Dawson's courtroom to provide him with information regarding INZS, INZS' business plan, INZS' press releases, INZS stock, INZS CEO Thomas Vidmar, Mr. Ware's bank accounts, trading accounts, Jeremy Jones, Carlton Epps, Rick Sadler, Charles H. Jackson, Myron Williams, the proceedings in 02-CV-2219 (LSB)(SDNY), Rule 144(k) legal opinions regarding issuing the 2219 plaintiffs shares of GPMT's securities, INZS' transfer agent, INZS 10-Q, 10-K, and 8-K filings, INZS financial statements, and forced Mr. Ware to "agree to a deposition."

¶12

On 04/29/2005 SEC Norris stated to Mr. Ware after immunizing Mr. Ware: Judge Dawson had agreed [via ex parte communications with the SEC in violation of Canon 3(A)(4)] to arrest you today had you not told me everything I wanted to know ... you did the right thing. If you play ball with the SEC I can keep Judge Sand from arresting you again ... but you are going to have to issue those shares [to the 2219 plaintiffs], else I cannot help you ... while this case is on appeal you are going to have to pay me $500.00 per month in a money order sent directly to me ... if you do this I can keep Judge Dawson from arresting you, else Judge Dawson has already agreed to arrest you anytime I ask." (emphasis added). Cf. Dkt. #159:0831, Emer. Motion for ex parte disclosures.

12/13/2012

¶13

Mr. Ware once entering Judge Dawson's courtroom -- where two U.S. Marshals were waiting to take Mr. Ware into custody -- Judge Dawson shouted from the bench:"I intend to vindicate the authority of the judiciary [to loot GPMT of +$25 million in free-trading shares and +$500 million in market capitalization]." (emphasis added).

¶14

Mr. Ware was effectively in custody -- not free to leave --      because the SEC was acting as the agent for the USAO pursuant to contract since 08/17/2004 (since the date Mr. Ware requested to take the deposition of SEC lawyer Stephen Webster)(see Dkt. #95 at 10-12 (fraudulent SEC-USAO request for file access (SEC pled United States and its privies (USAO-SDNY) out of court on 07/14/2003)), see Dkt. #107:0831 email exhibits between Norris and Mr. Ware on 08/17/2004 where Mr. Ware requested to depose SEC lawyer Webster and Norris suggesting "September 1, 2004" as the date, the exact same date District Judge Sand had the U.S. Marshal illegally arrest, search, seize, and detain Mr. Ware in Atlanta, GA -- note at Dkt. #95 at 10 the time stamp "AUG-17-2004." (*)

¶15

The USAO and the SEC panicked once Mr. Ware requested to depose SEC lawyer Webster who possessed both Brady and Giglio evidence, and also knew the details of the illegal collusion between the SEC and USAO since "shortly after Norris filed the 0831 complaint" (see. Dkt. #95 at 3 and 7(¶4)), and was first contacted by FBI S.A. Makol of the SDNY assisting AUSA Southwell and David Kelly orchestrate a fraudulent and bogus "criminal contempt" prosecution against Mr. Ware for not violating SEC national policy (SEC Release 33-7190 and SEC IR 5121) and issuing the fraudulent Rule 144(k) (2003) legal opinions to the 2219 plaintiffs Norris referred to on 04/29/2005 (see ¶12, supra).

¶16

The time stamp noted in ¶14, supra on Dkt. #95 at 10 was exactly 31 minutes **after** Mr. Ware informed Norris that Mr. Ware was going to depose SEC lawyer Webster (see emails to Dkt. #107:0831) on 08/17/2004 ... the USAO and SEC had been colluding and conspiring to gather evidence for the USAO's imminent criminal prosecutions in 1115 and 1224 since shortly after the fraudulent and frivolous 0831 complaint was filed by the SEC on 07/14/2003, i.e., the "Vendetta Prosecutions." Cf. Ex. at 62-65 the SEC's obstruction.

The USAO feared that if Mr. Ware were to depose SEC lawyer Webster, Mr. Ware would uncover the illegal plan and scheme arranged by officers of the court to extort Mr. Ware and his client (the defendant in 2219) GPMT of +$25 million in free-trading shares via fraudulent Rule 144(k) legal opinions in violation of federal law and SEC national policy (SEC Release 33-7190 and SEC IR 5121). Ex. at Id.

¶17

Judge Sand, the SEC, and the USAO arranged for Mr. Ware's 09/01/2004 illegal

(*): Ex. at 52-55 (Dkt. #95:0831).          (4)

arrest, search, seizure -- by the U.S. Marshals (NDGA) -- and detainment (by District Judge Thomas W. Thrash, Jr. (NDGA) on an excessive bail of $250k) based on the null and void order of the 2219 court (Dkt. #80), null and void ab initio (cf. 11 USC §362(a)), because GPMT on 12/03/2003 (see Gov't 1224 trial exhibits GX-252 and GX-253, and Kenneth A. Zitter, Esq. testimony in 1224 (Tr. 350-51)), cf. Dkt. #128:0831 Appendix #3 at Part 1A(1), filed for Chap. 7 in Atlanta, GA. (See Appx. I, at 7-8 discussing 11 USC §362(a)).

¶18

The 12/22/2003 order (Dkt. #80:2219) used by the SEC in 0831 -- according to SEC lawyer Norris in an email to AUSA Southwell dated 08/30/2004 (Ex. at 25) "I [Norris] was able to use it [the 12/22/2003 null and void ab initio order] to fix [fraudulent] Rule 11 sanctions against [Mr.] Ware" -- was null and void ab initio (see 11 USC §362(a) and §365(c)(2)) because 2219 defendant (GPMT) on 12/03/2003 in Atlanta, GA filed for Chap. 7 bankruptcy protection. Cf. Gov't trial exhibits in 1224 GX-252, GX-253; see also 1224 trial testimony of Gov't witness Kenneth A. Zitter, Esq. at Tr. 350-51. Appendix I at 7-10.

¶19

Judge Sand and the USAO knew the 12/22/2003 2219 order (Dkt. #80) was null and void ab initio (see Appx. I at 7-8 testimony of Zitter in 1224 under direct examination), and the SEC and USAO knew that Judge Dawson's fraudulent Rule 11 sanctions imposed on Mr. Ware -- while colluding and conspiring with the SEC and USAO to gather evidence to be used in the USAO's imminent fraudulent criminal contempt prosecution (see Ex. at 24 email dated 10/06/2004 from AUSA Southwell to SEC lawyer Norris) and 1115 (see ¶¶30, 31, and 33 in 0831 complaint (Ex. at 22-23), (the "Vendetta Prosecutions"), cf. ¶¶11-14, supra regarding the 04/29/2005 fraudulent SEC/USAO show cause contempt hearing (Dkt. #80:0831) arranged by Judge Dawson, the SEC, and the USAO to frame Mr. Ware for the Vendetta Prosecutions.

¶20

Former SEC lawyer Spencer C. Barasch, on behalf of the SEC, the USAO, and District Judge Dawson, during the pendency of the 1115 proceedings -- through his law firm Andrews & Kruth, LLP (see Dkt. #84 in 1115) -- paid a bribe or illegal gratuity in violation of 18 USC §§2, 4, 201, 241, 242, 371, 891-94, 1201-02, 1241, 1343, 1346, 1503, 1505, 1510, 1621-23, 1956-57, and 1961-64 (the "RICO Offenses") to (Pauley, J.) for the entry of a judicial order in 1115 (Dkt. #35 on 01/08/2007), (the "Barasch Bribe Order"), i.e., a donation paid to (Pauley, J.) alma-mater (Duke School of Law) titled: "Friends of Duke" for the entry of the Barasch Bribe Order to violate Mr. Ware's Fourth, Fifth, and Sixth Amendment rights, and the commissions of the RICO Offensesas defined at 18 USC §1961A; as part of a "pattern of racketeering activities" as defined at Id. §1961(5) conducted by an illegal association-in-fact as defined at Id. §1964(4), (the "CCE").

12/13/2012

¶21

The USAO and the SEC bribed Judge Pauley for the entry of the Barasch Bribe Order to intentionally violate Mr. Ware's Fifth and Sixth Amendment rights to "present a complete defense" by offering at trial in 1115 the live testimony of the "SEC's Lawyers" (Barasch, Webster, Norris, Hannan, and Martin), and District Judge Dawson regarding the exculpatory and favorable evidence the SEC's Judicial Admissions (¶¶30, 31, and 33), (Ex. at 22-23) in the 0831 complaint (which pled the United States out of court in 0831 and conversely, pled the United States out of court in 1115 and 1224), Brady (exculpatory) evidence and Giglio (impeachment) evidence.

¶22

The Barasch Bribe Order (Ex. at 32-36) was entered by Judge Pauley while colluding and conspiring with the SEC, the USAO, and Judge Dawson, to suppress the exculpatory and favorable SEC Brady Email sent to alleged 1115 co-defendant Jeremy Jones (who allegedly pled guilty to the indictment pretrial, however there are no records of Jones' purported guilty plea in the court's files) by SEC lawyer Norris informing Jones as follows regarding any conspiracy regarding INZS:

> "Mr. Jones you were not added to the SEC's Las Vegas
> litigation because the SEC believed your sworn SEC
> deposition testimony that you and the employees (Epps,
> Williams, Sadler, and Jackson, the "Gov't Stooges") 'were
> not involved in any conspiracy with Mr. Ware [because
> there was no conspiracy], and would not have participated
> had you known.' (emphasis added).
> Mr. Jones keep your contact information current in
> the event the Commission needs to talk to you again. I
> am sure Mr. Ware will contact you seeking your
> assistance." (the "SEC Brady Email").

¶23

The SEC Brady Email, which was suppressed by the Barasch Bribe Order was material evidence -- which if disclosed to Mr. Ware before or during trial, the Gov't Stooges' known perjured testimony "they were part of a conspiracy" would have been directly impeached, their crdibility seriously and irreparably vitiated, i.e., the jury would have surely wanted to know why the SEC's Lawyer believed the Gov't Stooges and did not add them to the SEC's Las Vegas litigation' yet the USAO did not believe their sworn SEC deposition testimony -- the case would have been placed "in a different light."

¶24

The USAO, the SEC, and District Judge Pauley "deliberately deceived" the magistrate judge, the grand jury, the trial jury, and the Second Circuit by the wholesale manufacture and fabrication of a conspiracy (fabricated by the Gov't Stooges' known perjured testimony), which the USAO knew was perjury, and filed not one, but two pretrial motions in limine (11/28/2006, Dkt. #28; and 12/28/2006 (which was not docketed)), see

12/13/2012

Ex. at 32(¶2).

¶25

The USAO, the SEC, and Judge Pauley needed to suppress the SEC's Brady Email at trial to fraudulently establish a fabricated conspiracy to "deliberately deceive" the jury by allowing the jury to hear the fabricated known perjured hearsay testimony of the five (5) Gov't Stooges, which Judge Pauley had pre-arranged to admit via FRE 801(d)(2)(E), all the time knowing that the Barasch Bribe Order's sole and exclusive purpose was to provide cover for the fraudulent conspiracy ruling, and the securities fraud testimony by Gov't Stooge FBI analyst Maria Font. Cf. Ex. at 37-42, 44; ¶¶ 63-66, infra.

¶26

Gov't Stooge FBI analyst Maria Font at trial under cross examination by Mr. Ware capitulated, crumbled, and mea culpa under vigorous and thorough questioning by Mr. Ware. (see Ex. at 37: Font testified L 15, "I have no idea whether press did [caused the volume of SVSY or INZS to increase or decrease]."

And when questioned by Mr. Ware at L 16:

And is it your testimony you have no way to determine whether or not the press releases were read by anyone or anyone person, is that correct?

Font:I can't determine who read them [or if they]'the press releases'were read at all.

¶27

AUSA Feldman (Ex. at 44 L 15-25) admitted and conceded that Font "wasn't an expert witness to opine on whether Mr. Ware _caused_ the fraud." (emphasis added).

¶28

Gov't Stooge Maria Font was the only government witness who testified regarding the government's bogus hocus pocus chart evidence (GX 92, GX 93 series), Ex. at 37 L 7 -23.

¶29

However, the Second Circuit in a subsequent case, United States v. Ferguson, 653 F.3d 61 (2d Cir. 2011) (Jacobs, C.J.) reversed and vacated the conviction of the Caucasian AIG defendants, a panel on which (Kearse, J) also sat, and found the exact same charts used by the USAO in ¶¶15 to be "overly prejudicial" and "violated the substantial rights" of the Caucasian AIG defendants, Id. at 75; and the admitted government charts "were functionally equivalent" to charts the district court deemed prejudicial. Id.

¶30

In Ferguson, supra, the market was _efficient_ for the stocks in questions, and yet the Chief Judge still found reason to _reverse_ and _vacate_ the AIG defendants' convictions and sentences; yet when Mr. Ware filed his _motion to recall the mandate_ in 07-5222-Cr on 05/12/2012 -- under the _emergency_ procedures of the Court alleging irreparable harm -- the Chief Judge has totally ignored Mr. Ware's pleadings, and has refused to make any

12/13/2012

ruling on Mr. Ware emergency motion to recall the mandate and reverse and vacate the conviction and sentence in 1115 predicated on the Court rejection of chart evidence used by the government in 1115 (see GX-92, GX-92 series), where the United States on 10/12/2007 (Ex. at 1-2) and again on 10/26/2007 (Ex. at 8-11) abandoned 1115 for insufficient evidence "concerning among other things [the elements of a fraud on the market theory and] the efficiency of the market for INZS and SVSY's securities (quoting Pauley, J. at the 10/12/2007 purported sentencing hearing). CF. Id. at 37-42.

¶31

Judge Pauley on 10/12/2007 (Ex. at 5 L 11-14) informed the United States that its trial proof was insufficient, and that he was rejecting the government's contentions and arguments in total, and was agreeing with Mr. Ware's contentions and arguments in full that the government's trial proof was insuffient on "the elements ["among other things ... materiality"] of a fraud on the market theory. That is what [the Fatico] hearing would be about. Cf. Ex. at 2 L 6-25, where Pauley, J. found the government's trial proof insufficient informing the government a Fatico hearing would be required for the government, after trial, to present evidence on the government's factual elements of the offense, i.e., exclusively jury issues, rather than issues for the Court after the jury was discharged on 04/30/2007 -- Mr. Ware was not found guilty -- by the jury -- beyond a reasonable doubt as required by In re Winship, 397 U.S. 358, 364 (1970).

¶32

The Due Process Clause prohibited Judge Pauley from entering a directed verdict of guilty on any of the government's factual elements of proof, i.e., Mr. Ware was acquitted on 04/30/2007 once the jury was discharged by Judge Pauley.

¶33

On 12/17/2007 at Dkt. #103 (see Ex. at 18) the USAO filed its notice of appeal of the abandoned Fatico hearing to present evidence, and was assigned the case no. U.S. v. Ware, 07-5670-Cr (XAP), the USAO's Rule 28.1 cross-appeal filed to appeal the 10/26/2007 trial court rulings regarding the abandoned Fatico hearing. (See Ex. at 8-11). See Id. at 18, cf. Id. at 20-21 (OSG's Art. II, §3 political decision in 07-5670-Cr(XAP)).

