# Exhibit #1: Excerpt from 04cr1224 (SDNY) indictment

P. 48

that time. The title of the lawsuit was Alpha Capital Aktiengesellschaft, Amro International, S.A., Markham Holdings, Ltd., and Stonestreet Limited Partnership v. Group Management Corp., Thomas Ware, Lan Chuin and Barry Corker, 02 Civ. 2219 (LBS) (the "Civil Action"). The Civil Action was filed in the United States District Court for the Southern District of New York and was assigned to United States District Judge Leonard B. Sand (the "Court").

9. The Civil Action involved loan agreements entered into by each of the Civil Plaintiffs and Internet Venture Group, Inc. → in or around February 2001 (the "Loan Agreements") under which Internet Venture Group, Inc. borrowed a total of approximately $1.1 million collectively from the Civil Plaintiffs. These Loan Agreements were essentially identical except for the amount of loan principal. They provided for the Civil Plaintiffs to purchase convertible notes from Internet Venture Group, Inc., which were due on January 1, 2003, absent a default by Internet Venture Group, Inc., in which case the maturity date of the notes would be accelerated. Each Loan Agreement consisted of a convertible note, a subscription agreement, and, beginning in or around September 2001, a security agreement.

10. Among other things, the Loan Agreements obligated Internet Venture Group, Inc. to convert, upon the request of a Civil Plaintiff, a certain portion of the loan principal or

3

P. 49

interest into common stock of Internet Venture Group, Inc. (hereinafter a "Conversion Request"). The number of shares that Internet Venture Group, Inc. was obligated to convert upon a Conversion Request would be determined in part by the stock's prevailing market price. The Loan Agreements provided that Internet Venture Group, Inc. could not refuse to honor Conversion Requests without first obtaining an order from a court and posting a bond for 130 percent of the loan amount.

11. On or about August 17, 2001, Internet Venture Group, Inc. changed its name to Group Management Corporation ("GMC").

12. In or around February 2002, the Civil Plaintiffs declared GMC in default of the Loan Agreements based on GMC's failure to fulfill certain of its obligations under the Loan Agreements related to having the stock underlying the Loan Agreements registered with the United States Securities and Exchange Commission. In addition, in or around February 2002, Alpha Capital Aktiengesellschaft submitted a Conversion Request → to GMC which GMC failed to honor.

13. In or about March 2002, the Civil Plaintiffs filed the Civil Action seeking, among other things, an injunction directing GMC to honor all Conversion Requests. On or about April 29, 2002, the Court entered a written order directing GMC to honor outstanding Conversion Requests.

4

12/9/2012

5/18/2021     Gmail - Alpha Capital, A.G.

# Gmail

Ulysses Ware <ulware007@gmail.com>

## Alpha Capital, A.G.
2 messages

**Ombudsman's Office** <Ombuds@finra.org>     Wed, Apr 21, 2021 at 2:51 PM
To: "UIware007@gmail.com" <UIware007@gmail.com>

Good afternoon,

→ Pursuant to our conversation, I have reviewed FINRA's BrokerCheck and Central Registration Depository databases and was unable to locate a FINRA member firm named Alpha Capital, A.G. that was registered with FINRA.

If you have concerns that Alpha Capital A.G. is claiming to be a FINRA member, you may want to consider filing a Regulatory Tip with FINRA's National Cause and Financial Crimes Detection Program for further review. Those regulatory tips warranting additional review and investigation will be subject to a regulatory response. FINRA may forward any regulatory tips that fall outside its jurisdictional reach to the appropriate regulatory or law enforcement agencies. In the future, you can notify FINRA of any unfair practices or violations of FINRA rules by filing a regulatory tip online via http://www.finra.org/industry/fie-tip.

FINRA Regulatory Tip Form

http://www.finra.org/industry/fie-tip

FINRA - Regulatory Tips

1735 K Street, NW

Washington, DC 20006-1500

Fax: (866) 397-3290

If you require further assistance, please contact the Office of the Ombudsman at 888-700-0028 or ombuds@finra.org.

By way of background, FINRA's Office of the Ombudsman provides a neutral and confidential forum for member firms and their employees, public investors, and any other business or individual who interacts with FINRA to voice their concerns about operations, enforcement, or other FINRA activities or staff. Individuals who are unsure of the proper channel for addressing a concern or feel that the issue cannot be resolved through other channels may also contact the Ombudsman's Office. Additional information can be found online at: http://www.finra.org/about/office-ombudsman

Upon conclusion of your contact with the Ombudsman's office, please take five minutes to complete our anonymous survey at https://www.surveymonkey.com/s/FINRAOmbudsman. We actively use your anonymous and confidential feedback to constantly improve and provide our visitors the best possible service.

Regards,

Danielle Derrick

Associate Director

FINRA Office of the Ombudsman

9509 Key West

Rockville, MD 20850

Tel. (866)762-0033 or (240)386-4573

Fax: (240)386-6971

# FINRA.

Confidentiality Notice: This email, including attachments, may include non-public, proprietary, confidential or legally privileged information. If you are not an intended recipient or an authorized agent of an intended recipient, you are hereby notified that any dissemination, distribution or copying of the information contained in or transmitted with this e-mail is unauthorized and strictly prohibited. If you have received this email in error, please notify the sender by replying to this message and permanently delete this e-mail, its attachments, and any copies of it immediately. You should not retain, copy or use this e-mail or any attachment for any purpose, nor disclose all or any part of the contents to any other person. Thank you.

**Thomas Ware** <ulware007@gmail.com>     Wed, Apr 21, 2021 at 3:58 PM
To: Ombudsman's Office <Ombuds@finra.org>
Bcc: mydefinalters@gmail.com

Thank you for the information.
[Quoted text hidden]

2 attachments

**FINRA.** image001.png 3K

**FINRA.** image001.png 3K

**Exhibit #3: December 20, 2007, Dkt. #90 Rule 41(a)(2) Final Order-judgment**



# Exhibit #4: Paragraphs 12-13 from the 02cv2219 (SDNY) complaint.

12. Plaintiffs purchased the Notes pursuant to the terms of the Subscription Agreement (the "Subscription Agreement") entered into between and among the parties on or about February 2, 2001. Plaintiffs collectively paid $1.1 million to IVG and each Plaintiff received a Note in proportion to its investment, as set forth in the paragraph 10.

13. Pursuant to Section 10.1(iv) of the Subscription Agreement, IVG was obligated to file on or before May 3, 2001, a form SB-2 Registration Statement with the United States Securities and Exchange Commission registering the stock underlying the Notes so that upon conversion the stock could be sold on the open market without restriction. IVG was obligated to

4

121

have such registration statement declared effective on or before June 17, 2001. Thus Section 10.1(iv) of the Subscription Agreement provides:

> "The Company shall file with the Commission within 90 days of the Closing Date (the 'Filing Date'), and use its reasonable commercial efforts to cause to be declared effective a Form SB-2 registration statement (or such other form as it is eligible to use) within 135 days of the Closing Date in order to register the Registrable Securities for resale and distribution under the Act. The registration statement described in this paragraph must be declared effective by the Commission within 135 days of the Closing Date (as defined herein)('Effective Date')."

IVG failed to comply with its obligations and to date has not had its registration statement declared effective.