¶34

On 11/07/2008 with the express permission of the OSG pursuant to federal law (18 USC §3742(b) and federal regulations 28 CFR §0.20(b)), U.S. Attorney Michael J. Garcia, on behalf of the United States (the real party in interest) notified the Second Circuit in its response brief filed with respect to Mr. Ware's appeal (07-5222-Cr), (Ex. at 20-21) as follows regarding the United States' Article II, §3 prosecutorial political decision: "The Government filed a notice of appeal [on 12/17/2007 at Dkt. #103] but [has determined it is not in the interests of the United States to continue the prosecution of 1115 and the United States is exercising its exclusive prosecutorial discretion and

has determined it] is not pursuing a cross-appeal" in 07-5670-Cr (XAP), which terminated
1115 for insufficient evidence "concerning among other things the efficiency of the
market [for INZS and SVSY's securities]." (quoting Pauley, J. on 10/12/2007 at Ex. at
1-2). (the "USA's Double Jeopardy Political Decision"). Cf. Id. at 8-11 (inefficiency ruling).

¶35

The USA's Double Jeopardy Political Decision on 10/07/2008 terminated an Article
III live "case" or "controversy" with respect to the "elements of a fraud on the market
theory" which terminated the Second Circuit's subject matter jurisdiction over 1115 on
11/07/2008. (Ex. at 20-21). Cf. Id. at 11, 18(Dkt. #103), 19(Dkt. 113), 37-42, 44.

¶36

Accordingly, the Second Circuit's 08/18/2009 final judgment (Appx. I at 35)
entered on 07-5670-Cr (XAP) superseded the 10/30/2007 (Dkt. #96) judgment, and the
Second Circuit's 08/18/2009 judgment entered in 07-5670-Cr is the law of the case,
double jeopardy, res judicata, and collateral estoppel attached to Mr. Ware on
08/18/2009, nunc pro tunc, 04/30/2007 (the date the jury was discharged) acquitting Mr.
Ware of all charges in 1115.

¶37

The USAO, and the Second Circuit since 08/18/2009 have been undertaking an illegal
prosecution of Mr. Ware, and both are in criminal contempt of the Court's final judgment
entered on 08/18/2009 (Appx. I at 35) damaging Mr. Ware in the amount of $100,000.00 per
day since 04/30/2007, plus damages for emotional distress, cruel and unusual punishment,
malicious prosecution, false imprisonment, false arrest, illegal search and seizure,
deliberate deception on the jury and the courts, a fraud on the court, and the
commission of the RICO Offenses by the CCE, for total damages estimated at $+5.0 billion
to Mr. Ware's business and personal interests; and deliberate suppression of Brady
evidence by the USAO, the SEC, and the 0831 court, and the 1115 court, and the Second
Circuit in 07-5670-Cr (XAP). Cf. Ex. at 19(Dkt. 113 - judgment entered on 07-5670 (XAP)).

¶38

On 11/07/2008 (Ex. at 20-21) once the Executive Branch notified the Second Circuit
in U.S. v. Ware, 07-5222-Cr via the OSG, pursuant to 18 USC §3742(b) and 28 CFR
§0.20(b), that the United States was exercising its exclusive constitutionally conferred
Art. II, §3 unreviewable and nonjusticiable prosecutorial discretion and was in fact
abandoning its "cross-appeal" in 07-5670-Cr (XAP) for insufficient evidence, the Second
Circuit's Art. III subject matter jurisdiction as well as its 28 USC §§46(a-d) (2009)
statutory authority to "hear or decide" U.S. v. Ware, 07-5222-Cr terminated. (the "DOJ's
Political Decision"). Ex. at Id.

¶39

As of 11/07/2008 the DOJ's Political Decision -- which terminated all courts'

12/13/2012

subject matter juridiction over the 1115 proceedings (including the District Court on remand, and the U.S. Supreme Court on petition for certiorari (Ware v. United States, 10-6449 (2010)) -- prohibited the Second Circuit from entering the fraudulent 08/18/2009 final judgment in 07-5222-Cr (Appx. I at 35), purporting to affirm Mr. Ware's fraudulent and bogus ultra vires conviction in 1115.

¶40

On 08/18/2009 senior Circuit Judge Kearse, the purported author of the Court's opinion, reported at U.S. v. Ware, 577 F.3d 442 (2d Cir. 2009) released to the public one of, if not the most, fraudulent opinion ever rendered by an United States court of appeals; the Opinion replete with numerous 'opprobrium epitaphs' prematurely announcing Mr. Ware demise at the hands of the CCE. Cf. Ex. at 19(Dkt. 113 - judgment on political decision).

¶41

The Opinion produced as part and parcel in satisfaction of the objectives of the CCE regarding the Vendetta Prosecutions to convict Mr. Ware "by any means necessary" for impeding the wholesale extortion of his client GPMT and its shareholders of +$500 million in wealth which was to be transferred to the CCE via the fraudulent Rule 144(k) legal opinions demanded by District Judge Sand in 2219, aided and abetted by SEC (see Norris' 04/29/2005 demands to Mr. Ware regarding the 2219 plaintiffs at ¶¶11-20, supra), the USAO (see ¶¶ 21-25), and other private lawyers (see Appx. I at 7-12, 18-19, 20-23, 24-31, 34, 38-39 (Dennis S. Meir, and James H. Morawetz, and bankruptcy judge Margaret H. Murphy), 45 (Katherine Polk-Failla of the USAO (SDNY) by filing the fraudulent USAO brief on 08/12/2010).

¶42

On 08/12/2010 when the USAO (SDNY), through Preet Bharara filed the government's brief, the USAO knew that Kenneth A. Zitter, Esq. (the government's trial witness in 1224)(see Appx. I at 4, 6-12) on 12/20/2007 (Appx. I at 34) requested the 2219 court to dismiss 2219 pursuant to Rule 41(a)(2) of the Fed. R. Civ. Proc., which District Judge Sand granted on 12/20/2007 (Dkt. #90:2219) dismissing 2219 without prejudice and annulling and voiding all orders and judgments entered in 2219 (including the 12/22/2003 order used by Norris "to fix Rule 11 sanctions against [Mr.] Ware." (see Ex. at 29: 08/30/2004 email from Norris to AUSA Southwell). (see Appx. I at 9-11). (emphasis added).

¶43

The 2219 plaintiff Stonestreet, L.P., Zitter, Dennis S. Meir, Esq., John W. Mills, III, Esq., and bankruptcy judge Margaret H. Murphy, (the "Bankr. Criminals") perpetrated a fraud on the U.S. Bankruptcy Court in In re Group Management Corp., 03-93031-MHM (NDGA), ("93031") where Stonestreet, L.P. did in fact judicially admit (Appx. I at 18-19) of in fact "owning more than 9.9% of [GPMT's] stock[,]" (quoting Judge Sand in the 08/13/2003 order at Id. at 19). Cf. Id. at 90-102 (KTS', Zitter's, and Murphy's frauds).

12/13/2012

In the 08/13/2003 order (Appx. I at 18-19) Stonestreet, L.P. did not appeal the findings of the 2219 district court. Thus the findings that Stonestreet owned "more than 9.9% of ⁹GPMT's] stock" had dire consequences on all 2219 plaintiffs: Stonesteet's binding judicial admission conferred statutory group status (cf. Id. at 24-28); (2) conferred _affiliate_ status on the 2219 plaintiffs; (3) pursuant to §16 required the statutory _insiders_ to disgorge all profits realized from trading in GPMT's shares back to GPMT; and (4) the 2219 plaintiffs became statutory insiders and affiliates from the date of purchase (02/02/2001) of GPMT's Notes, i.e., the 2219 plaintiffs' claims in the 2219 complaint were vitiated by Stonestreet's 08/13/2003 admission.

¶44

The USAO had SEC lawyer Norris testify as a FRE 404(b) witness on behalf of the government in 1224 (see Dkt. #107 exhibits for Norris' perjurious testimony in 1224), and Norris testified to information which he received after the immunity provided Mr. Ware on 04/29/2005 (see ¶¶11-14, supra for details of SEC's immunity to Mr. Ware), which nullified the 1224 proceedings according to _Kastigar_.

¶45

The law of the case in 2219 (the 11/25/2002 opinion by (Sand, J.)) reported at 2002 U.S. Dist. LX 22803 (SDNY 11/25/2002) found as a matter of fact that the 2219 plaintiffs were in fact 15 USC §77b(a)(11) statutory _underwriters_ of GPMT's securities, and thus the 2219 plaintiffs and their agents were _fiduciaries_ of GPMT which prohibited the 2219 plaintiffs from filing the 2219 complaint to collect the alleged illegal debt (cf. 18 USC §1961(6)(B) an illegal debt carrying a usurious rate of interest). Cf. also _Dabney v. Chase National Bank_, 196 F.2d 668, 671 (2d Cir. 1952) (Fiduciary's duty of loyalty supesedes all other duties to the beneficiary). (see Appx. I at 13-17).

¶46

The _fiduciary_ status of the 2219 plaintiffs (as underwriters of GPMT) prohibited the filing of the 2219 complaint; and the _underwriter_ status prohibited any Rule 144(k) eligibility for the 2219 plaintiffs; and §16 statutory _group_ status (resulting from Stonestreet's 08/13/2003 judicial admission) prohibited the 2219 plaintiffs from trading in GPMT's shares; and Ari Rabinowitz' 1224 trial testimony (Tr. 204-06) that Alpha Capital, AG was operating as an **unregistered** broker-dealer in violation of 15 USC §78o(a), 15 USC §78cc(b) prohibited the 2219 plaintiffs from enforcing any of the contracts involved in the 02/02/2001 sale of GPMT's Notes. Cf. Appx. I at 15-17 for the district court's findings of facts and conclusions of law in 2219, which the 2219 plaintiffs did not appeal. (see Id. at 45 ¶¶2, 3).

¶47

The 2219 plaintiffs as admitted statutory _underwriters_ (see 2219 complt. at ¶¶10-21, and also see Appx. I at 16(¶1) where the district court commented that ¶10.1(iv)

12/13/2012

of the plaintiffs "Subscription Agreement ... <u>required</u> [GPMT] ..." to "file for <u>registration</u> [of its] ... convertible notes ... by May 3, 2001, and <u>registration</u> was <u>required</u> [per terms of the contracts] to be effective by June 17, 2001. See Subscription Agreement [¶]10.1(iv)." (emphasis added). (the "Statutory Underwriter Finding").

¶48

The 2219 district court's Statutory Underwriter Finding (cf. Appx. I at 32 for definition of <u>underwriter</u>) is the law of the case (which was binding on the USAO and the 1224 district court in the fraudulent criminal contempt prosecution, which in fact vitiated any probable cause to believe an <u>offense</u> had been committed by Mr. Ware in not issuing the fraudulent Rule 144(k) (2003) legal opinions to the 2219 plaintiffs).

¶49

SEC national policy (SEC Release 33-7190 and SEC IR 5121) both prohibited the 2219 plaintiffs from any Rule 144(k) to conduct an illegal <u>unregistered</u> public offering of GPMT's "convertible notes", which the law of the case (Id. at 15-17) found the 2219 plaintiffs "purchased from an issuer [GPMT on 02/02/2001 the convertible notes] with a view to ... the distribution [public offering] of [GPMT's shares]." Cf. ¶10.1(iv) of the Subscription Agreement referenced at Id. at 16(¶1). See <u>Berckeley Investment Group, Ltd. v. Colkitt</u>, 455 F.3d 195, 220 (3d Cir. 2006) (Referencing SEC Release 33-7190; see also <u>Boat Basin Investors v. First Am. Stock Transfer</u>, 2003 U.S. Dist. LX 1838 (SDNY 02/07/2003) (Sweet, J.) (a case where 1224 government trial witness and 2219 plaintiffs' counsel Kenneth A. Zitter, Esq. appeared before District Judge Sweet (the 1224 trial judge). Ex. at 46-47, Sweet, J. discussing SEC IR 5121, his understanding of the policy.

¶50

In <u>Boat Basin</u>, supra, (Ex. at 46-47) Judge Sweet noted:

> "In addition, the SEC has taken a keen interest in the transaction [exactly similar to the 02/02/2001 2219 plaintiffs' and GPMT's transaction][.] Freestar [(GPMT)] may be held liable for failure to ensure that Seller [(2219 plaintiffs)] complied with Rule 144[k]. SEC [IR] 5121 ("Precautions by issuers [GPMT and its securities counsel (Mr. Ware)] are essential to <u>ensure that a public offering does not result from resale</u> of [GPMT's] securities [the "convertible notes"] initially purchased [on 02/02/2001, see Appx. I at 15-16] in transactions claimed to be exempt under §4(2) [see Id. at 12] of the Act."). (emphasis added).

¶51

In a factually similar transaction, before the same judge (Sweet) and the same lawyer (Zitter) in <u>Boat Basin</u>, supra, (cf. Ex. at 46-47), Judge Sweet found that SEC IR 5121 would prevent the issuer, Freestar (GPMT) from aiding and abetting a resale which would result in "a public offering" via "Rule 144[k]"; yet Sweet entered a judgment of conviction in 1224 (the Vendetta Prosecution) finding Mr. Ware guilty of

doing exactly what the law and SEC national policy requires; see also SEC v. Spectrum, Ltd., 489 F.2d 535, 541 (2d Cir. 1975)(lawyer liable as aider and abettor, maybe liable as underwriter for issuing legal opinions to facilitate unregistered public offering of securities), cf. Appx. I at 21-23 (discussing Spectrum).

¶52

Thus reading Boat Basin, Spectrum, and Berckeley Invest. Gp., in pari material with SEC Release 33-7190 and SEC IR 5121, and the 2219 plaintiffs' own judicial admissions (¶13 of the 2219 complt, see Appx. I at 12(3)), and the 2219 district court's law of the case (Appx. I at 13-17), it is beyond rational debate, the 1224 indictment (Id. at 46-56) failed to charge an indictable **offense** against the laws of the United States. (see also Id. at 45 (¶¶1-3)).

¶53

Therefore, accordingly: (1) the USAO (SDNY) did not possess lawful authority (28 USC §547(1)) to seek the fraudulent and bogus 1224 indictment (Id. at 46-56); (2) the 1224 district court (Sweet, J.) lacked (18 USC §3231) subject matter jurisdiction to receive any evidence, and lacked authority to enter any judgment of conviction and sentence; and (3) the Second Circuit lacked subject matter jurisdiction and 28 USC §§46(a-d) authority to "hear" or "decide" U.S. v. Ware, 09-0851-Cr or U.S. v. Ware, 11-2151-Cr, or Ware .v. Sand, et al., 11-4181-Cv, (the "Vendetta Persecutions") are all null **void ab initio,"advisory judgment" and "opinions."** (quoting Mr. Justice Scalia, Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94, 101 (1995)) (emphasis added).

¶54

A close review and analysis of the USAO's fraudulent 1224 indictment (Id. at 46-56), to all but the mentally insane, shows clearly that the USAO -- exactly like the SEC in 0831, and the plaintiffs in 2219 -- pled itself out of court.

¶55

First, the USAO's 08/12/2010 response brief filed in 09-0851-Cr, signed by U.S. Attorney Preet Bharara and his chief of appeals AUSA Katherine Polk-Failla (a reported "genius" and perhaps the most incompetent "genius" of all times, certainly one of the most incompetent AUSAs of all time (maybe not exceeding AUSAs Southwell, Golding, Douvas, and last but not least AUSA Steven D. Feldman), but nevertheless completely incompetent in securities laws, and appellate procedure (by the way Polk-Failla has been reported to have participated in more than 200 appeals for the USAO, ummmm, smells fishy).

¶56

Second, in the USAO's fraudulent 09-0851-Cr ("0851") brief (see Id. at 33, 41-45) filed on 08/12/2010, 2.5 years after government 1224 trial witness Zitter on 12/20/2007 (Id. at 34) dismissed 2219 without prejudice pursuant to Rule 41(a)(2)

of the Fed. R. Civ. Proc -- which annulled and voided the very same bogus and fraudulent orders and judgments Bharara and Polk-Failla (a "genius") argued were in fact valid in their risible and comical appeal brief.

¶57

As an example of the incompetence of both Bharara and Polk-Failla, (the "Dynamic Duo"), see Id. at 42(¶1) where the Dynamic Duo -- none-the-wiser -- referenced the "August 13, 2003" order, which had dire consequences on all 2219 plaintiffs. Cf. Id. at 18-19, 24-28.

Judge Sand's 08/13/2003 order (Id. at 18-19) contained Stonestreet, L.P.'s judicial admission that it had committed perjury and lied to the Court that it did not own more than 9.9% of GPMT's stock, when in fact it beneficially "owned more than 9.9% of [GPMT's] stock." (emphasis added).

¶58

Had the Dynamic Duo been competent in securities law they would have immediately recognized (Polk-Failla is reported to be a summa cum laude graduate of William & Mary, and a cum laude grauduate of Harvard Law School) that the "August 13, 2003" order vitiated their entire case. Why?

¶59

Because, (1) Stonestreet's judicial admission pled the 2219 plaintiffs out of court, and well as pled the USAO out of court in 1224, (2) the judicial admission confirmed the bankruptcy fraud perpetrated by Dennis S. Meir, Esq., John W. Mills, III, Margaret H. Murphy, James H. Morawetz, the 2219 plaintiffs, and Ari Rabinowitz, in 93031 (see ¶¶41-43, supra for Judge Murphy's bankruptcy fraud in 93031, see also Id. at 38-39 for Murphy's bogus and fraudulent May 21, 2003 order (Dkt. #28:93031), entered to aid and abet, and directly participate in the CCE's RICO Offenses.

¶60

Because, (2), see Roth v. Jennings, 489 F.3d 499 (2d Cir. 2007) (discussing 17 CFR §240.13d-5(b)(1) nunc pro tunc conveyance of insider status from the date of acquisition of GPMT's securities (02/02/2001 see Id. at 15)), (Id. at 24-31), an Exchange Act violation (15 USC §§78 et seqs.) which 15 USC §78cc(b) prohibited the 2219 plaintiffs and their proxies, surrogates, and alter-egos from any enforcement of the contracts while comprised the sale of GPMT's "convertible notes" on 02/02/2001, notwithstanding the indisputable fact the 2219 plaintiffs were not bona fide investors, but rather underwriters and dealers of GPMT's securities, requiring all distributions to have been registered "pursuant to Section 5" (quoting SEC Release 33-7190). (emphasis added).

¶61

Because, (3) a "genius" would have certainly known that the statement made at page 5 of the 0851 brief (see Id. at 45(¶3)): "Specifically, the [2219] Civil Plaintiffs

12/13/2012

**allege** [in the 2219 complaint, which were judicial admissions binding on the USAO and the 1224 district court] that G[PMT] had failed to **register** [a "genius" would have compared this language to 15 USC §77b(a)(11), see Id. at 32 for definition of a statutory **underwriter**, and a "genius" would have rationally concluded that the 2219 plaintiffs were attempting to **criminally** conduct an **unregistered** public offering of GPMT using Rule 144(k), outlawed by the SEC in SEC Release 33-7190, a **true** "genius" would have known that] ... " GPMT's stock on "Form SB-2" with the SEC by "May 3, 2001."

¶62

A **true** genius would have known — as a **government** lawyer, they had a "continuing duty [of candor]" to the Courts (quoting Fasari v. Steinberg, 419 U.S. 379, 391 (1975) (Burger, C.J.) (concurring), "to set the record straight" (quoting United States v. Kojayan, 8 F.3d 1315, 1318-24 (9th Cir. 1993)) as a **government** lawyer, else an execrable "fraud on the court" is committed by the "reckless disregard for the truth" that the "genius" certainly knew that their 1224 trial witness (Zitter) had dismissed 2219 on 12/20/2007 (Dkt. #90:2219, Appx. I at 34), **annulling** and **voiding** Dkt. ## 50, 54, 65, 80, 83, and all **orders** and **judgments** (Dkt. ##54, 80, and 83) entered in 2219, nunc pro tunc, 02/02/2001 (the filing date of the 2219 complaint). Cf. Id. at 7-12, 18-19, 20-31, 34, 38-39.

¶63

The 0851 and 11-2151-Cr panels of the Second Circuit fair no better than the geniuses at the USAO: (1) the first 0851 panel circuit judges (Parker, Pooler, and Raggi) entered three of the most comical orders of all time: (a) July 21, 2009; (b) September 11, 2009; and (c) November 13, 2009, ruling that U.S. v. Ware, 04-Cr-1224 (RWS)(SDNY), ("1224") — a **criminal** case (see 1224 indictment at Appx. I at 46-56) — was the **same** case as Alpha Capital, AG, et al. v. IVG Corp., a/k/a GPMT, et al., 02-CV-2219 (LBS)(SDNY), ("2219"), a **civil** case, (see Id. at 1-3 cf. Id. at 4-6), clearly a schizophrenic ruling to enable the CCE's Vendetta Prosecutions to continue to be removed from the public eye, and to obstruct justice by not dismissing the 1224 indictment where the CCE's members would be civilly liable for the +$5.0 billion in damages. Cf. Ex. at 119(Dkt. 86)). ¶64

On or about 03/02/2012 the 11-2151-Cr panel of the Second Circuit, circuit judges (Hall, Katzmann, and District Judge Barbara S. Jones (SDNY) sitting as an appellate judge) to aid and abet the CCE, following the lead of the first 0851 panel, again, schizophrenicly (Ex. at 48: the 03/02/2012 order), entered the order, again, delusionally, claiming 1224 and 2219 are the **same** case: the law of the case prevented the panel from dismissing the 1224 indictment. (FRE 201(b) judicial notice of the Emergency Motion to Vacate filed in 11-2151-Cr; and 03/14/2012 Sup. #2 to motion for bail in 11-2151-Cr. (see Appx. II for Sup. #2 filed in 11-2151-Cr (2d Cir.),

12/13/2012

¶65

Thus, on four (4) prior occasions the Second Circuit has held that the <u>civil</u> 2219 proceedings (Appx. I at 4-6) are the same case as the <u>criminal</u> 1224 proceedings (Id. at 1-3), which is required if the Court's comical rulings are to make any rational sense — which they do not.

First, if 1224 and 2219 are the <u>same</u> case enabling 'law of the case' doctrine to prohibit the Court from dismissing the 1224 indictment (by the way the 'law of the case' doctrine is not <u>binding</u> on the Court) (the Court in <u>U.S. v. Quintieri</u>, 306 F.3d 1217, 1225 (2d Cir. 2002) noted the 'law of the case' doctrine is not mandatory (there are exceptions: newly discovered evidence, manifest injustice, prior ruling clearly erroneous, fraud on the court)) commenting:

> "... when a court has <u>ruled</u> on an issue, that decision should <u>generally</u> [there are exceptions] be adhered to by <u>that court</u> in subsequent stages of the <u>same</u> case." (emphasis added). Id. at 1225,

then, once on 12/20/2007 (see Appx. I at 34), when U.S. Attorney Kenneth A. Zitter, Esq. dismissed 2219 pursuant to Fed. R. <u>Civil</u> Proc. 41(a)(2) — dismissed the 2219 indictment — then the 1224 indictment (Id. at 46-56) was also dismissed without prejudiced reversing and vacating the conviction and sentence entered in 1224, e.g., Id. at 41-45, the USAO conceded on <u>08/12/2010</u>, <u>after</u> Zitter dismissed 2219 on <u>12/20/2007</u>, that 2219 and 1224 are not the <u>same</u> cases.

Second, if in fact 1224 and 2219 are the same case — found to be four (4) times by the Second Circuit (see ¶¶63, 64 supra), and also found to be the same case by Justice Ginsburg on 07/06/2012 (see <u>Ware v. United States</u>, 12A13 Rule 22 application for bail denied on 07/06/2012 by Justice Ginsburg also finding 1224 and 2219 to be the same case (I cannot imagine how)), then exactly who does Kenneth A. Zitter, Esq. represent? Cf. Id. at 1-3, where Zitter never made an appearance in 1224, i.e., the USAO was the plaintiff in 1224, then, cf. Id. at 4-6 where Zitter entered his appearance to represent the 2219 plaintiffs; and the USAO was not a party in 2219, nor was the 2219 plaintiffs a party in 1224, unless, or course, the 2219 Badian gang is the <u>same</u> as the USAO, which is entirely possible.

Third, noting from Id. at 4-6, Mr. Ware was not a <u>party</u> in 2219 (the civil proceeding, which was dismissed without prejudice on 12/20/2007 (Id. at 34)), which even if 1224 and 2219 are not the <u>same</u> case, the Rule 41(a)(2) dismissal  without prejudice (see Id. at 8-11, discussing Rule 41(a)(2) effects on 2219 and 1224) on 12/20/2007, +2.5 years prior to the Second Circuit purporting to "hear" and "determine" 0851 on 11/04/2011 (see e.g., Id. at 28-31, discussing the Second Circuit's fraudulent decision to perpetuate the cover for the CCE's members), where the USAO nor Zitter did not refile the 2219 complaint prior to 2008 (even before the USAO's 08/12/2010 fraudulent

12/13/2012

brief filed in 09-0851-Cr or the fraudulent proceedings in 11-2151-Cr or 11-4181-CV (stagnated proceedings: motion for leave to appeal a dismissed case pending since 09/2011), see Id. at 9(3) discussing NY CPLR 213(2) six year statute of limitation of any claim the 2219 plaintiffs might have had.

However, 15 USC §78cc(b) prohibits the 2219 plaintiffs from any enforcement of the contracts comprising the 02/02/2001 (see Id. at 15) transaction with respect to GPMT's "convertible notes" precluding the refiling of the 2219 complaint's claims; and by the law of the case (Id. at 13-17) found on 11/25/2002 (Dkt. #50) by the 2219 district court that the 2219 plaintiffs were in fact 15 USC §77b(a)(11) statutory <u>underwriters</u> of GPMT's securities, <u>Dabney</u>, 196 F.2d at 671, prohibits the statutory underwriters (fiduciaries) from breaching their "duty of loyalty" to GPMT and its shareholders, i.e., the 2219 plaintiffs' and the USAO's fraudulent and bogus convoluted indictment, and the mind boggling rulings of the 09-0851 and 11-2151 panels of the Second Circuit finding that 1224 and 2219 are the <u>same</u> case, **are all null and void ab initio** and <u>cannot be refiled as a matter of law</u>. 15 USC §78cc(b); <u>Dabney</u>, 196 F.2d at 671.

¶66

Therefore, whether or not 1224 and 2219 are the same case or not, both are -- as a matter of law -- moot as of 02/02/2001, the 2219 plaintiffs based on their own binding judicial admissions made at ¶¶10-21 of the 2219 complaint (Dkt. #1), particularly ¶13 (see Id. at 12(3) for Zitter's immaculately drafted judicial admission -- Zitter admitted on behalf of the 2219 plaintiffs and the DOJ's CCE members, and Second Circuit's criminal judges, as well as the criminal Robert W. Sweet (who is rumored to have never been confirmed by the Senate's Judiciary Committee; also District Judge Sweet is the most reversed judge in the history of the SDNY, which give credence to the rumor -- Sweet is an imposter perpetrating as a federal judge), the 2219 plaintiffs' "duty of loyalty" as a result of admitting to (2219 complt. at ¶¶10-21), and being found (11/25/2002 law of the case, Id. at 13-19), the 2219 complaint, even had the New York CPLR 213(2) had not run in 2008, <u>Dabney</u>, Id. at 671 prohibits <u>fiduciaries</u> from taking any actions which are detrimental to their beneficiaries (GPMT, its shareholders, and Mr. Ware, and his business interests).

¶67

All those in <u>privy</u> with the 2219 plaintiffs <u>fiduciaries</u> are also bound by the same fiduciary duty: (1) Dennis S. Meir, Esq., John W. Mills, Esq., Kilpatrick, Townsend & Stockton, LLP, Ari Rabinowitz, Kenneth A. Zitter, Esq., **convicted felon** Edward D. Grushko, Esq., Barbara R. Mittman, Esq., the members of the 0851 and 11-2151 panels of the Second Circuit (who colluding and conspired to not dismiss the 1224 indictment four (4) times)-- a "pattern of racketeering activity"; District Judge Robert W. Sweet, Leonard B. Sand, Loretta S. Preska, Thomas V. Sjoblom, Esq., Proskauer & Rose, LLP, Andrews

12/13/2012

& Kruth, LLP, Spencer C. Barasch, John C. Martin, Stephen Webster, Robert Hannan, Rebecca R. Fairchild, Stephen Korotash, William S. Greig, Esq., Kent J. Dawson, Robert J. Johnston, Margaret H. Murphy, James H. Morawetz, fugitive Thomas Badian, Alexander H. Southwell, Steven D. Feldman, Nicholas S. Goldin, Maria E. Douvas, James H. Roth, Esq., Lisa Scolari, Esq., Edward T.M. Garland, Esq., Manny Arora, Esq., David Levitt, Esq., Gary G. Becker, Esq., Marlon Kirton, Jeremy Jones, Carlton Epps, Myron Williams, Rick Sadler, Charles H. Jackson, Joyce Bihary, M. Regina Thomas, Marvin H. Shoob, Gerrilyn G. Brill, Thomas W. Thrash, Jr., Linda T. Walker, James Olas, George H. Carley. Carol A. Hunstein, Hugh Thompson, William A. Myers, Esq., William P. Smith, III, David Makol, Andrew J. Peck, Alexander J. Wilson, Sarah E. Paul, Katherine Polk-Failla, David Kelly, Michael J. Garcia, Preet Bharara, Steven Peikin, The Securities and Exchange Commission, the U.S. Department of Justice, the Office of the Solicitor General, and others known and unknown. Cf. Ex. at 119(Dkt. 86 - ref. 03-7973-CV civil appeal in 2219) to Appx. I at 34, Dkt. 86 null and void as [ ]of 12/20/2007 (Dkt. #90:2219) - moot.

¶68

According to the four (4) prior schizophrenic rulings of the Second Circuit—to obstruct justice by not dismissing the 1224 indictment (where the 1224 indictment did not charge an indictable offense against the laws of the United States), 1224 being the same case as 2219, then because the 2219 plaintiffs are admitted fiduciaries of GPMT, its shareholders, and its agents, then the USAO is also a fiduciary of GPMT, its shareholders, and its agents, i.e., the USAO was prohibited from filing the 1224 or 1115 presecutions against Mr. Ware — a breach of its fiduciary duty according to dysfunctional reasoning of the Second Circuit's criminal judges. Dabney, 196 F.2d at 671. See ¶63, supra for Second Circuit's prior schizophrenic rulings.

¶69

Given that the Second Circuit's judges have clearly shown a pattern of schizophrenic behavior, the panel members are medically unfit to sit as a federal judge, and 28 USC §351 medical disqualification proceedings are appropriate to remove Circuit Judges Hall, Pooler, Parker, Raggi, Katzmann, Kearse, Sack, Jacobs, and District Judge Barbara S. Jones (SDNY) from any further service as a federal judge, due to an inherent danger to the public given their current and continuing mental incapacity — the inability to reason in a rational and coherent fashion, and comprehend concepts of law and jurisprudence, evidenced by the rendering of nonsensical orders and judgments in 09-0851-Cr and 11-2151-Cr, 07-5222-Cr, and 07-5670-Cr (XAP), 1115, 1224, 03-7973-Cv and 2219, and 0831 (Kent J. Dawson and Robert J. Johnston); Linda T. Walker (NDGA), Thomas W. Thrash, Jr. (NDGA), Orinda D. Evans (NDGA), Julie E. Carnes (NDGA), George H. Carley (Supr. Ct. of GA), Carol A. Hunstein (Supr. Ct. of GA), Hugh Thompson (Supr. Ct. GA), Marvin H. Shoob (NDGA), Gerrilyn G. Brill (NDGA), Margaret H. Murphy (NDGA), Joyce Bihary (NDGA), M. Regina Thomas (NDGA), James N. Hatten (NDGA), Robert W. Sweet (SDNY)

Leonard B. Sand (SDNY), William H. Pauley, III (see the 08/19/2012 NYT article on Judge Pauley's misconduct), Ex. at 49.

¶70

According to the NYT article (Id. at 49), "[j]udges accused her of filing frivolous motions [the same language used by Judge Pauley with respect to Mr. Ware's motions], disobeying court orders [the same as the 1224 fraudulent indictment (see Appx. I at 46-56, see District Judge Dawson's bogus orders and judgments in 0831] ... and ordered her to pay about $13,000 in sanctions [see Judge Dawson's order (Dkt. #57 in 0831 ordering Mr. Ware to pay the SEC $4,310.00 "via a cashier check and cert. mail", remember the SEC pled the United States out of court on 07/14/2003 , see ¶¶7-10, supra] and even barring her from using certain evidence, [cf. Dkt. #35:1115, the Barasch Bribe Order which prevented Mr. Ware from using the SEC Brady Email, the SEC's Judicial Admissions, see ¶¶20-25, supra, for discussion of Judge Pauley's misconduct in 1115]." (emphasis added). (See Barasch Bribe Order (Ex. at 32-36) which "barred [Mr. Ware] from certain [favorable] evidence,").

¶71

The NYT article concerning Judge Pauley's conduct in that case is very similar to the allegations Mr. Ware had against Judge Pauley in the Rule 33 motion which the Office of the District Clerk, based on Judge Pauley's directive, refused to file and docket in 1115.

¶72

Furthermore, see District Judge Dawson similar misconduct (Ex. at 50) making pejorative comments against Mr. Ware for defending the 0831 case with vigor and zeal, i.e., Mr. Ware cannot be bought or sold.

¶73

First in the USAO's fraudulent 09-0851-Cr appeal brief (Ex. at 50, excerpts of page 40-41 ¶a) the USAO summarized the "THE SEC CASE" commenting on District Judge Dawson's bogus and completely fraudulent 10./22/2004 order (Dkt. #56:0831) which is excerpted below, which when placed in proper context that the SEC pled the United States (the real party in interest) out of court on 07/14/2003 via the judicial admissions at ¶¶30, 31, and 33, it is palpable that District Judge Dawson suffered and continues to suffer from delusion, and schizophrenia, a debilitating mental illness:

> In support of their opposition to the [SEC's bogus] motion for default [(Dkt. ##42, 43)], [a]ll of these arguments are completely frivolous, lacking in fact, and legally irrelevant ... [d]efendants' arguments in opposing default [after the SEC pled the United States out of court on 07/14/2003] are another example of their bad faith supporting this final sanction of default [to aid and abet

12/13/2012

the SEC, the USAO, and District Judge Sand, (the "CCE")
extort GPMT of $25 million in free trading shares and
+$500 million in market capitalization. (emphasis added).
2004 WL 2812108 (D. NV 10/22/2004) at *2.

¶74

Taking Judge Dawson's schizophrenia in context, that he is totally incompetent in
securities laws or advanced litigation involving securities laws (e.g., according to
the Lexis-Nexus database inputting the query "Dawson" and "78j(b)", the database returns
only four cases (4) since 1994 that list Judge Dawson as the judge -- clearly lacking in
experience in securities laws, thus the foolish rulings and other pejorative comments
implying a "deep-seated antagonism or favoritism which made fair judgment impossible"
in 0831.

¶75

Comparing Judge Dawson's 10/22/2004 order (Dkt. #56) with District Judge Pauley's
ultra vires remand order (Dkt. #149: entered after the Executive Branch on 11/07/2008
terminated 1115 Judge Pauley pejoratively commented):

> Finally, since remand, Ware has launched a barrage of
> post-judgment applications and motions. This Court
> [lacking subject matter jurisdiction over the proceedings]
> has reviewed them all [except I cannot understand the
> complexity of the motions]. They are uniformly and
> completely without merit ... and patently frivolous[,]
> (emphasis added),

with the language of the NYT's article (Ex. at 49) ("filing frivolous motions"
"disobeying court orders" recalling that the bogus and fraudulent 1224 persecutions
(Mr. Ware purportedly "disobeying and resisting a lawful order issued by the Honorable
Leonard B. Sand ... in connection with a civil lawsuit [2219].") (see Appx. I at 36),
"and refusal to participate in the discovery process" cf. 2812108 at *2 where District
Judge frivolously wrote, (Ex. at 51), while knowing that the SEC and USAO were
colluding and conspiring since 08/17/2004 (see bogus and fraudulent file access request
initiated on 08/17/2004 31 minutes after Mr. Ware notified Norris that SEC lawyer
Stephen Webster would be deposed, Ex. at 52-55):

> Second, the Court [fraudulently while knowing that the
> SEC and USAO were covertly, in violation of the 0831
> defendants' Fifth Amendment rights gathering evidence
> to be used in the Vendetta Prosecutions in New York (1224
> and 1115)] ordered monetary sanctions [see Dkt. #57:0831,
> extorting Mr. Ware on behalf of the SEC and USAO to give
> the SEC $4,310.00] for discovery violations, but
> Defendants have continued to violate discovery rules [and
> not self-incriminate themselves in fulfillment of their
> Fifth Amendment rights].

Comparing the above language of Judge Dawson in 0831 to the language in the NYT
article referencing Judge Pauley (Ex. at 49) the similarities are more than a
coincidence, but more seemly deliberateness.

¶76

There is not doubt that Judge Dawson lacked any competent understanding of the federal securities laws pertaining to market efficiency and materiality in the context of the Over-the-counter bulletin board stocks (INZS), and the required level of proof the SEC was required to make; as well as the defenses to a bogus and frivolous complaint such as the 0831 complaint, which the SEC on 04/16/2012, nine (9) years after filing on 07/14/2003, disavows claiming that they have no proof a licensed and admitted SEC lawyer actually signed the fraudulent and frivolous 0831 complaint. (Cf. Dkt. ## 167, 168 in 0831), i.e., the SEC conceded that the USA appeared pro se in 0831.

¶77

The SEC's judicial admission in its response (Dkt. #155) at page 3 n.3, admits that the United States (the real party in interest), appeared in 0831 pro se, that it is not permitted to do, cf. 28 USC §1654, only individuals can appear in federal court as pro se counsel, not a federal agency or the United States, ergo, 0831 is null and void ab initio, nunc pro tunc, 07/14/2003, as a matter of federal law.

¶78

Knocking out 0831, next 1224 fell, because SEC lawyer Norris testified on behalf of the United States as a FRE 404(b) witness and null and void documents from 0831 were introduced in 1224, nullifying the fraudulent 1224 proceedings. (Appx. I at 42-45).

¶79

Next, making a right turn on Pearl St., 1115 will be knocked out, once 0831 fell on 04/16/2012 (see Dkt. ## 155, 167, and 168). The 1115 proceedings depended entirely on the bogus 0831 proceedings:(a) Makol's 09/20/2005 bogus affidavit to procure the fraudulent arrest warrants for Mr. Ware, according to the affidavit at ¶11, Makol swore that he obtained information for the affidavit "from speaking with a staff member [SEC lawyer Jeffrey B. Norris, Esq.] that on or about July 14, 2003, the SEC brought a civil enforcement action in federal court in Nevada against INZS ... [0831]."

¶80

FBI S.A. Makol conveniently failed to inform the magistrate judge, a deliberately omission -- deliberate deception of the court, a Mooney and Napue violation -- that on 04/29/2005 in the Las Vegas 0831 proceedings, SEC lawyer Norris, pursuant to 18 USC §§6002-04, had immunized Mr. Ware, after Mr. Ware exercised his Fifth Amendment right to remain silent, and forced Mr. Ware to answer -- under pain of immediate arrest by District Judge Dawson -- all questions propounded by SEC Lawyer Jeffrey B. Norris, Esq. regarding 1224, 0831, 2219. (the "Immunized Evidence"). (see Dkt. #80:0831), Ex. at 55-56.

¶81

SEC lawyer Norris turned over the Immunized Evidence to the USAO who used the same to procure the 09/20/2005 arrest warrants, the 10/26/2005 1115 (Dkt. #7) indictment,

and used the Immunized Evidence at trial in 1115 and 1224; and the Second Circuit requested the USAO to turn over the Immunized Evidence to it on 06/11/2009 (see Ex. at 55), and the USAO provided,illegally in violation of the Mr. Ware's Fifth Amendment and Kastigar, the Second Circuit the Immunized Evidence on 06/18/2009 (see Ex. at 56).

¶82

The Second Circuit's accessing the Immunized Evidence irreparably tainted the 07-5222-Cr appeal in U.S. v. Ware, requiring the conviction and sentence be reversed and vacated per Kastigar and the Fifth Amendment. Ex. at 55-56.

¶83

However, even if the USAO had refused to supply the Second Circuit with the Immunized Evidence, the USAO used the Immunized Evidence to obtain the 09/20/2005 arrests for Mr. Ware (see Makol's aff'd at ¶¶13 et seqs where Employee-2 (Gov't Stooge Myron Williams) lied to Makol, regarding a Mytrack Account, which Norris obtained the details from Mr. Ware on 04/29/2005 under the immunity grant.

¶84

The USAO admitted into evidence the MyTrack account application, and the Second Circuit· used the same in reaching its 08/18/2009 decision in 07-5222-Cr.

¶85

Mr. Ware's retained counsel in 1115 (Michael F. Bachner, Esq.) breached his duties of loyalty, care, trust, and fidelity to Mr. Ware during the 1115 proceedings by passing confidential trial strategies to the USAO -- for personal gain in subsequent matters before the USAO.

¶86

Bachner,on or about 10/2006, in regard to Mr. Ware's request and demand for Bachner to file Kordel motions to suppress evidence gathered by the SEC in 0831 -- transferred to the USAO pursuant to the covert collusion contract signed by the SEC and USAO on or about 09/15/2004 (see Ex. at 52-52), which the USAO and SEC initiated on 08/17/2004 at approximately 11:40 A.M. (see Id. at 52*), i.e., within 31 minutes of Mr. Ware notifying SEC lawyer Norris that Mr. Ware would depose SEC lawyer Webster in regard to the 0831 investigation concerning collusion between the USAO and SEC, cf. Ex. at 24, 31 Mr. Ware's emails to Norris on 08/17/2004 regarding deposing Webster ─ informed Mr. Ware that he would not under any circumstances file a motion to suppress the SEC's evidence stating:

> I cannot and will not file any motion to suppress against
> the SEC ... the [USAO] and SEC would punish me if I did
> that ... you can file it yourself ... but I would not
> do that if I was you. Judge Pauley is going to kick your
> ass big time ... he is not a nice person ... he is not
> built like that.

12/13/2012

The best thing that I advise you to do is let me work you out a good plea deal ... I am pretty sure Southwell will accept something in the ball park of 4-5 years ... you damn sure don't won't to go to trial in front of Judge Pauley ... he's going to max you out once the jury finds you guilty ... which is guaranteed. (emphasis added).

¶87

Mr. Ware's rejected Bachner's generous offer to plead guilty and get "4-5 years", and on 10/04/2006 (Dkt. #21:1115) Mr. Ware effectively terminated Bachner for a conflict of interest and entered his appearance in 1115 as pro se counsel.

¶88

On 10/04/2006 (Dkt. minute entry) the USAO presented the superseded 1115 indictment adding Service Systems Int'l as a company Mr. Ware allegedly committed securities fraud against: The USAO superseded the indictment in such a way as to neutralize the fact that Mr. Ware informed Bachner in early September 2006 that INZS CEO Thomas Vidmar would testify for Mr. Ware at trial in 1115 that there was no securities fraud in INZS press releases; SVSY was added after 'SAUSA Bachner' breached his duty of loyalty to Mr. Ware and informed the USAO of the trial strategy that Vidmar would testify for Mr. Ware at trial in 1115, which, vitiated the bogus USAO's case, notwithstanding the indisputable fact the markets for both INZS and SVSY were inefficient. Ex. at 2, 4-7, 8-11, 16(Dkt. 96), 19(Dkt.113), 21.

¶89

After Mr. Ware terminated 'SAUSA Bachner' the USAO and Judge Pauley lacked a flunky, i.e., a Gov't Stooge to pass information to the CCE to undermind any defense Mr. Ware would mount against the Vendetta prosecution; thus, Judge Pauley to violate Mr. Ware civil rights on 10/16/2006 (Dkt. # minute entry) had 'SAUSA Gary G. Becker, Esq.' appear in court, and assigned Beckner as mandatory standby counsel, even though Mr. Ware has the means to hire his own standby counsel. Ex. at 45, 105.

¶90

Judge Pauley hired Becker as a Gov't mole to replace Bachner's role into the defense's strategy -- Becker sat at the defense counsel table throughout the 1115 trial, and frequently communicated with the prosecutors during the trial, even after Mr. Ware informed Becker not to have any further communications with the prosecutors.

¶91

Judge Pauley bribed 'SAUSA Becker' (who did not provide any services to Mr. Ware) with CJA payments totalling $25,000 for Becker's services to the CCE during 1115 -- Judge Pauley fined Mr. Ware the exact amount that Becker billed the government (filed a false claim) for the 1115 trials. Ex. at Id.

¶92

Judge Pauley has refused to consider all conflict of interest Cursio motions filed

12/13/2012

by Mr. Ware with respect to the conflict of interests of 'SAUSA Bachner's' refusal to file the Kordel suppression motions -- which Mr. Ware ultimately filed (see Dkt. ## 31, 32, and 40) on or about 01/03/2007; where the very next day on 01/08/2007 (Dkt. #34) AUSA Steven D. Feldman entered his appearance on behalf of the USAO in 1115.

¶93

On or about 01/03/2007 after Mr. Ware filed the Kordel motions to suppress the SEC's illegally obtained evidence, and to suppress the Immunized Evidence, Judge Pauley, at a pretrial conferenced threatened Mr. Ware with respect to going to trial (the same as Bachner has informed Mr. Ware (see ¶86, supra)).

¶94

At Dkt. #47, a transcript of the threat made by Judge Pauley, Judge Pauley informed Mr. Ware on 01/03/2007 as follows:

> There will be no adjournments or postponement"... there will be no investigations ... you wanted a trial and a trial you are going to get. The parties are directed to appear for trial on January 16, 2007. (emphasis added). (paraphrased).

¶95

On 01/05/2007 (Dkt. #44) District Judge Pauley staged the ruse conference -- lacking a window into Mr. Ware's defenses -- to learn whatever he could and to obstruct justice -- by not holding the evidentiary hearing on Mr. Ware' Kordel suppression motions where the USAO, the SEC, and Judge Pauley were panicking that at the evidentiary hearing Mr. Ware would discover the USAO and SEC's collusion and conspiracy during the 0831 proceedings; thus necessitating the Barasch Bribe Order's entry (Dkt. #35 on 01/08/2007) to violate Mr. Ware due process right and Sixth Amendment right to present a complete defense, by denying Mr. Ware the right to present the live testimony of the SEC's lawyers who conducted the 0831 proceedings having the SEC Brady Email and the SEC Judicial Admission in their possession, i.e., Brady and Giglio evidence, favorable to Mr. Ware. Cf. Ex. at 32-36 for the Barasch Bribe Order entered by Judge Pauley and bribed by the SEC and USAO, paid by Andrews & Kruth, LLP (SEC lawyer Barasch's law firm to Judge Pauley's alma-mater, Duke School of Law). Cf. ¶22 for SEC Brady Email; see ¶6, supra for SEC Admissions in 0831 complt; see Dkt. #84:1115 for details of bribery of Judge Pauley by the SEC and USAO via Spencer C. Barasch, Esq. and his law firm Andrews & Kruth, LLP during the pendency of 1115. (See Appx. III for transcript).

¶96

Judge Pauley was bribed by the SEC and USAO for the entry of the Barasch Bribe Order (Ex. at 32-36) entered after the 01/05/2007 ruse conference (Transcript at Dkt. #44, Appx. III) regarding the Kordel suppression motions (Dkt. ##31, 32, and 40 in 1115). (see AUSA Southwell's lies and perjury beginning at 22) cf. Ex. at 66-73 (05/19/06 conference, where Discovery Order was entered (Id. at 71-72)).

¶97

Due to collusion by the SEC, USAO, Judge Pauley, and 'SAUSA Michael F. Bachner, Esq.' (Mr. Ware's retained counsel referred by Atlanta lawyer Edward T.M. Garland, Esq.), Bachner was terminated (see ¶87, supra) for refusing to file the Kordel motions (Dkt. ##31, 32, and 40); Mr. Ware filed the Kordel motions as pro se counsel, with an attached affidavit and requested an evidentiary hearing to call the SEC's lawyers who conducted the SEC's 0831 Las Vegas litigation having possession of the Brady and Giglio evidence, and having details of the 04/29/2005 immunization of Mr. Ware by SEC lawyer Norris: "Special circumstances" existed in 0831.

¶98

In Mr. Ware's affidavit attached to Dkt. #31, Mr. Ware swore that the USAO nor the SEC, or its lawyers ever provided any notice during the 0831 proceedings of the imminent criminal persecutions (the Vendetta Prosecutions) 1224 (filed on 11/14/2004) and 1115 filed on 09/20/2005. Cf. U.S. v. Kordel, 397 U.S. 1, 11-13, n. 23, 24 (1970).

¶99

The fraudulent 1224 indictment (Appx. I at 46-56) was returned on 11/17/2004, more than five (5) months before the 04/29/2005 (Dkt. #80:0831) 0831 SEC-USAO show cause hearing; and (2) FBI S.A. Makol -- according to Norris' 10/04/2005 (Dkt. #95, Ex. at 58*) -- "[s]ome time after the Complaint was filed in this matter [Norris] was contacted by Special Agent David Makol [] of the FBI[]" after 07/14/2003 based on the null and void 12/22/2003 (Dkt. #80:2219) order of District Judge Sand -- entered after GPMT filed for Chap. 7 on 12/03/2003 in Atlanta, GA invoking 11 USC §§362(a) and 365(c)(2) (all contracts terminated to issue the securities of GPMT). Cf. Appx. I at 7-10, and 28-31); Once Makol contacted Norris "special circumstances" existed.

¶100

On 08/17/2004 Mr. Ware notified SEC lawyer Norris that SEC lawyer Stephen Webster would be deposed (See Ex. at 62-65) within 31 minutes[1] of Mr. Ware's notification to Norris that Webster would be deposed AUSA Southwell, AUSA Steven R. Peiken, and U.S. Attorney David Kelly (see Ex. at 52-55) concocted the fraudulent plan and scheme to obtain official assess to the SEC's 0831 files (where the USAO and the SEC had from shortly after Makol contacted Norris been sharing information, which is illegal).

On 08/17/2004 once the USAO contacted the SEC to exchange files "special circumstances" existed in 0831 requiring the Kordel notification to Mr. Ware -- which was not done.

---

1. See Ex. at 52(*) for the "Aug-17-2004 11:40" time stamp on the fax sent from AUSA Southwell directly to Norris "RE: Thomas Ware". Thus the question is: Why would Southwell contact Norris within 31 minutes of Mr. Ware's notification to depose SEC lawyer Webster seeking official access to the SEC's 0831 files where the purported investigation in New York based on Judge Sand's null and void 12/22/2003 order (Dkt. #80), purportedly involved contempt of court?

12/13/2012

¶101

The SEC and USAO bribed Judge Pauley (see note, below) to cover up the fact that since "some time [shortly after 07/14/2003 when the SEC pled the United States out of court in 0831 I] ... was contacted by Special Agent David Makol [] of the FBI," (see Ex. at 58(*)): The SEC and USAO bribed Judge Pauley for Dkt. #35:1115 (Ex. at 32-36).

¶102

In Appx. III beginning at 19 to 31 AUSA Southwell and AUSA Feldman on 01/05/2007 (Dkt. #44:1115) at the "ruse" conference arranged by Judge Pauley, the SEC and the USAO to peek into Mr. Ware's trial strategy, AUSAs Southwell and Feldman orchestrated a "deliberate deception" -- in violation of Mooney and Napue -- and deliberately omitted, and committed perjury in regard to the evidence the USAO illegally gathered in collusion and conspiring with the SEC during the 0831 Las Vegas proceedings.

¶103

At a previous conference held 05/19/2006 (Dkt. #17 transcript), (see Ex. at 66-78), Judge Pauley inquired of AUSA Southwell (Id. at 72 L 14) regarding Mr. Ware's "application for disclosure of communications between the SEC and the [USAO] in connection with this matter." Cf. "communications" included faxes and emails. (emphasis added).

¶104

Judge Pauley representing the USAO and answering for the Gov't (Id. at L 17-24) commented:

> The defendants' allegations [prepared negligently by Bachner who was in on the scam to suppress the evidence of the illegal access to the SEC's files prior to official clearance being granted] of collusion between the SEC staff [Norris, Barasch, Martin, Hannan, Martin, Korotash, and Webster] and the U.S. Attorney staff [Southwell, Makol, Goldin, Kelly, Garcia, Peiken, and others] are conclusory ... [a]nd I take it, Mr. Southwell, that the only communications between the [USAO] and the SEC that are in writing are these letters or are there other letters or exchanges [emails, faxes, complaints, depositions, discovery material] between the agencies? (emphasis added).

Another question which has never been answered is: How did Southwell and the USAO on 08/17/2004 become aware that Mr. Ware intended to depose Webster? Either Norris, or another SEC lawyer, contacted the USAO informing the USAO the access granted to the SEC's files without official clearance was illegal, and to cover up the criminal sharing of unauthorized information, the SEC and USAO colluded and conspired on 08/17/2004 to fabricate and manufacture a fraudulent official file access request in violation in 18 USC §§2, 4, 201, 241, 242, 371, 891-94, 1201-02, mail and wire fraud, 1346, 1503, 1505, 1510, 1621-23, 1956-57, and 1961-64, (the "SEC-USAO RICO Offenses").

Therefore, Mr. Ware's requested evidentiary hearing on exactly what SEC documents were accessed by the USAO, and exactly when was required to have been granted to answer that question.

That is the reason the USAO and the SEC bribed Judge Pauley to cover up their crimes committed by illegally accessing the SEC's files without official clearance.

12/13/2012

## THE SOUTHWELL PERJURY AND DELIBERATE DECEPTION ON 05/19/2006
¶105

AUSA Southwell committed perjury, and a "deliberate deception" on the "suppression court" by knowingly answering falsely and committing perjury, (18 USC §§1621-22) and to obstruct an investigation into his own personal conduct by illegally accessing the SEC's files prior to official[2]clearance being granted (18 USC §§1503, 1505, and 1510, and 4, and 371) (cf. ¶100 n. 1, supra, and see Id. at 52, AUSAs Southwell's 08/18/2004 fax "communication" to SEC lawyer Norris) (Id. at 52-55) on 08/17/2004 (then within 31 minutes of Mr. Ware notifying the SEC that SEC lawyer Webster would be deposed (see Ex. at 62-65: Mr. Ware's emails to Norris regarding deposing Webster)).

¶106

On 08/17/2004 (Id. at 62(*)) at 11:09 AM Mr. Ware first notified SEC lawyer Norris that SEC lawyer Webster would be deposed regarding the SEC's 0831 litigation (Mr. Ware knowing that the SEC pled the United States out of court on 07/14/2003 immediately upon, an unknown person, filing the SEC's fraudulent, bogus, and entirely frivolous 0831 Complaint (Dkt. #1) containing the SEC's binding judicial admissions at ¶¶30, 31, and 33 (see Ex. at 22-23).

¶107

AUSA Southwell on 05/19/2006 in New York, NY before the 1115 court during a judicial proceeding lied and committed perjury regarding the USAO's "communications" between the SEC on 08/17/2004 (Ex. at 52-55), and further lied and committed perjury to deliberately conceal him providing on 08/16/2004 (see Ex. at 29) Judge Sand's null and void ab initio 12/22/2003 order entered in 02-Cv-2219 purporting to refer Mr. Ware for criminal prosecution because Mr. Ware refused to violate SEC national policy (SEC Release 33-7190 and SEC IR 5121 (see the Boat Basin case where Sweet, J. and government witness Zitter were involved, Id. at 46-47, referencing SEC IR 5121)).

¶108

AUSA Southwell further lied and committed perjury, and deliberately deceived the Court in respect to the USAO's email communications to SEC lawyer Norris on 10/06/2004 informing Norris that Mr. Ware "was improperly arrested [based on the null and void 12/22/2003 order of Judge Sand]" by the U.S. Marshals, and illegally detained by District Judge Thomas W. Thrash, Jr., (NDGA), on an illegal bail of $250,000.00.

---

2  The file access clearance was not "official" but granted by the SEC to enable the SEC and the USAO to illegally conspire and collude to violate Mr. Ware's civil rights (18 USC §§241, 242, 371, 1201-02, and 1961-64), i.e., to violate Mr. Ware's constitutional Fifth Amendment right to remain silent and not provide the Government with any evidence to be used against him in the criminal Vendetta Prose cutions. The 0831 Las Vegas litigation ceased being an official SEC proceeding on 07/14/2003 once the Complaint was filed pleading the USA out of court, i.e., the 0831 court lost all subject matter jurisdiction over the proceedings.

12/13/2012

Southwell informed Norris not to worry that Mr. Ware was able to make bond on the illegal bail set by Judge Thrash (who was in on the scam with a fellow Harvard alum 2219 plaintiffs' lawyers Zitter and Dennis S. Meir, Esq. (2219 plaintiffs' 93031 bankruptcy lawyer who Zitter testified supplied the "strategy" used to deceive and dupe Margaret H. Murphy, the bankruptcy judge in 93031 for the entry of Dkt. #28 on May 21, 2003 in 93031), because "we [myself, Goldin, Kelly, Peiken, and Makol] are [busy] working on a fraudulent criminal contempt charge (see Appx. I at 46-56 for fraudulent 04-Cr-1224 indictment, see also Id. at 1-3 for docket information)] which (confidentially) should happen within a week or two." (emphasis added). Ex. at 30, 90-102 (Zitter's perjury during 1224).

¶109

On 05/19/2006 AUSA Southwell deliberately deceived the Court, committed perjury, and obstructed justice to impede a criminal investigation into his, the SEC's, and the USAO's illegal file access during the 0831 Las Vegas proceeding, which was conduct in the clear absence of all subject matter jurisdiction after 07/14/2003 upon the filing of the SEC's complaint (Dkt. #1 containing ¶¶30, 31, and 33, the SEC Judicial Admissions), when at Ex. at 72-73, Southwell lied, committed perjury, and deceived the Court stating:

> "I believe there may be some transmittal letters from the SEC to the [USAO] when they sent materials [pursuant to the fraudulent file access granted by Spencer C. Barasch, Esq. (see Ex. at 54(*) on 09/02/2004 while Mr. Ware was in jail in Atlanta, GA based on the SEC, USAO, and Judge Sand's false and illegal arrest based on the null and void 12/22/2003 referral order (Dkt. #80:2219) and approved by SEC Chief Counsel Joan E. Mckown on 09/15/2004 (see Id. at 54(**)-55), and forwarded (via mail or fax) to AUSA Steven R. Peiken in the USAO] but they're non substantive and other than that there's not other letters." (emphasis added). (the "Southwell Perjury and Deliberate Deception").

¶110

On 05/19/2006 at the conference AUSA Southwell knew that the 0831 SEC proceedings were conducted without subject matter jurisdiction by the district court after 07/14/2003 since SEC lawyer Norris supplied S.A. Makol -- (who used the fraudulent information in the 0831 complaint to seek arrest warrants for Mr. Ware on 09/20/2005 in regard to 1115, and used the same in his (Makol's) grand jury testimony to procure the fraudulent 1115 indictment (Dkt. #7:1115), committing grand jury fraud aided and abetted by AUSA Southwell (18 USC §§1622-23), cf. Dkt. #1 (Makol's complaint), -- with a copy of the 0831 "Complaint" filed by the SEC.

¶111

Prior to the 05/19/2006 conference (Dkt. #17, Ex. at 66-78) Mr. Ware had requested that Michael F. Bachner, Esq. file the motions to suppress, but Bachner adamantly

12/13/2012

refused to file any offensive pleadings challenging the USAO's bogus -- bogus indictment. Why? Because the SEC's 07/14/2003 binding judicial admissions pled in the 0831 complaint at ¶¶30, 31, and 33 -- binding on the United States (the real party in interest) and its privies (the SEC, the USAO, S.A. Makol) prohibited the USAO from establishing any probable cause (materiality conceded by the USA regarding INZS' press releases) for securities fraud or conspiracy regarding INZS, as a matter of law.

¶112

Southwell and the USAO knew on 05/19/2006 that the SEC did not believe there was any conspiracy between Mr. Ware and the employees (the Gov't Stooges), because the SEC lawyers did not include the Gov't Stooges in the 0831 complaint -- and SEC lawyer Norris informed Gov't Stooge Jeremy Jones on or about 07/13/2004 that he was not being added to the 0831 complaint because the SEC "'believed your SEC deposition testimony that you were not involved in any conspiracy with Mr. Ware, and had you known you would not have gotten involved.'" (emphasis added). Cf. ¶¶22-24, supra.

BRADY AND GIGLIO SUPPRESSION CONSPIRACY
¶113

Southwell also knew that Judge Pauley entered his Brady and Giglio discovery orders (Ex. at 71-72) ordering the USAO, and its investigators (the FBI and the SEC), to fulfill their "continuing duty to turn over exculpatory material ... in time for its effective use at trial, [continuing at trial, appeal, and post trial on Mr. Ware's Rule 33, Rule 6(e), Kastigar, Franks, Cursio, Fraud on the court, motion to void the Gov't Stooges' plea and cooperation agreement, and all other post-trial proceedings]."

¶114

AUSA Southwell, and the USAO were ordered to turn over the SEC Brady Email sent to Gov't Stooge Jones by SEC lawyer Norris (even if not actually in the possession of the USAO: USAO imputed with knowledge of all evidence gathered by the SEC and FBI during the 1115 investigation; and since the SEC and USAO entered into the fraudulent file access contract on 09/02/2004 (Ex. at 52-55), the USAO had access to all information in the SEC's files; as well as the 0831 Complaint containing the Brady evidence SEC Judicial Admissions (¶¶30, 31, and 33), as well as the evidence submitted to the full Commission which authorized the filing of the bogus and fraudulent 0831 Complaint; as well as Mr. Ware's Wells confidential submissions. Cf. Dkt.#157:0831.

¶115

As of today, 08/29/2012 neither the USAO nor the SEC, nor the 0831 District Court have ever turned over all Brady and Giglio evidence in the possession of the SEC, FBI, or USAO, i.e., the USAO, the SEC, and the FBI, have been, and are currently since 05/19/2006 in criminal contempt of the Court's 05/19/2006 (Ex. at 71-72) discovery order, (the "Discovery Order"). (see Dkt. #157:0831, Emergency Motion for Brady disclosures).

(29)

¶116

AUSAs Southwell, Goldin, Feldman, Fish, Douvas (who submitted a false declaration (see Hall, J. 05/15/2009 order in 09-0851-Cr and 07-5222-Cr in regard to AUSA Douvas' false and fraudulent declaration in regard to the USAO's "continuing duty to turn over exculpatory material ... in time for its effective use at trial [after trial, on appeal, and in post-trial matters]." (quoting Pauley, J. 05/19/2006 Discover Order, Ex. at 71-72) all have knowingly, willfully, deliberately, and intentionally, and execrably ("in reckless disregard for the truth" a fraud on the court committed by government lawyers), with the approval of David Kelly, Steven R. Peiken, Michael J. Garcia, Preet Bharara, Donald B. Verilli, Jr., Eric H. Holder, Jr., Lanni Breuer, Neal K. Katyal, and others known and unknown, (the "DOJ Co-conspirators"), willfully in violation of 18 USC §401(3), violated the Discovery Order, and have continued to violate the Discovery Order by suppressing Brady and Giglio evidence in the possession of the SEC, the FBI, or the USAO. Cf. Dkt. ##153, 157, 158, 159-163 in 0831 for the Brady and Giglio fraud and 18 USC §401(3) violations by the DOJ Co-conspirators. Cf. Id. at 71 L 9-16 (USAO was in possession of SEC's Brady Email to Jeremy Jones).

¶117

District Judge Pauley was and is required by Fed. R. Crim. Proc. 42(a) to criminally prosecute -- pursuant to 18 USC §2, 4, 241, 242, 371, and 401(3) -- the willful, intentional, deliberate, and knowing violation of the Discovery Order, else Judge Pauley obstructs justice and commits a fraud on the court, which he has done repeatedly before, during and after the 1115 proceedings; most recently on 08/17/2011 (Dkt. #178). Cf. Id. at 29-30 (SEC-USAO emails); USAO knew markets for INZS and SVSY were not efficient, Ex. at 2-7, Brady evidence.

¶118

On 08/17/2012 (Dkt. #178) Judge Pauley committed a criminal fraud on the court, obstructed justice, conspired, colluded, and racketeered with the DOJ Co-conspirators, and others known (District Judges Sand, Sweet, Dawson, Thrash, Evans, Carnes, Jones, Preska, magistrates Walker, Johnston, Peck, and Pittman), and Circuit Judges Parker, Pooler, Raggi, Hall, Jacobs, Kearse, Sack, and Katzmann, collectively (the "Racketeers") by deliberately impeding Mr. Ware's right to have his claims processed

12/13/2012

by a fair and impartial tribunal and judicial officer (a judicial officer lacking a personal liberty or pecuniary interest in the outcome of the proceedings) by lying in a judicial document (committed perjury).

¶119

Judge Pauley told a bold-faced lie, a two-faced criminal, completely incompetent, racist, Jim Crow, sadistic, fool, while knowing that an <u>order</u> had never been entered on Mr. Ware's Rule 6(e) motion (Dkt. #161) for disclosure of the 1115 <u>perjured</u> grand jury testimony of S.A. Makol who <u>lied</u> before the grand jury aided and abetted by AUSA Southwell and Michael J. Garcia to have Mr. Ware fraudulent indicted (Dkt. #7) on or about 10/26/2005, i.e., Dkt. #161 was "pending" on 08/17/2011 when Judge Pauley illegally "terminated" 1115 to obstruct justice, and commit a <u>fraud</u> on the court.

¶120

Judge Pauley also knew on 08/17/2011 that the following motions were "pending" before the Court -- the official docket does not contain any Rule 55 order entered on any of the following motions: Dkt. ## 117, 123, 118, 119, 121, 122 (<u>Brady</u> and <u>Giglio</u> disclosure motion by the USAO), 126, 129, 130, Rule 60(d)(3) motion (Dkt. #142), see Dkt. #145 (letter of inquiry regarding pleadings filed), 147, 148, 153, 154, 155, 157, 158, 159, 163, 165, 167, 168, 170, 171, 173, 175 (motions "pending" in the district court), and 176, (the "Pending Motions").

¶121

Probable cause <u>currently exist</u> to believe that Judge William H. Pauley, III committed the offense of obstruction of justice by lying, committing perjury, by issuing a judicial order known to contain <u>false</u> statements (Dkt. #178) on 08/17/2011 in the Southern District of New York in service to the CCE run by the DOJ Co-conspirator and the Racketeers, while effectively obstructing the Pending Motions from being adjudicated in an impartial tribunal -- a <u>Hazel Glass - Atlas</u> fraud on the court in violation of the Due Process Clause of the Fifth Amendment.

¶122

It is indisputable that Judge Pauley is guilty of committing the DOJ RICO Offenses by entering the false and fraudulent 08/17/2011 order (Dkt. #178) where Judge Pauley

(31)

knew that he never entered a Rule 55 order on any of the Pending Motions, i.e., Judge Pauley is also guilty of obstruction of justice to cover up the fact that he accepted the bribe paid by Spencer C. Barasch, Esq. via Andrews & Kruth, LLP -- on behalf of the SEC and USAO -- to cover up a criminal investigation into the SEC's and USAO conduct during the 0831 Las Vegas litigation. Cf. note 1 at ¶100, supra; and n.2 at ¶105, supra; and also see Dkt. #84:1115 for the details of the bibery of Judge Pauley by Barasch ( a leader and organizer of the CCE).

¶123

Judge Pauley's, the SEC's, and the Racketeers RICO activities have cost Mr. Ware, GPMT, Silver Screen Studio Group, Inc., Global One Investment Holdings, Inc, and their shareholders, and their business interests, (the "RICO Victims") more than +$5.0 billion in damages (loss profits, loss business opportunities, incurred four bankruptcies due to Judge Sand's and the Second Circuit's 03-7973-Cv panel's frauds, the frauds of Thomas V. Sjoblom, Esq. and Proskauser & Rose, LLP who negligently and fraudulently represented GPMT during 2219 while conspiring and colluding with Judge Sand, the 2219 plaintiffs, and Kenneth A. Zitter, Esq.; the frauds committed by District Judge Thomas W. Thrash, Jr. (NDGA) who colluded and conspired with the New York Racketeers to illegally arrest and detain Mr. Ware on 09/01/2004 in Atlanta, GA based on the null and void 12/22/2003 orders of Judge Sand to extort Mr. Ware and GPMT of +$25 million in free-trading shares. Cf. Ex. at 119-20, 121-37.

¶124

The frauds of Dennis S. Meir, Esq., John W. Mills, III, and Kilpatrick, Townsend, & Stockton, LLP, ("KTS"), cost the RICO victims more than $75 million in damages during four (4) bankruptcies filed in the U.S. Bankruptcy Court (NDGA). (See Id. at 90-102).

¶125

KTS colluded and conspired with James H. Morawetz, Kenneth A. Zitter, Esq., the 2219 plaintiffs, Judge Sand, Margaret H. Murphy during the proceedings in 93031; and filed false, fraudulent pleadings (Dkt. ##10, 16), and colluded with Murphy for the entry of the fraudulent order on May 21, 2003 (Dkt. #28) -- entered to continue the extortion of GPMT by the 2219 plaintiffs and Judge Sand by terminating the 11 USC §362(a) automatic stay in 93031. Cf. Appx. I at 38-40; see Ex. at 88-102.

¶126

KTS, Morawetz, and Murphy also knew that 11 USC §365(c)(2) terminated all contracts to issue the securities of GPMT; and also knew that Pepper v. Litton, 308 U.S. 295, 305-06 (1939) permitted the DIP to collaterally challenge the 2219 plaintiffs' fraudulently procured judgment in the 2219 court. (Dkt. #54:2219).Id at 88-89.

¶127

Murphy rigged and fixed the 93031 proceedings while criminally colluding and

and conspiring with KTS and the 2219 plaintiffs, and Judge Sand to extort the RICO Victims of $25 million in free-trading shares, and +$500 million in market capitalization by the entry of the fraudulent May 21, 2003 order (see Appx. I at 38-40; see also Id. at 7-9 for sworn testimony of 2219 plaintiffs' lawyer Zitter at trial in 1224 (Tr. 350-51, 352, and 359 regarding KTS's bankruptcy fraud) (see 12/19/2011 letter) of fraud notification in the possession of Judge Murphy who refused to docket or file the fraud notification. Cf. with Murphy's law clerk's letters at Ex. at 79-80 vowing not to notify Judge Murphy (obstruction of justice) of the crimes committed in 93031 by KTS and the Racketeers. (see also Id. at 90-102 for KTS' frauds on the court).

¶128

In the 12/19/2011 letter to Judge Murphy, Mr. Ware detailed the frauds committed by KTS and Zitter during the 93031 proceedings: On 08/13/2003, after Murphy entered the bogus May 21, 2003 order (Dkt. #28, Appx. I at 38-40), 2219 plaintiff Stonestreet, L.P. -- during illegal ex parte communications between it and Judge Sand, (see Id. at 18-19) that it did in fact -- despite committing perjury previously -- "own more than 9.9% of [GPMT's] stock" which had 'dire consequences' for the 2219 plaintiffs and their privies. Cf. Id. 25-31 (discussing the dire consequences of the 08/13/2003 judicial admission of 2219 plaintiff Stonestreet, L.P.). Cf. Ex. at 90-102 for 12/19/2011 letter.

¶129

At trial in 1224, under vigorous cross-examination 2219 plaintiffs lawyer Zitter, capitulated and admitted that KTS (Meir, and Mills) devised the "strategy" used to "deliberately deceive" Judge Murphy during the 93031 proceedings, (see Ex. at 93-95 testimony of Zitter at trial in 1224); and devised the strategy to commit perjury on the 93031 bankruptcy court regarding Stonestreet's true "beneficial" ownership of GPMT's shares. See Ex. at 99-102 for Zitter's admissions concerning KTS, Meir, and Mills.

¶130

Neither Meir, Mills, or Judge Murphy, all officers of the court, have come forward to announced to the parties the perjury committed by Stonestreet, Meir, Mills, and KTS, as officers of the court -- a fraud on the court for a reckless disregard for the truth. Cf. Appx. I at 19 Judge Sand found (which is res judicata and collateral estoppel against KTS in a civil fraud suit for $5.0 billion, i.e., a directed verdict in favor of the RICO Victims), on 08/13/2003 Stonestreet, L.P. committed perjury.

¶131

In fact on two occasions Mr. Ware notified Judge Murphy of Meir's and KTS' frauds (see Ex. at 79-80), and both occasions Pat Sinback (to obstruct justice) vowed "[y]our letter[s] will not be shown to Judge Murphy and will not be made a part of the Debtor's file." (emphasis added). Cf. Bryan v. Murphy and Thrash, 243 F.Supp. 2d 1375, 1377 (NDGA 2003). (Judge Murphy conspired with lawyers to cover up bankruptcy fraud).

12/13/2012

¶132

Since 07/12/2012 Mr. Ware has filed pleadings with the U.S. Bankruptcy Court in Atlanta (07/12/2012 (Ex. at 84-85), and again on 07/30/2012 (Ex. at 86-87) with regard to the frauds committed by Meir, Mills, Morawetz, the 2219 plaintiffs, Zitter, Judge Sand, Judge Murphy, Judge Bihary, and M. Regina Thomas, collectively (the "Bankr. Racketeers") during the 93031 proceedings, and in every case, either M. Regina Thomas (the Clerk of the Court) refused to file the 07/12/2012 pleadings (see Ex. at 81), or Chief Judge Bihary (see Ex. at 83) refused to file the pleadings in violation of Bankr. Rule 5005(a) to obstruct justice and cover up the Bankr. Co-conspirators crimes committed regarding 93031 to extort GPMT and its shareholders and agents (Mr. Ware).

¶133

M. Regina Thomas (Clerk of the Bankr. Court) has refused all attempts by Mr. Ware to have the 93031 docket certified pursuant to Bankr. Rule 5006, and furthermore, to obstruct justice and commit a fraud on the court has refused to return the unfiled and undocketed pleadings submitted to the Court for filing in 93031. Ex. at 82.

¶134

Ms. Thomas has refused to certify the docket because she knows that Mr. Ware will then be able pursuant to FRE 902 submit. . a certified copy of a public record admitted in other proceeding as self-authenticating exception to the hearsay rule, i.e., Ms. Thomas, Judge Bihary, and Judge Murphy are all obstructing justice in other proceedings in a vain attempt to cover up Judge Murphy's frauds in 93031 (issuing the bogus May 21, 2003 order (Dkt. #28), see Appx. I at 38-40) while knowing that the 2219 plaintiffs' judgment (Dkt. #54: 2219) was procured by fraud and collusion between GPMT's lawyer (Thomas V. Sjoblom, Esq. and Proskauer & Rose, LLP), the 2219 plainitffs, and Judge Sand to extort GPMT in violation of 18 USC §§371, 891-94, 1956-57, and 1961-64. (see Ex. at Id.). Ex. at 79-102 (bankruptcy fraud by Judge Murphy, et al.).

¶135: Conspiracy and frauds of District Judge Thomas W. Thrash, Jr.

On 09/01/2004 the U.S. Marshals stormed into Mr. Ware's law office located at 101 Marietta St., Ste 1070, Atlanta, GA, based on the null and void ab initio 12/22/2003 order of Judge Sand, and illegally searched, seized, and arrested Mr. Ware in violation of the Fourth Amendment and Fifth Amendments. Cf. AUSA Southwell's email to SEC lawyer Norris dated 10/06/2004, Ex. at 30, informing Norris that Mr. Ware "was improperly arrested" on 09/01/2004. (emphasis added). Ex. at 119-137 (Judge Thrash's frauds).

¶136

On 09/01/2004 after being illegally searched, seized, and arrested, the U.S. Marshal took Mr. Ware before District Judge Thomas W. Thrash, Jr. (NDGA), who was waiting, and part of the scam to kidnap Mr. Ware for refusing to violate SEC national

policy (SEC Release 33-7190 and SEC IR 5121)(see Ex. at 46-47 where Sweet, J. (the 1224 court's judge) referenced IR 5121 as his source for authority to enter a stay in Boat Basin) and issue fraudulent Rule 144(k) legal opinions to the 2219 plaintiffs admitted 15 USC §77b(a)(11) statutory underwriters of GPMT's securities: fiduciaries and their privies also fiduciaries. Dabney, 196 F.2d at 671, which prohibited the 2219 plaintiffs from filing the 2219 complaint, (Dkt. #1), see Ex. at 119-137.

¶137

Judge Thrash refused to release Mr. Ware, and refused to confirm whether or not GPMT had in fact filed [ ] for Chap. 7 on 12/03/2003 (cf. Zitter 1224 trial testimony regarding GPMT's bankruptcy filing at Ex. at 93-95, 98-102), see also Id. at 120.

¶138

To aid, abet, and directly participate in the CCE, Judge Thrash, rather than releasing Mr. Ware -- the 12/22/2003 order (Dkt. #80:2219) was ruled by Judge Sand himself (see Dkt. ##87, 88 in 2219) on 09/28/2004 that the Court's 06/22/04 (Dkt. #83) was null and void more than 100 miles from New York, NY, i.e., the U.S. Marshals on 09/01/2004 illegally searched, seized, and arrested (kidnapped) Mr. Ware; and Judge Thrash illegally detained and imposed an illegal bail -- in violation of the Eighth Amendment -- on Mr. Ware on 09/01/2004. Cf. Dkt. #85 in 2219; Id. at 119-20.

¶139

Lacking all subject matter jusrisdiction over the bogus, fraudulent and ultra vires 09/01/2004 "Atlanta Kidnapping" proceedings, Judges Sand, Thrash, and the U.S. Marshals are all liable to Mr. Ware for $250,000,000 in damages for false arrest, illegal search and seizure, malicious prosecution, intentional infliction of emotional distress, damages to Mr. Ware's business interest, pain and suffering, and other injuries because Mr. Ware refused to violate the federal securities laws and issue fraudulent Rule 144(k) legal opinions to the 2219 plaintiffs (admitted statutory underwriters and fiduciaries of GPMT ineligible for Rule 144(k)). Cf. Ex. at 90-97, Ex. #6 submitted for filing in 12-CV-1671 (MHS)(NDGA), ("1671"), but covered up by District Judge Shoob to aid and abet the CCE's objectives to silence Mr. Ware's voice against judicial and prosecutorial corruption. Ex. at 119-137.

¶140

Not being content, and due to an insatiable avariciousness, Judge Sand, fraudulently, had his stooges David Kelly and AUSA Alexander H. Southwell (See Southwell's email to SEC lawyer Norris dated 10/06/2004 at Ex. at 30 informing Norris the USAO was still going to pursue the bogus case, even after Sand held the 12/22/2003 (Dkt. #80) and 06/22/2004 (Dkt. #83) orders were null and void more than 100 miles from New York, NY, cf. ¶139, supra, and Dkt. #88:2219, on 11/17/2004 procure a fraudulent

12/13/2012

indictment in U.S. v. Ware, 04-Cr-1224 (RWS)(SDNY), ("1224"). Appx. I at 46-56.

¶141

On 08/12/2010 Preet Bharara (the U.S. Attorney (SDNY)) and his chief of appeals (AUSA Katherine Polk-Failla) conceded that the 1224 indictment did not charge an offense against the laws of the United States, and therefore the 1224 indictment was null and void ab initio. Cf. Ex. at 33, 41-45, and Appx. I at 34 (the 12/20/2007 Rule 41(a)(2) dismissal of 2219 without prejudice by Zitter and signed by Judge Sand, annulling and voiding the bogus 12/22/2003 (Dkt. #80), the 06/22/2004 (Dkt. #83), and the fraudulent purported conviction and sentence entered in 1224 by Sweet, J. who conducted 1224 lacking all subject matter jurisdiction, and is personally liable for $500,000,000.00 in damages to Mr. Ware for false imprisonment, false prosecution, malicious prosecution, selective prosecution, bribery, perjury, fraud, conspiracy, racketeering, kidnapping, wire fraud, mail fraud, money laundering, Hobbs Act, falsifying judicial orders, counterfeiting a conviction and counterfeiting a judgment of sentence. Appx. I at 41-45 (USAO's mea culpa at 45(¶3)).

¶142

It is rumored that Robert W. Sweet -- the most reversed district judge in the history of the Southern District of New York -- was never confirmed by the Senate Judiciary Committee, i.e., Sweet is an imposter posing as an Article III judicial officer, lacking all authority to conduct any criminal proceeding.

¶143

After procuring the fraudulent 1224 indictment on 11/17/2004 (Appx. I at 46-56), the USAO had the U.S. Marshal (NDGA), again storm into Mr. Ware's law firm, and again illegally search, seize, and arrest Mr. Ware on the null and void 1224 indictment, conceded on 08/12/2010 by Preet Bharara did not charge an offense (there was no probable cause lacking an offense). Id. at 45(¶3).

¶144

On 02/03/2005 after being illegally arrested, searched, and seized, Mr. Ware was taken before magistrate judge Linda T. Walker (NDGA), who was at the time of the arraignment under the influence of drugs or alcohol, or both, based on her appearance, and her slurred speech and conduct -- all the symptoms of an alcoholic. Ex. at 141-44.

¶145

AUSA Gail McKenzie (NDGA), and Judge Walker, being none-the-wiser, lacked the requisite mental capacity to comprehend the fraudulent 1224 indictment -- which did not charge an indictable offense -- and detained Mr. Ware until 2/11/2005, when Mr. Ware posted an illegal bail of $30,000.00. Ex. at 145-55. (Judge Walker's frauds).

12/13/2012

¶146

On 02/03/2005 lacking an indictment which charged an indictable offense against
the United States, magistrate Linda T. Walker lacked all authority to detain Mr. Ware
on an illegal bail of $30,000.00; and violated Mr. Ware's civil right to be free from
any illegal detention. (see Ex. at 147 (04-Cr-1224 indictment: criminal contempt)).

¶147

On 02/03/2005 Judge Walker rather than performing her duties in an impartial
manner, and while sober, during the illegal Rule 5 initial appearance on the 1224
fraudulent indictment, shouted from the bench: "You have a history of this kind of stuff
... you are being detained." (emphasis added). Id.

¶148

On 02/11/2005 in the Atlanta, GA proceedings on the fraudulent 1224 (which did not
charge an offense against the laws of the USA: it is not an offense to not issue Rule
144(k) legal opinions to 15 USC §77b(a)(11) statutory underwriters -- the 2219
plaintiffs) Mr. Ware posted bond on the illegal bail and was released from the illegal
detention. Id. at 149-52; Appx. I at 46-56 (1224 indictment); cf. Id. at 45(¶3).

**FRAUDS OF EDWARD T.M. GARLAND, ESQ.**

¶149

After being released on 02/11/2005 Mr. Ware retained Atlanta lawyer Edward T. M.
Garland, Esq. for representation in 1224, informing Garland that he would not plead
guilty and demanding that he prepare for trial on the indictment. Ex. at 155.

Garland reviewed the indictment and informed Mr. Ware that he (Garland) thought
the case was weak and would research the issues ... Mr. Ware explained to Garland in
detail why the 1224 indictment did not charge an indictable offense against the laws
of the USA, and therefore was null and void.

Mr. Ware paid and engaged Garland as his legal representative expecting a duty of
loyalty, care, trust, and candor, and maintaining of his confidences pursuant to Bar
Rule 4-102.

¶150

After retaining Garland, Mr. Ware met with Manny Arora, Esq. and Don Samuel, Esq.,
both of Garland, Samuel & Loeb, P.C., ("GSL"), and discussed in detail the applicable
securities laws governing the 02/02/2001 Convertible Note transaction between the 2219
plaintiffs ("Alpha") and GPMT for which the bogus 2219 proceedings were initiated by
Kenneth A. Zitter, Esq. Cf. Appx. I at 1-3 1224 docket noting Garland's and Arora's
appearance in 1224; see also Dkt. ## 4, 5. (03/14/2005 proceedings). Appx. I at 13-19.
see Ex. at 155.                         ¶151

Mr. Ware for the next several months met regularly with both Garland and Arora and
explained in detail  the various allegations in the 1224 indictment were not offenses,

12/13/2012

and why a Rule 12(b)(3) motion to dismiss the indictment should be filed. Garland agreed to research the issue and "get back to you on that."

¶152

From the date that Mr. Ware hired GSL (on or about 2/25/2005) to the date Mr. Ware terminated GSL (on or about 04/17/2007) GSL never filed any pleading in 1224 attacking the indictment, nor filed any pleading seeking any discovery from the USAO — never once sought any Brady or Giglio evidence or Rule 16 evidence. (See 1224 docket from Dkt. ##1-23, Mr. Ware entered his appearance as pro se counsel on 04/17/2007 at Dkt. #23). Appx. I at 57-64.

¶153

On or about 03/19/2007 (see Dkt. #22) Mr. Ware informed GSL to withdraw and cease all representation of his interests with regard to the 1224 proceedings. Garland had, during a conference to discuss the strategy to be used at trial in 1224, informed Mr. Ware as follows regarding 1224:

> We've worked you out a good plea deal with AUSA Goldin ... he will allow you to plead to a misdemeanor ... you won't have to do any jail time but you will have to give up you license to practice law. This is a good deal ... you better take it ... you can't go up against Judge Sand and his people up there, the case is hopeless. (emphasis added). Cf. Appx. I at 57-64, 1224 docket entries.

¶154

Mr. Ware never authorized GSL to negotiate any plea deal of any kind — the "good plea deal" was negotiated without Mr. Ware's knowledge or consent, and violated Bar Rule 4-102 which involved fraud and dishonesty, and misrepresentation by Garland, Arora, and Samuel.

GSL had no intention of representing Mr. Ware's interests in an adverse fashion against the USAO, and therefore fraudulently induced Mr. Ware to engage GSL as Sixth Amendment counsel, i.e., Garland, Arora, and Samuel, from the initiation of the engagement (02/25/2005) had no intention of providing Mr. Ware with the "effective" "assistance" of "counsel" and conducting the 1224 in an adverse posture, adverse to the interest of the USAO and Judge Sand — GSL had an actual conflict of interest, which was never disclosed nor is the actual conflict of interest waivable. Cf. Ex. at 103-114 for a detailed analysis of the law governing GSL's conflict of interest in 1224.

¶155

GSL's actual conflict of interest in both 1224 and 1115 (GSL refused to accompany Mr. Ware to the first appearance on 09/26/2005 after having been paid to represent Mr. Ware at the first appearance (see 09/26/2005 1115 proceedings at Appx. I at 115-18, 1115 docket entries), has never been addressed in a required Cursio hearing where GSL can admit or deny Mr. Ware's allegations of misconduct, fraud, dishonesty, misrepresentation, and fraud in the inducement. Ex. at 103-14 (conflict of interest).

12/13/2012

¶156

GSL pressured Mr. Ware to plead guilty to the null and void 1224 indictment —— which as a matter of law —— was null and void ab initio, because the 1224 indictment did not charge an indictable offense against the laws of the USA; which U.S. Attorney Preet Bharara (SDNY) conceded on 08/12/2010 in the United States' appeal brief filed in U.S. v. Ware, 09-0851-Cr (2d Cir.). Cf. Appx. I at 33, 41-45 for the USA's fraudulent brief, i.e., especially see Id. at 45(¶3) where the USAO pled the USA out of court by judicially admitting "the Civil Plaintiffs [involved in 02-CV-2219, see Id. at 4] alleged [in the 2219 complaint at ¶13, see Id. at 12(3)] that G[PMT] failed to register [on Form SB-2 for an immediate public offering] [][GPMT] stock underlying the Loan Agreements [the Subscription Agreement and the Convertible Notes which 15 USC §78cc(b) rendered unenforceable by the 2219 plaintiffs as a result of the admission at ¶13 of the 2219 complt.] with the [SEC] as required by the [unenforceable] Loan Agreements. (emphasis added). (the "USAO Mea Culpa"). Cf. Appx. I at 41-45(¶3).

¶157

The USAO's Mea Culpa made on 08/12/2010 on behalf of the United States (the real party in interest) and its privies (the USAO, the SEC, the FBI, and others) terminated 1224, nunc pro tunc, 11/17/2004 (the date the fraudulent 1224 indictment was returned).

¶158

The USAO's 08/12/2010 Mea Culpa is res judicata, collateral estoppel, and double jeopardy attached on 08/12/2010, which the United States and its privies cannot contest or challenge in any court, in any proceeding, as a matter of law, ergo, Mr. Ware is actually and factually innocent of all charges in 1224:the USA cannot argue Mr. Ware's guilt.

¶159

Mr. Ware asserts that Garland and GSL all knew that the 1224 indictment was fraudulent and did not charge an indictable offense, yet rather than providing Mr. Ware with Sixth Amendment "effective assistance of counsel", instead colluded and conspired with the USAO to extort Mr. Ware of $1.0 million in attorneys fees. (emphasis added).

¶160

Garland, an experienced lawyer with more than 40 years of experience, palpably knew the indictment was bogus, and colluded with David Kelly, and Michael J. Garcia, Judge Sand, Zitter, and Judge Sweet to conspire to extort, and did in fact extort Mr. Ware of his Sixth Amendment right to "effective assistance of counsel." (emphasis added).

¶161

Garland and GSL never performed as "counsel" for Mr. Ware due to colluding and conspiring with the USAO to extort Mr. Ware of his license to practice law and earn a living as a lawyer —— the illegal association-in-fact (as defined at 18 USC §1961(4)) consisting of Garland, Arora, Samuel, David Levitt, Michael F. Bachner, Nicholas S.

12/13/2012

Goldin, David Kelly, Judge Sand, Judge Sweet, Katherine Polk-Failla, Maria E. Douvas, Sarah E. Paul, Alexander J. Wilson, James H. Roth, Esq., magistrate judge Linda T. Walker, AUSA Gail McKenzie, Zitter, the 2219 plaintiffs, Ari Rabinowitz, Dennis S. Meir, Esq., John W. Mills, III, Esq., KTS, the State Bar of Georgia, and others known and unknown, a continuing criminal enterprise, (the "CCE") -- arranged and concocted the 1224 indictment as a means to extort Mr. Ware of $1.0 million in attorneys fees, +$25 million in free-trading GPMT shares, and +$500,000,000.00 in market capitalization stolen from GPMT's shareholders, (the "GSL RICO Extortion").

¶162

Edward T.M. Garland, Esq., an officer of the court, during his review of 1224 on or around April-May 2005, in his office in Atlanta, GA at 3151 Maple St., Atlanta, GA informed Mr. Ware as follows:

> If you pay us $1.0 million I can guarantee you an acquittal ... you have to pay to play up there in New York ... else you will have to plead guilty or take your chances with a jury ... which you can forget in New York ... you will definitely be found guilty. (emphasis added).

¶163

Garland's statement "that the case was hopeless" clearly meant that unless Mr. Ware paid up, going to trial was a complete waste of time, even on an indictment that did not charge an offense -- it appears Garland has been proven correct, given that Judge Sweet on 11/21/2007 announced that Mr. Ware was guilty -- the trial jury did not find Mr. Ware guilty, i.e., the verdict form did not contain any finding of guilt by the jury, because Judge Sweet knew there could be no finding of guilt on the 1224 indictment, Judge Sweet merely did what he was hired and paid to do as part of the Vendetta Prosecutions, i.e., as SEC lawyer Jeffrey B. Norris, Esq. stated in an internal SEC email dated 08/31/2004 (see Ex. at 26) -- one (1) day before Mr. Ware was illegally arrested in Atlanta, GA on Judge Sand's fraudulent 12/22/2003 and 06/22/2004 orders:

> To properly punish him [Mr. Ware] from questioning our [the Racketeers' omniscient schizophrenic] judgment. (emphasis added).

¶164

Both the 1115 and the 1224 courts have adamantly refused to hear all motions filed by Mr. Ware requesting a Cursio conflict of interest hearing regarding Garland's illegal and unethical conduct in both 1115 and 1224. Cf. Ex. at 103-114, in fact the State Bar of Georgia has refused to respond to all inquiries in regard to a 2010 fee arbitration proceeding filed by Mr. Ware against Garland and GSL; nor would the Supreme Court of Georgia respond to any inquiry by Mr. Ware regarding the 2010 fee arbitration matter -- ostensibly collusion by all parties to cover up Garland's and GSL crimes committed in 1224 and 1115. Cf. Ex. at 103-114.

12/13/2012

## Fact 165

Beginning on May 22, 2019, and continuing to today, May 26, 2021, the United States Probation Office (SDNY), (the **"USPO"**), while conspiring with District Judge William H. Pauley, and other unnamed and unidentified purported federal judges[1], has orchestrated an illegal, ultra vires, and unconstitutional imposition of fraudulent unwritten, and unadjudicated, unilateral "special condition" of supervised release in criminal violation of Mr. Ware's right to due process of law, and in violation of Mr. Ware's right of access to the court.

## Fact 166

In particular, on or about May 22, 2019, USPO officer Dave Mulcahy visited Mr. Ware at the BOP's MDC federal prison. Mr. Mulcahy informed Mr. Ware that he was not to enter or go near the U.S. Courthouse without first obtaining his (Mr. Mulcahy's) personal prior approval. Mr. Mulcahy informed Mr. Ware that he was unilaterally imposing oral, unwritten "special conditions" of probation on Mr. Ware due to alleged "threatening letters" Mr. Ware sent to purported **unnamed and unidentified** federal judges. Mr. Mulcahy nor the USPO have never produced the alleged threatening letters, nor has he or the USPO named or identified the purported federal judges that made any such alleged **unverified** and **unconfirmed** claims.

## Fact 167

District Judge William H. Pauley, III, in the complete absence of all jurisdiction, while acting in his personal, individual, and official capacity, before, during, and after the proceedings in United States v. Ware, 05cr1115 (SDNY), ("**1115**"), orchestrated in collusion and while conspiring with the United States Attorney's Office (SDNY), (the "USAO"), lawyers and officials, a series of sham, criminal, unconstitutional, and illegal maneuvers designed to violate the legal and constitutional rights of Ulysses T. Ware; in retaliation by the USAO and its unindicted coconspirators against Mr. Ware for refusing to issue bogus and fraudulent Rule 144(k) legal opinion to the plaintiffs named in the 02cv2219 (SDNY) lawsuit: judicially admitted 15 USC

---

[1] On or about May 19, 2019, USPO officer Dave Mulcahy visited Mr. Ware at the BOP's Brooklyn, NY MDC federal prison while Mr. Ware was illegally incarcerated and kidnapped by the United States.

77b(a)(11) statutory underwriters[2] and unregistered broker-dealers[3], ineligible for any Rule 144(k) exemption to Section 5 strict-liability registration requirements.

### Fact 168

Petitioner further states that District Judge William H. Pauley, III, the conspiracy's ringleader, material participant, leader and organizer, and master mind, has aided, abetted, and enabled the USPO to function and operate in violation of the Constitution and the federal laws of the United States; and that Pauley has acted under color of law in the complete absence of all jurisdiction, and arranged and organized the judicial proceedings in *United States v. Ware*, 05cr1115 (SDNY), ("1115"), in such a manner to insulate and protect himself and his unindicted coconspirators' personal, financial, business, and official interests, and to protect and insulate themselves from legal, penal, and pecuniary jeopardy.

### Fact 169

SEC Release 33-7190 (1995), SEC national policy required Section 2(a)(11) statutory underwriters [the 02cv2219 (SDNY) plaintiffs] to register pursuant to Section 5 all distribution of [IVG Corp., a/k/a GPMT, a publicly-traded company, that traded on the OTCBB's inefficient market under the symbol GPMT] securities.

### Fact 170

The United States Attorney (SDNY) David N. Kelley and his surrogate, AUSA Alexander H. Southwell, on or about November 17, 2004, at para. 9, 10, 11, and 12 in the 04cr1224 (SDNY) indictment, see Ex. 1, pleaded itself out of court by pleading Article II litigation position, judicial admissions, affirmative defenses to Counts I, II, and III. Kelley and Southwell pleaded that the IVG's Notes on or about "February 2001" were purchased by the plaintiffs from IVG pursuant to

---

[2] In para. 12-13 of the 2002 02cv2219 (SDNY) lawsuit, see Exhibit #4, infra, the plaintiffs' lawyer, Kenneth A. Zitter, Esq., pleaded, judicial admissions, in heac verba para. 10.1(iv) of 04cr1224 (SDNY) government trial exhibit GX-5, the so-called subscription agreement, an illegal and unenforceable contract. Paragraph 10.1(iv) of GX-5 conferred Section 2(a)(11) statutory underwriter status on each of the 02cv2219 plaintiffs, and ipso facto rendered the plaintiffs ineligible for any exemption [Rule 144(k)] from Section 5 registration requirements.

[3] On April 21, 2021, FINRA confirmed via email from the Ombudsman's Office that Alpha Capital, AG had never registered with FINRA as required by federal law, 15 USC 78o(a)(1). See Ex. #2.

the "Loan Agreements."[4] And thus, judicially admitted the plaintiffs were Section 2(a)(11) **statutory underwriters.** The 02cv2219 plaintiffs, per SEC Release 33-7190, as statutory underwriters and **unregistered broker-dealers[5]** are **strictly ineligible** for any Rule 144(k) exemption to Section 5 registration requirements[6].

## Fact 171

As of December 20, 2007, Dkt. #90, (Sand, J.) Rule 41(a)(2) final order-judgment entered in 02cv2219 (SDNY), all courts currently lack Article III subject matter jurisdiction over all prior orders, judgments, and proceedings within the 02cv2219 (SDNY) lawsuit. The lawsuit is moot. Voluntarily dismissed by the plaintiffs' counsel, Kenneth A. Zitter, Esq. on or about December 20, 2007. See Exhibit #3.

## Fact 172

Petitioner hereby this 22[th] day of May 2021, pursuant to 18 USC 1961 designates each of the following persons and entities listed below as a member, a knowing and willing participant, an agent, an aider, an abettor, or enabler of an illegal association in fact[7], a continuing criminal enterprise, engaged in a pattern of racketeering activities[8], as defined at Section 1961 of Title 18 of the United States Code, including, but not limited to, obstruction of justice, fraud, perjury, bribery, money laundering, conspiracy, racketeering, grand jury fraud, honest services fraud conspiracy, bankruptcy fraud conspiracy, conversion, securities fraud, mail and wire frauds, hate

---

[4] See para. 9 in Ex. #1. CF., with para. 10.1(iv) of GX-5 (the so-called subscription agreement) and 15 USC 77b(a)(11) (definition of statutory underwriter). The plaintiffs on or about "February 2001" purchased IVG's notes with a view to a public offering, i.e., IVG was required to registered with the SEC on Form S-2 shares such that the plaintiffs could sell "on the open market" the conversion shares resulting from the February 2001 purchase. Ergo, the plaintiffs intended from the date of purchase to conduct a public offering of IVG's securities, see *Gilligan, Wills*, 267 F.2d at 466-67 (purchasers intended from the date of purchase of the debentures for immediately resale, purchasers were Section 2(11) underwriters).

[5] See n. 3, supra.

[6] See also *Berckeley*, 455 F.3d at 220 citing SEC Release 33-7190 ("Section 2(a)(11) statutory underwriter required to register all distribution of securities.").

[7] 18 USC 1961(4): "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.

[8] 18 USC 1961(5): "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity.

crimes; and the false incarceration, kidnapping, illegal restraint, intimidation, and unlawful detainment of Petitioner.

Each individual or entity is hereby also named as a **respondent** and/or **material witness** in regard to disputed issues of material fact concerning this matter, and in any other proceeding initiated by Ulysses T. Ware regarding civil contempt, Fed. R. Crim. P. Rule 42(b) criminal contempt, or the 02cv2219, 04cr1224, 05-cr1115, 03-93031 (BC NDGA), 12cv4397 (NDGA), or 03-0831 (D. NV) to wit:

| | | | | |
|---|---|---|---|---|
| 1. | William H. Pauley, III | Robert W. Sweet | Leonard B. Sand | Alexander H. Southwell |
| 2. | The USPO | Nicholas S. Goldin | Maria E. Douvas | Steven D. Feldman |
| 3. | David N. Kelley | Michael J. Garcia | Preet Bharara | Joon Kim |
| 4. | Sarah E. Paul | Katherine Polk-Failla | Andrew L. Fish | Dave Mulcahy |
| 5. | Thomas J. McCarthy | Michael Fitzpatrick | Cathleen Tyler | The U.S. Marshals |
| 6. | Sally Diaz | Melissa A. Childs | Michael F. Bachner | Edward T.M. Garland |
| 7. | Manibur S. Arora | Gary G. Becker | Jeremy Jones | Marlon Kirton |
| 8. | Jeffrey B. Norris | Spencer C. Barasch | Thomas W. Thrash, Jr. | Ari Rabinowitz |
| 9. | Kenneth A. Zitter | LH Financial Services | Alpha Capital, AG | Stonestreet, LP |
| 10. | Markham Holdings, Ltd. | Amro International, SA | Ari Kluger | Dennis S. Meir |
| 11. | John W. Mills, III | J. Henry Walker, IV | Margaret H. Murphy | Joyce Bihary |
| 12. | C. Ray Mullins | Patricia Sinback | M. Regina Thomas | KTS[9] |
| 13. | The State Bar of GA[10] | William P. Smith, III | Jonathan Hewett | William D. NeSmith |
| 14. | Paula Fredrick | Dawn Jones | Jenny Mittelman | William A. Myers |
| 15. | Marvin Shoob | Orinda D. Evans | James N. Hatten | Linda T. Walker |
| 16. | Peter W. Hall | Steve R. Peikin | Joan E. McKown | Kent J. Dawson |

---

[9] Atlanta, GA law firm Kilpatrick, Townsend, & Stockton, LLP and its partners, ("KTS").

[10] Its employees, agents, and officials in their personal, official, and individual capacities.

| 17. | Andrew J. Peck | The SEC[11] | Gerald B. Tjoflat | The BOP[12] |
| 18. | Barbara S. Jones | Ruby Krajick | The AOC[13] | Wendy L. Hagenau |

Fact 173

Ulysses T. Ware incorporates by reference, and make the same a part hereof, as if set forth herein, the proceedings in: 02cv2219, 04cr1224, 05-cr1115, 03-93031 (BC NDGA), 12cv4397 (NDGA), or 03-0831 (D. NV).

I Ulysses T. Ware, of the age of majority, having personal knowledge of the facts and statement made herein, hereby this 22nd day of May 2021, in the City of Brooklyn, NY has set my hand and seal, and pursuant to the penalty of perjury and 28 USC 1746 made this Declaration and state the contents are true and correct according to my understanding of the facts, laws, and proceedings.

Signed this 22nd day of May 2021 in Brooklyn, NY.

/s/ Ulysses T. Ware

Ulysses T. Ware, individually and as the legal
representative for the estate of Mary S. Ware

---

[11] The Securities and Exchange Commission, (the **"SEC"**), and its officials, officers, agents, employees, and commissioners.

[12] The U.S. Bureau of Prisons, its employees, agents, and officials, (the **"BOP"**).

[13] The Administrative Office of the U.S. Courts, its employees, agents, and officials.