From:   Ulysses T. Ware

To: The Hon. William H. Pauley, III

Date:   May 25, 2021

RE: Filing the enclosed pleadings on the 04cr1224 and 05cr1115 (SDNY) dockets.

Judge Pauley:

Please file the enclosed pleadings:

### Exhibit #UTW-01
### Ulysses T. Ware's December 10, 2019 Affidavit.


**Mr. Ware and the estate of Mary S. Ware will file a brief in opposition to the Government's Dkt. #250 not later than June 20, 2021.**

on the applicable dockets. In the future, please serve Mr. Ware via email at

utware007@gmail.com with all of your orders or directives entered in this matter, due to the slowness

of the U.S. Mail.


/s/ Ulysses T. Ware

# Case Nos. 05cr1115 (SDNY) and 04cr1224 (SDNY)

Submitted on May 25, 2021, by:

/s/ Ulysses T. Ware

---

Ulysses T. Ware, individually, and as
the legal representative for the estate
of Mary S. Ware.
123 Linden Blvd.
Suite 9-L
Brooklyn, NY 11226
(718) 844-1260 phone
utware007@gmail.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

**United States of America, et al.,**
    **Plaintiff, Petitioner,**
    **Cross Respondent,**


v.

**Ulysses T. Ware, et al.,**
    **Defendant, Respondent,**
    **And Cross Petitioner.**

---

Exhibit #UTW-01
Ulysses T. Ware's December 10, 2019 Affidavit.

**Mr. Ware and the estate of Mary S. Ware will file a brief in opposition to the Government's Dkt. #250 not later than June 20, 2021.**

To: The United States Probation Office (SDNY)

From: **Ulysses T. Ware**

Date: December 10, 2019

### RE: Affidavit of Sworn Material Facts in regard to superseding final judgments entered in:

(i) *Alpha Capital, AG et al. v. Group Management Corp et al.*, case no. 02cv2219-LBS (SDNY), Doc. #90, 12/20/2007 Rule 41(a)(2) superseding final judgment;

(ii) *United States v. Ware*, 07-5670-cr (XAP) (2d Cir.), Gov.-I, 08/18/2009 superseding final judgment; *and United States v. Ware*, 05cr1115 (SDNY), Doc. #113;

(iii). and other matters.

---

A. **Contentions**.

1. The Government incorrectly contends, according to the USPO, that (a) fines, (b) restitution, and (c) forfeiture is owed in regard to the void and abrogated 1224 and 1115 cases.

2. Mr. Ware contends that the Superseding Final judgments, see Fact #23, final judgments entered in favor of Mr. Ware, abrogated, annulled, and vitiated all prior judgments, (i.e., fines, restitution, and forfeitures) entered in 02cv2219, 04cr1224, and 05cr1115. By operation of law, any and all prior judgments, orders, or proceedings that depended in whole and/or in part on any prior judgment entered in 2219, 1224, and 1115 have been **abrogated, annulled, vitiated,** and **voided**.

3. The federal courts legally designated Mr. Ware as the **prevailing party** in the 2219, 1224, and 1115 proceedings as a result of the Superseding Final Judgments.

4. The United States and its privies, i.e., the DOJ, USPO, SEC, AOC, FBI, U.S. Marshals, etc., all are bound **absolutely** by res judicata, collateral estoppel, and bound by the **Double Jeopardy Clause against any further fact finding in any proceeding** in regard to any issues, facts, or claims actually or necessarily resolved by the Superseding Final Judgments in 2219, 1224 and 1115. see *Federated*, 452 U.S. at 398-402 ("final judgment absolutely binding on all courts, the parties, and their privies in all subsequent proceedings between the parties; all issues and claims **actually or necessarily** resolved by final judgment **forever settled between the parties**.") (paraphrased) (emphasis added).

/s/ Ulysses T. Ware

---

Ulysses T. Ware

# Affidavit of Ulysses T. Ware

County of Manhattan

State of New York

December 10, 2019

I Ulysses T. Ware, hereby this 10th day of December, 2019 in the city of Manhattan, in the State of New York, while under oath, set my hand and seal, subject to the penalty of perjury, having personal knowledge of the facts, pursuant to 28 USC 1746, hereby have made this sworn Affidavit in my personal and individual capacity, and set forth the following facts that are true, correct, and indisputable. I hereby incorporate by reference herein, and make the same a part hereof as if attached hereto, the Government's trial exhibits, 1224 and 1115 PSIs in heac verba, briefs, motions, memorandi, transcripts, orders, judgments, and dockets from the 02cv2219 SDNY, 03-93031-mhm (BC NDGA), 03-0831-kjd (D. NV), 04cr1224 SDNY, 05cr1115 SDNY and related proceedings, jointly (the "**Ware Cases**").

### Fact #1.

On or about February 2, 2001 Alpha Capital, AG, ("Alpha"), Stonestreet, L.P., Markham Holdings, Ltd., and Amro International, S.A., LH Financial, Ari Rabinowitz, and others both known and unknown, jointly and severally, ("**Alpha**" or "**Unregistered Broker-Dealers**" or "**Brokers**")), knowingly and willingly, while *not registered* with the Securities and Exchange Commission, ("SEC"), or the Financial Industry Regulatory Agency, ("**FINRA**")[1], entered into an illegal financing agreement with Group Management Corp., ("**GPMT**"), (the "**Illegal Financing Agreement**" or government trial exhibit in *U.S. v. Ware*, 04-cr-1224 SDNY ("**GX-5**"))[2].

### Fact #2

On February 2, 2001 the Brokers, while not registered with the SEC or FINRA, entered into and knowingly executed paragraph 10.1(iv) of GX-5[3]; and illegally purchased for **immediate resale,** via an illegal public offering,[4] $1.1 million of GPMT's restricted convertible notes, (the "Notes"), GX 1-4.

---

[1] According to the SEC and FINRA's public database, www.brokercheck.gov, neither Alpha, Stonestreet, Markham, Amro, LH Financial, Ari Rabinowitz, Rhino Advisors, **fugitive** Thomas Badian, **convicted felon** Edward M. Grushko, Esq., Barbara R. Mittman, Esq., nor Kenneth A. Zitter, Esq., have ever been lawfully registered pursuant to 15 USC 78o(a)(1) as brokers or dealers. Cf. Rabinowitz's testimony at Tr. 204-06 confessing to criminal violations of Section 15(a)(1) registration requirements.

[2] "GX" shall hereinafter refer to Government trial exhibits fraudulently entered in *United States v. Ware*, 04cr1224 (SDNY) via AUSAs Nicholas S. Goldin and Maria E. Douvas through government witnesses Ari Rabinowitz an admitted, (see Tr. 180-82, 188, 202-08) **unregistered** broker-dealer operating in **criminal violations** of the federal securities laws, Section 15(a)(1), and Kenneth A. Zitter, Esq. (an officer of the court).

[3] Paragraph 10.1(iv) of GX-5 conferred 15 USC 77b(a)(11) statutory underwriter status on each unregistered Broker involved in the February 2, 2001 transactions: "Section 2(a)(11) **statutory underwriters required to register all distribution of securities**" (quoting SEC Release 33-7190); cf., *Berckeley*, 455 F.3d at 220 (same); *Kern*, 425 F.3d at 152-56 (Pooler, J.) (same). (emphasis added).

[4] According to paragraph 10.1(iv) of GX-5 the Brokers, jointly and severally, intended to immediately resell GPMT's Notes [within 135 day of 02/02/2001], rather than hold the Notes [for the Rule 144(k) holding period requirement, i.e., 2 years] as a bona fide *investment* as required by 15 USC 77d(2), Section 4(2), evidenced by requiring GPMT to immediately register the conversion securities on Form SB-2 and file the same with the SEC. See also paragraphs 12 and 13 in the *Alpha Capital, AG, et al. v. Group Management Corp, et al.*, case no. 02cv2219-LBS (SDNY), ("2219"), complaint, (the "**2219 Complaint**"). CF., also with the 2219 district court's 11/25/2002 Memorandum and Opinion, (the "**2219 Opinion**"), confirming the original intentions of Alpha, et al. on 02/02/2001: Alpha, et al., had

Fact #3

On March 20, 2002 Alpha, et al., through its retained counsel, Kenneth A. Zitter, Esq., while recklessly lacking Article III and 28 USC 1332(a) diversity subject matter jurisdiction[5] and standing, knowingly, willfully, in bad faith, and for an improper purpose[6] Alpha, et al. filed their frivolous, malicious, fraudulent and null and void ab initio complaint in *Alpha Capital, AG, et al. v. Group Management Corp, et al.*, case no. 02cv2219-LBS (SDNY), ("2219"), complaint, (the "2219 Complaint") in willful violation of Fed. R. Civ. P. 11(b)(1-4); and 28 USC 1927.

Fact #4

From 2001 continuing to 2007 Alpha, et al., knowingly criminally violated Section 77x and 78ff, by the knowing and willful sale of millions of unregistered shares of GPMT, see 11/25/2002 2219 Opinion, (Sand, J.); and a "good few hundred" small publicly traded companies' shares according to the sworn testimony of government 04cr1224 SDNY government trial witness Ari Rabinowitz, Tr. 202-08.

Fact #5

On or about November 25, 2002, the 2219 district court (Sand, J.), while lacking all Article III and Section 1332(a) diversity subject matter jurisdiction over the 2219 proceeding, and to knowingly and willfully aid, abet, and facilitate the criminal and racketeering activity of laundering of the illegal profits, proceeds, revenues, and property extorted by Alpha, et al. issued the 2219 Opinion; and purported to enter a bogus and fraudulent void ab initio default judgment, GX-7, against GPMT and the 2219 defendants (Elorian and Becky Landers).[7] However, nevertheless, in the 2219 Opinion Judge Sand ruled, (i) that each of the Brokers were in fact Section 2(a)(11) statutory underwriters of GPMT restricted securities, GX 1-4; and further ruled that each of the Brokers were in fact Section 16(a) statutory insiders not permitted to trade in the equity securities of GPMT as of 02/02/2001.

Fact #6

In January 2003 due to the continuing and violent personal threats and extortion demands of Alpha, et al., Zitter and Rabinowitz Elorian Landers and the board of directors of GPMT appointed Ulysses T. Ware, Esq., as chief executive officer and chairperson of the board of directors of GPMT; notified the SEC of the change; and resigned from GPMT. Mr. Ware as of January 2003 acted as chief executive officer and securities counsel for GPMT until falsely incarcerated in November 2007.

---

no intentions of being **bona fide investors** in GPMT; rather Alpha, et al., initially to immediately resell the conversion securities of GPMT as found by the Court: Alpha, et al. intended to be **unregistered statutory underwriters** of GPMT's securities in criminal violation of 15 USC 78o(a)(1) and Id. 77x, and 78ff.

[5] Unregistered broker-dealers lack Article III and diversity subject matter jurisdiction to enforce illegal contract entered into and performed in criminal or civil violation of the federal securities laws, see 15 USC 78cc(b); cf., *Regional Props., Inc. v. Fin. & Real Estate Consulting Co.*, 678 F.2d 552 (5th Cir. 1982). (unregistered brokers not entitled to receive any damages for alleged breach of illegal contract entered into or performed in violation of the securities laws).

[6] Cf., Fed. R. Civ. Proc. Rule 11(b)(1-4) sanctions,; 28 USC 1927; and the Article III inherent power of the courts' to sanction frivolous, and bad faith pleadings signed and filed by Kenneth A. Zitter, Esq., on behalf of Alpha. Alpha, et al., filed the 2219 Complaint seeking to force GPMT, and its legal counsels to issue false, fraudulent, and bogus Rule 144(k) legal opinions to enable Alpha, et al., to criminally circumvent 15 USC 77e(a), (c), Section 5, strict liability registration requirement before offering for sale GPMT's Notes, GX 1-4, see note 3 supra.

[7] The Landers had been forced to file personal bankruptcy to fend off the illegal and unethical violent extortion and criminal contempt threats directed towards them by Alpha's counsel Kenneth A. Zitter, Esq., (an officer of the court) in his quest to force the Landers' and their securities counsels to issue bogus and fraudulent Rule 144(k) legal opinions to enable the criminal unregistered sale of more than 15 million free-trading shares of GPMT's stock. See Tr. 283.

Fact #7

Beginning in January 2003 and continuing to 2007 Kenneth A. Zitter, Esq., an officer of the court, and Ari Rabinowitz, on behalf of their clients LH Financial and Alpha, et al., continued to contact and threaten Mr. Ware, via the mail and wires of the United States, as CEO of GPMT ( a publicly-traded company); and made illegal extortion threats and demands on Mr. Ware, to wit: Zitter demanded that Mr. Ware fraudulently issue to him (Zitter), on behalf of LH Financial and Alpha, et al., more than 10 million free-trading shares of GPMT; and further demanded that Mr. Ware prepare and provide to him (Zitter on behalf of Alpha, et al.) bogus and fraudulent Rule 144(k) legal opinions to enable LH Financial and Alpha, et al. to criminally circumvent Sections 77x and 78ff and conduct an **illegal unregistered public offering** of GPMT's shares[8]. Else, Zitter stated to Mr. Ware, " **... I will have Judge Sand throw your ass in prison, nigger, and you will never get out ... who do you think that you are fucking with ... I want that stock and those opinions, else I will have the marshals arrest your ass ... you better give them to us ... I'm not playing around with you ... don't do it and see what happens to you ...."**[9] (emphasis in original) (quoting Kenneth A. Zitter, Esq. in March 2003; see also the transcript of the September 1, 2004 illegal arrest (kidnapping) proceedings of Mr. Ware in Atlanta, GA, on the admitted request of Zitter and Rabinowitz, by the U.S. Marshals (NDGA) held before District Judge Thomas W. Thrash, Jr.; cf. Doc. #88 order in 2219 (Sand, J.) ruling Thrash and the Marshals lacked authority and jurisdiction to have entered Mr. Ware's law office in Atlanta, GA on September 1, 2004 demanding the issuance of bogus Rule 144(k) legal opinions and more than 10 million free-trading shares of GPMT's stock)[10].

Fact #8

In January and March of 2003 Zitter and Rabinowitz -- to facilitate the laundering of the illegal profits and proceeds derived from the illegal sale of GPMT's unregistered shares sold in violation of Sections 77x and 78ff (both section criminalize the unregistered sale of securities) – colluded and conspired with District Judge Leonard B. Sand, and had Sand enter bogus and fraudulent null and void ab initio purported orders (GX-11) directed to GPMT to criminally violate the federal securities laws by issuing fraudulent and bogus Rule 144(k) legal opinions to Zitter and LH Financial to enable Alpha, et al., to criminally circumvent Section 5 of the 1933 Act, and illegally sell GPMT's unregistered securities in violation of Sections 77x and 78ff.

Fact #9

On or about August 13, 2003, Sand, Zitter, LH Financial and others both known and unknown, see Doc. #65 (2219), GX-24, entered into illegal ex parte proceedings with Judge Sand where Alpha, et al., judicially admitted in the ex parte proceedings to actually be the "**beneficial owner of more than 9.9% of [GPMT's] stock**" (emphasis added), (quoting Sand,

---

[8] See the sworn testimony of both Rabinowitz and Zitter in 04cr1224 under direct and cross examination admitting to criminal violations of the federal securities and criminal laws of the United States in 2002-2007 attempting to extort GPMT and Mr. Ware out of more than $500 million dollars in market capitalization value. Both Rabinowitz and Zitter confessed under oath to aiding and abetting a Hobbs Act extortion criminal enterprise; and both confessed to aiding and abetting a conspiracy to launder the profits and proceeds derived from the extortion of GPMT, the Landers, and Mr. Ware regarding the shares of GPMT.

[9] Zitter testified under oath in 04cr1224 that **he and Judge Sand** arranged for Mr. Ware's illegal arrest on September 1, 2004 in Atlanta, GA by the U.S. Marshals (NDGA) in their attempt to extort Mr. Ware and GPMT out of more than 10 million free-trading shares of GPMT's stock. See Doc. #88 in 02cv2219 (SDNY) order (Sand, J.) conceding the Marshals lacked lawful authority on September 1, 2004 to have arrested (kidnapped) Mr. Ware in Atlanta, GA; confirming that the 2219 district court's lack of subject matter jurisdiction over 2219. CF., Tr. 322; Tr. 325 Zitter confessed that **he received 4,026,695 unregistered shares** of GPMT from Mr. Ware based on his (Zitter's and Sand's) continued Hobbs Act extortion threats of violence.

[10] Zitter testified, Tr. 371, that Mr. Ware's 09/01/2004 arrest in Atlanta, GA by the U.S. Marshals was in fact illegal.

Affidavit of Ulysses T. Ware  
December 10, 2019  
Submitted to the United States Probation Office (SDNY) regarding 04cr1224 and 05cr1115 (SDNY) matters.

Page 4

J.; cf., 08/13/2003 order (Sand, J.)); thus conferring draconian statutory insider status, 15 USC 78p(b), Section 16(b), on Alpha, et al[11]; and admitted ineligibility for any exemption to Section 5's strict-liability registration requirements.

Fact #10

Due to the continued and violent extortion threats made by Zitter and Alpha, et al. to Mr. Ware as securities counsel for GPMT, on December 3, 2003 GPMT filed for Chapter 7 bankruptcy protection, *In re Group Management Corp.* (BC NDGA),. Chapter 7 protection triggered 11 USC 362(a) automatic stay injunction order had the following legal effects: prohibited against any further extortions threats by Zitter, Sand, Rabinowitz, and Alpha, et al., demands, or collection methods of any type in regard to any lawful or unlawful alleged prepetition debt of GPMT; prohibited David N. Kelley from any attempt to enforce via criminal contempt the collection of any prepetition debt of GPMT; and terminated forever the 2219 court's subject matter jurisdiction over any aspect of the 02/02/2001 Illegal Transaction; Mr. Ware also notified the 2219 district court (Sand, J.) and Zitter of GPMT's Chapter 7 filing and the Section 362(a) automatic stay.[12]

Fact #11

On December 22, 2003 in willful and knowing violation of the December 3, 2003 Section 362(a) automatic stay resulting from GPMT's December 3, 2003 Chapter 7 filing; and while lacking all jurisdiction over the 2219 proceedings, Judge Sand on the urging of Zitter, Rabinowitz, and Alpha, et al., knowingly, willfully, in bad faith, and maliciously -- to aid and abet the continued Hobbs Act extortion and money laundering conspiracy being run by Alpha, et al., -- entered bogus, fraudulent null and void ab initio orders in 2219, GX-34.[13]

Fact #12

On or about November 17, 2004, United States Attorney (SDNY) David N. Kelley and others both known and unknown, ("Kelley, et al."), government lawyers officers of the court, using the null and void ab initio 2219 proceeding's orders: (1) March 13, 2003 order (Sand, J.), GX-11; (2) August 13, 2003, GX-24; and (3) November 25, 2002 judgment, GX-7, allegedly approached a federal grand jury and knowingly and recklessly while lacking 28 USC 547(2) statutory standing and legal probable cause for any 18 USC 401(3) criminal contempt offense[14] committed by Mr. Ware in regard to the null and void

---

[11] Statutory insiders are **per se** ineligible for Rule 144(k); and Alpha, et al. are required to disgorge back to GPMT all profits from the trading in GPMT's securities from February 2, 2001; thus, ipso facto, legally precluding Alpha, et al., from any alleged loss amount. Cf. appeal briefs of Ulysses T. Ware, Esq. filed in *United States v. Ware*, 09-0851cr (2d Cir. 2010) for a detailed explanation of Section 5, Rule 144(K), Section 16 and the August 13, 2003 order's legal effects on the 02cv2219 and 04cr1224 proceedings.

[12] GPMT's December 3, 2003 Chapter 7 filing triggered the 11 USC 362(a) automatic stay against Alpha, et al., Zitter, and the 2219 district court; and voided all post petition orders or judgments entered in 2219 and 04cr1224 (SDNY). See Judge Sand's December 4, 2003 bogus and null and void ab initio order confirming actual notice of the GPMT's 12/03/2003 Chapter 7 filing.

[13] As of December 3, 2003 pursuant to 11 USC 362(a), et seqs. all jurisdiction over the 2219 proceedings in regard to any alleged prepetition debts of GPMT rested **exclusively** in the Bankruptcy Court (NDGA): the New York 2219 district court lacked lawful jurisdiction after December 3, 2003 to enter any order in 2219 without first the GPMT Chapter 7 Bankruptcy Court (NDGA) lifting the Section 362(a) automatic stay on motion and a hearing **by a party having standing** in the Chapter 7 bankruptcy proceedings. Alpha, et al. being **unregistered broker-dealers** lacked lawful claims, and thus, lacked standing to appear in the Bankruptcy Court regarding any proceedings concerning GPMT, or any successor in interest of GPMT. As of the February 2, 2001 execution of paragraph 10.1(iv) of GX-5 Alpha, et al., as unregistered broker-dealers, lacked any enforceable legal rights, i.e., claim, apropos GPMT's securities, see 15 USC 78cc(b); cf., *Regional*, 678 F.2d at 561-64.

[14] It is not a 18 USC 401(3) criminal contempt **offense** to not issue bogus and fraudulent Rule 144(k) legal opinions to unregistered broker-dealers, Section 16(b) statutory insiders, and Section 2(a)(11) statutory underwriters to enable, aid, abet, or facilitate the criminal circumvention of Section 5 registration requirements in violation of 15 USC 77x and 78ff; and 18 USC 2, 371, 1341, 1343, 1951(a), 1956-57, and 1962(a-d), all racketeering activities. See *U.S. v. Lloyd*, 807 F.3d 1128 (9th Cir. 2015) (aff'd conviction and sentences for Section 77x violations).

ab initio 2219 proceedings recklessly and maliciously, presented to the federal grand jury known to be null and void ab initio documents, known and suborned perjured testimony of witnesses, and evidence fabricated by Kelley, et al., in criminal violation of 18 USC 241, 242, 371, 1201-02, 1951(a), 1621-23, 1956-57, and 1962(a-d) and numerous state laws (the "**RICO Acts**").

Fact #13

On November 17, 2004 in regard to the null and void proceedings, orders, and judgments entered in the void ab initio 2219 proceedings probable cause was a legal impossibility and a nullity for U.S. Attorney (SDNY) David N. Kelley, et al., to have presented any information to a federal grand jury and lawfully charged Ulysses T. Ware, Esq., GPMT's securities lawyer, with an alleged 18 USC 401(3) criminal contempt offense for refusing to aid, abet, assist, and facilitate Alpha, et al., to criminally circumvent Section 5 of the 1933 Act by the issuance of fraudulent and bogus Rule 144(k) legal opinions; which Kelley knew or was reckless in not knowing bogus and fraudulent Rule 144(k) legal opinions would have enabled Alpha, et al. to conduct an illegal unregistered public offering of GPMT's securities in criminal violation of Sections 5, 10j(b), 77x, 78ff, and Rule 10b-5[15].

Fact #14

Lacking probable cause, and ipso facto an offense, the 04cr1224 district court (Sweet, J.) as a matter of law lacked Article III and statutory 18 USC 3231 subject matter jurisdiction over the proceedings. Therefore, the 04cr1224 proceedings were as a result ultra vires, invalid, without any validity, and null and void an initio.

Fact #15

The 02cv2219 SDNY proceedings were ultra vires, invalid, and null and void ab initio. Consequently, the 04cr1224 SDNY District Court (Sweet, J.) lacked jurisdiction over the subject matter of the void 02cv2219 proceedings, orders (GX 11, GX-24, GX-34, etc.) and judgments (GX-7, etc.) on which the factual predicate of the 04cr1224 was formed.

Fact #16

From beginning on or about 2002 and continuing to the present (December 10, 2019) and beyond United States Attorneys David Kelley, Michael J. Garcia, and Preet Bharara; and AUSAs Katherine Polk-Failla, Sarah E. Paul, Nicholas S. Goldin and Maria E. Douvas, jointly and severally, (the "**USAO**" of "**DOJ Lawyers**") all knowingly, willfully, in bad faith, recklessly have acted in concert; and all knew or were reckless and/or professionally negligent in not knowing the legal consequences of their own trial exhibits on the Government's ability to prove beyond a reasonable doubt the factual elements of the alleged 18 USC 401(3) criminal contempt charges, to wit:

(i) GX-5 paragraph 10.1(iv) of the February 2, 2001 purported "subscription agreement" pled by Zitter at paragraphs 12 and 13 of the March 20, 2002 2219 complaint; however, GX-5 was in actuality an illegal null and void ab initio, cf., 15 USC 78cc(b), underwriting contract which was explicitly adopted by the Government in its 04cr1224 indictment and argued at

---

[15] Kelley knew and/or was reckless in not knowing he and the USAO lacked lawful 28 USC 547(2) statutory standing – the USAO (Kelley, et al.) only has standing to prosecute an **offense** -- to have pursued any fake and bogus criminal contempt charges against Mr. Ware in regard to not issuing bogus and fraudulent Rule 144(k) legal opinions to Section 2(a)(11) statutory underwriters (i.e., Alpha, et al.). According to **SEC Release 33-7190**, "Section 2(a)(11) statutory underwriters **are required to register all distribution [(public offerings)] of securities [pursuant to Section 5 of the 1933 Act.]**" (emphasis added); cf., Kern, 425 F.3d at 152-56 (Pooler, J.) (same); cf., Berckeley, 455 F.3d at 220 (same).

trial as its Article II, §3 prosecutorial litigation strategy, by the admission into evidence by AUSA Nicholas S. Goldin, Tr. 180-88, through **unregistered broker-dealer** government witness Ari Rabinowitz; and

(ii) GX-24 the August 13, 2003 order (Sand, J.), Doc. #65, ex parte proceedings in which Alpha, et al., judicially admitted and confessed to Section 16(b) statutory insider status as of February 2, 2001[16]; and judicially admitted by necessary implication they were required to disgorge back to GPMT all profits (**estimated at $500 million dollars in post-Chapter 11 reorganization market capitalization**) realized from the illegal insider trading in GPMT's unregistered securities. A statutory insider cannot suffer any legal loss as a result of statutory, 15 USC 78p(b), disgorgement.

Fact #17

In the 2219 proceedings on or about December 20, 2007, Doc. #90, order (Sand, J.), **after the statute of limitation had run on all claims in 2219**, in another ex parte proceeding (cf., with Zitter and Sand's August 13, 2003 ex parte proceeding referenced in GX-24) Kenneth A. Zitter, Esq. again approached District Judge Sand (2219) and demanded that Judge Sand, **without notice to Mr. Ware, the Landers, or GPMT**, pursuant to Fed. R. Civ. P. Rule 41(a)(2), **immediately reverse, vacate, annul, and vitiate all proceedings, orders, and judgments previously entered in 2219**; and Zitter implicitly and by necessary implication demanded that Judge Sand enter a superseding final judgment in 2219 in favor of GPMT, Mr. Ware, and the Landers; and furthermore, Zitter implicitly demanded by necessary implication that Judge Sand confer via Rule 41(a)(2) superseding final judgment prevailing party status on GPMT, the Landers, and Mr. Ware **for the purpose of civil and criminal contempt enforcement proceedings against any party willfully resisting the 12/20/2007, Doc. #90 Rule 41(a)(2) superseding final judgment/order.** See 18 USC 401(2) and 401(3).

Fact #18

On **December 20, 2007**, Doc. #90, order (Sand, J.), Judge Sand acquiesced to Mr. Zitter's unethical and improper ex parte unnoticed Rule 41(a)(2) demand; entered the superseding final order/judgment, Doc. #90; and **by operation of law** reversed, vacated, annulled, and vitiated, **all prior proceedings** (any purported civil or criminal contempt proceedings), **all orders** (GX-11, GX-24, GX-34; and the order which dismissed GPMT's counterclaim, Doc. #31, etc.,), **all judgments** (GX-7, etc.); and dismissed with **prejudice** the 2219 proceedings[17].

Fact #19

---

[16] Alpha, et al., judicially admitted in the August 13, 2003 illegal and unethical ex parte proceedings to the devastating fact of being "**the beneficial owner or more than 9.9% of [GPMT's] stock**" (emphasis added) (quoting Sand, J. in August 13, 2003 order, (GX-24), Doc. #65 in 2219); which had the draconian effect of irrevocably conferring Section 16(b) statutory insider status on Alpha, et al. **as of February 2, 2001**; and **required the immediate Section 16(b) disgorgement of all profits back to GPMT realized from the illegal trading in GPMT's stock**. Thus, precluding any and all fines, USSG §2B1.1 loss amount calculation, assessments, or other monetary sanctions in regard to the null and void ab initio 04cr1224 proceedings. See 04cr1224 direct examination of Ari Rabinowitz by AUSA Goldin confessing and admitting to illegal insider trading in GPMT's stock from 2001 to 2004. See also Mr. Ware's appeal briefs filed in *U.S. v. Ware*, 09-0851cr (2d Cir. 2010) detailing the bankruptcy fraud conspiracy by the **Atlanta, GA law firm Kilpatrick, Townsend, & Stockton, LLP, ("KTS"), and its partners Dennis S. Meir, Esq. (Zitter testified in 04cr1224 that Meir was a classmate of Zitter at Harvard Law School), and John W. Mills, III, Esq.**; hired by Zitter to commit a bankruptcy fraud conspiracy on the 03-93031-mhm (NDGA) Bankruptcy Court, (i.e., impede, delay, and obstruct the Section 16(b) profits disgorgement of Alpha, et al. back to GPMT); conceal the illegal insider trading by Alpha, et al.; and disrupt and interfere in GPMT's 2003, *In re Group Management Corp.*, case no. 03-93031-mhm (BC NDGA) Chapter 11 reorganization. CF., Doc. #101-1 (07/15/01 filed in 02cv2219 SDNY) pgs. 3-8 for Zitter, KTS, Mills, and Meir's bankruptcy fraud in 03-93031 (BC NDGA) to conceal Alpha, et al. Section 16(b) insider trading in GPMT's stock.

[17] See binding circuit precedent in *A.B. Dick Co. v. Marr*, 197 F.2d 498, 501-02 (2d Cir. 1952) (voluntary dismissal of lawsuit by plaintiff [Alpha, et al.] annulled and vitiated all prior orders, judgments, and proceedings; treated the proceedings as if they had never been filed; rendered the proceedings moot; and terminated the court's jurisdiction over the moot proceedings).

In 2008 long after the 2219 case had been **dismissed with prejudice** by District Judge Sand on 12/20/2007, Doc. #90, pursuant to the superseding Rule 41(a)(2) final order/judgment, United States Probation Office, ("USPO"), employee, an officer of the court (see 18 USC 401(2)), Thomas J. McCarthy, knowingly, willfully, in bad faith, and to commit a fraud on a federal court by an officer of the court, deliberately and intentionally prepared, signed, and filed in the 04cr1224 Court a known to be false, fraudulent, and completely fabricated presentence report, (the "1224 PSI"); filed by McCarthy as part of the conspiracy to conceal and cover up the Hobbs Act money laundering extortion conspiracy run by Alpha, et al[18].

Fact #20

The USAO's lawyers, Garcia, Goldin, and Douvas; McCarthy and the USPO; Sweet; and the USAO's 09-0851 (2d Cir.) appeal filers (Polk-Failla, Douvas, Paul, and Bharara) all either knew or were deliberately and intentionally reckless and negligent in not knowing the legal consequences of Judge Sand's 12/20/2007, Doc. #90, superseding Rule 41(a)(2) final order/judgment on the 2219 and, by necessary converse implication, the 04cr1224 proceedings[19].

Fact #21

In the 1224 PSI prepared by McCarthy in 2008 he ostensibly had access to both the 2219 case file and Judge Sand's 12/20/2007 Doc. #90 superseding Rule 41(a)(2) final order/judgment given the numerous references made to the 2219 proceedings in the 1224 PSI by McCarthy; and ostensibly had access to the 05cr1115 case file and related documents evident by the numerous referenced to the 1115 proceedings. Rather than fulfill his lawful and ethical duty of complete candor to the courts, as an officer of the court, in all official transactions, cf., 18 USC 401(2), McCarthy conspired with the USAO's lawyers, Goldin, Douvas, and Garcia to cover up and conceal from the courts and the public the ongoing Alpha, et al., Hobbs Act money laundering criminal conspiracy; and the fact the 2219 proceedings went moot on 12/20/2007 by Judge Sand's Rule 41(a)(2) superseding final judgment.

Fact #22

McCarthy was and is currently a USPO employee, an officer of the court, 18 USC 401(2); McCarthy had and was required by law **to exercise a duty of complete candor to the federal courts in the performance of his official duty and transactions with the Courts (see Federal Tort Claim Act)**; and in his preparation of the 1224 PSI, an official transaction, McCarthy was required by law, Section 401(2) to have notified the 1224 Court in 2007 that the 2219 proceedings had been dismissed with prejudice on 12/20/2007 by Judge Sand pursuant to voluntary Rule 41(a)(2) ex parte demand by government trial witness Zitter; and furthermore, McCarthy was required to exercised complete candor and notified the Court of the legal consequences of Judge Sand's superseding Rule 41(a)(2) final judgment on the 1224 proceedings. That was not done by McCarthy and the management of the USPO.

---

[18] McCarthy's PSI was deliberately, intentionally, fraudulently, and negligently prepared, signed, and knowingly filed into the 1224 Court **after the 2219 case had been dismissed with prejudice by Judge Sand on 12/20/2007**, doc. #90; filed as a fabricated inaccurate judicial document to adversely affect Mr. Ware; and prepared, signed, and filed into the records of a federal court as the illegal and criminal means and methods to provide the fraudulent and fabricated factual basis for the USAO and District Judge Sweet to impose a null and void conviction and sentence; and to illegally increase the sentence of Mr. Ware by the fraudulent imposition of a consecutive sentence in violation of the Due Process and Double Jeopardy Clauses.

[19] The record is indisputable: as a matter of law once Zitter and Sand annulled 2219 on 12/20/2007, ipso facto, by converse necessary implication 1224 was also annulled. Judge Sand on 12/20/2007 acted based on the 1224 post-trial **voluntary** Rule 41(a)(2) ex parte demand of Zitter and Alpha, et al. to annul, vitiate, vacate, void, and dismiss with prejudice the 2219 proceedings; demanded after Zitter had knowingly testified for the Government in 1224; and demanded after Zitter had knowingly committed perjury and falsely testified at trial in 1224 regarding paragraphs 12 and 13 of the 2219 complaint; and paragraph 10.1(iv) of GX-5. Perjury knowingly suborned by the USAO's lawyers Garcia, Douvas, and Goldin.

Fact #23

Since on or about 12/20/2007 continuing to the present (December 10, 2019) McCarthy and the USPO's executive management have knowingly, deliberately, intentionally, in bad faith, and recklessly, in criminal violation of 18 USC 401(3) and 401(2)[20] actively "resisted" the legal consequences on the USPO and its employees in regard to (1) Judge Sand's 12/20/2007, Doc. #90, superseding Rule 41(a)(2) final order/judgment[21] apropos their official court employee transactions concerning both the 04cr1224 and 05cr1115 null and void ab initio dismissed with prejudice proceedings; and (2) knowingly and willfully actively resisted the binding legal effects of the United States Attorney General ("USAG"), November 7, 2008 Article II, §3 Executive Branch appellate political decision **to dismiss with prejudice** the Government's cross-appeal filed in *United States v. Ware*, 07-5670cr (XAP) (2d Cir.), *Gov.-I*[22], ratified by the Second Circuit's 08/18/2009 superseding final judgment entered in Gov.-I (07-5670) (2d Cir.). CF., (i) Judge Sand's 12/20/2007 Doc. 90 Rule 41(a)(2) final order/judgment and (ii) the Second Circuit's 08/18/2009 Gov.-I final judgment, jointly, (the **"Final Judgments"**)[23].

Fact #24

Since December 20, 2007 continuing without interruption to the present (December 10, 2019) the USPO (SDNY) and its employees, and the USAO and its employees, officers of the court, **all privies of the United States**, and thus, therefore accordingly all bound absolutely by the **Final Judgments** entered in proceedings in the federal courts in New York; and therefore consequently all are subject to res judicata, collateral estoppel; and civil and criminal contempt enforcement sanctions in regard to their personal[24] and official transactions apropos: (1) the Judge Sand's 12/20/2007, Doc. #90,

---

[20] Contempt, active resistance, in the **official transactions** of the USPO (officers of the court) regarding Mr. Ware given 18 USC 3231 subject matter jurisdiction in 1224 terminated on November 17, 2004 upon David N. Kelley filing the 1224 indictment in the record of the court containing affirmative defenses on the face of the indictment. CF., *Cammer v. United States*, 399 U.S. 399, 404 (1956) (court employees, judges, marshals, bailiffs, court clerks, probation officers, etc. are officers of the court subject to contempt in their official transactions).

[21] "A court of the United States shall have the power to punish by fine or imprisonment, or both, .... (3) [d]isobedience or **resistance to** its lawful ... order [i.e., the 12/20/2007 Rule 41(a)(2) final order/judgment entered in 2219 (Sand, J.)]." (emphasis added).

[22] On November 7, 2008 the USAG pursuant to 18 USC 3742(b), Fed. R. App. P. 42(b), and Article II, §3 exercised his exclusive Executive Branch prerogative to control all litigation in 05cr1115 and thus notified the Court of Appeals for the Second Circuit at page 2* in its 07-5222 (2d Cir.) government brief as follows: "**The Government filed a notice of appeal but is not pursuing a cross-appeal** [of the 1115 District Court's October 2007 post-trial Rule 29 rulings in favor of Mr. Ware, to wit: Doc. #99, S.Tr. 31 L 18-25 (R-1); S. Tr. 35-36 (R-2); and S. Tr. 73-76 (R-3), jointly, (the **"Pauley Acquittal Verdicts"**)]." (the **"USAG's Appellate Political Decision"**) (emphasis added). On August 18, 2009 based on the USAG's 11/07/2008 Appellate Political Decision to dismiss with prejudice the Government's 07-5670 cross-appeal the Court of Appeals **ipso facto affirmed** the October 2007 Pauley Acquittal Verdicts R-1, R-2, and R-3), **and entered final judgment in *Gov.-I* against the United States and its privies**, (i.e., the USPO, the USAO, the AOC, the BOP, the U.S. Marshals, the FBI, the SEC, et al.); **triggered the Double Jeopardy Clause's protections for Mr. Ware**; triggered **res judicata, collateral estoppel**, and terminated all courts', the United States, and the DOJ's and its lawyers' subject matter jurisdiction over all issues and claims **actually** or **necessarily** resolved by the legal effects of the *Gov.-I* final judgment. see *Federated*, 452 U.S. at 398-401 (final judgment [Gov.-I] absolutely binding on all courts [the 02-cv-2219, 03-0831 D. NV, 05cr1115, 04cr1224, 07-5222 (2d Cir.), and Supreme Court (i.e., *Ware v. United States*, 10-6449)], the parties [Mr. Ware and the United States], and their privies [i.e., **the DOJ, the USPO, the SEC, the AOC, FBI, IRS, U.S. Marshals, and the BOP**] **in all subsequent proceedings between the parties**; all issues and claims actually or necessarily resolved by final judgment are "**forever settled between the parties.**") (emphasis added); and consequently irrevocably conferred *prevailing party* status on Mr. Ware for the purposes of civil and Fed. R. Crim. P. 42(a) criminal contempt sanctions and enforcement of the *Gov.-I* final judgment.

[23] Judge Sand's 02cv2219 12/20/2007 Doc. 90 Rule 41(a)(2) superseding final order/judgment and the second Circuit's 08/18/2008 superseding final judgment entered in Gov.-I jointly, the "Final Judgments."

[24] Clearly lacking and in the absence of all subject matter jurisdiction – it is clear, indisputable, and axiomatic by the concepts of res judicata, collateral estoppel, and the Double Jeopardy Clause's maxims no **live** Article III case or controversy can legally exist, in any proceeding, **between Mr. Ware and the United States**, its privies and agents, with respect to **all issues and claims actually or**

Affidavit of Ulysses T. Ware  
December 10, 2019  
Submitted to the United States Probation Office (SDNY) regarding 04cr1224 and 05cr1115 (SDNY) matters.

Page 9

superseding Rule 41(a)(2) final judgment entered in 2219; and (2) bound by and subject to the Second Circuit's 08/18/2009 superseding final judgment entered in *Gov.-I* (07-5670) (2d Cir.).

Fact #25

The U.S. Probation Office submitted to a federal court in 1224 a materially false and fraudulent PSR dated August 28, 2008, prepared by Thomas J. McCarthy, which was used to sentence Mr. Ware to the illegal and unreasonable sentence as a matter of law.

McCarthy knowingly and deliberately included known false and fraudulent information in the PSR. Paragraphs 1-4 contained the known false information that Mr. Ware was a named defendant in 02-CV-2219(LBS); and that Ware disobeyed an order of the 2219(LBS) court.

Paragraphs 7-24 contained the known false information that Mr. Ware willfully disobeyed orders of the 2219(LBS) court: GX-7, GX-11, and GX-24.

Paragraphs 50-53 were known false and fraudulent information obtained from District Judge William H. Pauley, III and U.S.P.O. Cathleen Tyler regarding INZS and SVSY which is in direct contradiction to the position of the AUSA Feldman's statement at sentencing on October 26, 2007, S. Tr. 46, regarding SVSY.

At page 21 of the false and fraudulent 1224 PSR the USPO recommended a **"consecutive sentence"** (emphasis added) base on the fraudulent and void sentence entered in 05-CV-1115(WHP).

Fact #26

Rabinowitz testified at trial in 1224, Tr. 228-29, that IVG/GPMT and its counsel (Mr. Ware) were contractually authorized to "stop or impede the sale or delivery of their [GPMT's] securities [GX 1-4]" if as Rabinowitz testified at Tr. Id., "as may be required by law [i.e., Rule 144(k); SEC Release 33-7190; *Kern*, 425 F.3d at 152-56]."

Fact #27

At trial in 1224 Zitter, testified under brutal and devastating cross-examination by Mr. Ware as follows, to wit:

1.  that he did not heed Ware's advice and proceeded to taking additional steps to conduct the illegal distribution of IVG/GPMT securities, including having Ware illegally arrested and kidnapped on September 1, 2004, GX-34 (Tr. 360-61); GX-35 (Tr. 363); GX-251 (Tr. 343);

2.  Tr. 371 (Zitter admits Ware's [09/01/2004 Atlanta, GA] arrest was illegal);

3.  Tr. 466 (Zitter stated "his motion to **punish** [threats of violence on Mr. Ware] for contempt.");

4.  Tr. 468 (Zitter stated: "I know we [he and Judge Sand] took further action ... [b]ut we did take further actions to **punish** you [Ware] for contempt because there were different ....");

---

**necessarily resolved in whole or in part by the Final Judgments entered in favor of Mr. Ware, GPMT, and the Landers** – all actions therefore taken by the United States, its agents, or its privies in willful "resistance to" [see 18 USC 401(3)] the Final Judgments were therefore taken in the **personal and/or official capacity** of the individual(s) or agencies taking such ultra vires and extra-judicial actions; and accordingly the individuals and/or agencies have already retrospective and prospectively incurred draconian personal civil monetary and criminal contempt sanctions liability to Mr. Ware, GPMT, and the Landers. see *Stump v. Sparkman*, 435 U.S. 349, 350 (1978). (no judicial immunity for ultra vires action taken "in the clear absence of all jurisdiction."). Hence the USPO's employees and in particular those who prepared and signed the PSIs in 1224 and 1115, Thomas J. McCarthy and Colleen Tyler, respectively, are all **personally civilly monetarily liable to Mr. Ware** for compensatory civil and penal criminal contempt sanctions. CF., Fed. R. Crim. P. 42(a), and 18 USC §§ 401(2) and 401(3).

5. Tr. 456 (Zitter testified that his steps were taken to compel (extort) GPMT by holding Ware in contempt of court.

6. Zitter testified at Tr. 457 of his steps in furtherance of the illegal distribution of IVG/GPMT securites as follows:

Mr. Ware: What were those steps?

Zitter: We [Judge Sand and the four plaintiffs] attempted to compel [extort] you [Mr. Ware] to issue the [GPMT free-trading] stock [in violation of Section 4(1)].

Mr. Ware: How did you attempt to compel [extort] Mr. Ware to issue the stock?

Zitter: By applying to [Judge Sand] to hold you in civil contempt [kidnapping] if you [Mr. Ware] didn't do so.

Fact #28

At trial in 1224 the following events regarding AUSA Nicholas S. Goldin's conspiracy to obstruct justice took place:

1. AUSA Goldin made the binding judicial admission when in direct examination of Zitter at Tr. 305, Goldin, ostensibly totally ignorant to the elements of criminal securities fraud as well as §77b(a)(11), introduced into evidence GX-9, Mr. Ware's letter dated January 28, 2003 addressed to Zitter, in regard to Zitter's Hobb Act extortion attempts on Mr. Ware and GPMT (GX-52, 52A, 52B, i.e., Hobb Act extortion demands).
2. AUSA Goldin actually had Zitter read into the record at GX-9, Tr. 305 L13, Mr. Ware's January 28, 2003 letter: "Dear Mr. Zitter, we are in receipt of a fax originating from your office requesting an **illegal issuance of [GPMT's] free trading** shares to your clients." (emphasis added).
3. AUSA Goldin's faux pas is a confession by Goldin and Zitter, that the plaintiffs through Zitter were on notice of the illegality of their actions as early as January 28, 2003, and took "steps" to further the Hobbs Act conspiracy money laundering criminal activities.
4. At Tr. 306-07, AUSA Goldin foolishly introduced into evidence GX-10 (Zitter's letter of January 29, 2003 addressed to Ware in reply to Ware's January 28, 2003 letter).
5. In GX-10 Zitter admits to taking "steps" necessary for the unregistered distribution of IVG/GPMT's securities on behalf of his clients (the four plaintiffs in 02-CV-2219(LBS)) thus, conferring §2(a)(11) statutory underwriter status on them as well.

Fact #29

At trial in 1224 the Government via AUSAs Nicholas S. Goldin and Maria E. Douvas made the following judicial admissions, to wit:

1. The Government admitted via its indictment ¶9-10, the Notes (GX 1-4) were sold pursuant to GX-5, the subscription agreement.

The Government introduced GX-1 and GX-5, at trial, through its own witness Rabinowitz at Tr. 182, Tr. 190 respectively; and AUSA Goldin, Tr. 252, stated as an officer of the court:

> **"These are very complex areas of the law. There is no one [associated with the Government] in this courtroom [other than Mr. Ware] qualified to discuss these matters. The document [GX-5 (the subscription agreement)] speaks for itself."** (emphasis added). Mr. Goldin apparently did not understand or realize exactly what para. 10.1(iv) of GX-5 was in fact speaking.

2. Therefore, the Government's judicially admitted GX-5's unredacted content -- ¶10.1(iv), requested IVG **to file a Form SB-2 registration statement within 90 days of February 7, 2001**, the purchase date of the Notes [GX 1-4], to enable the conversion shares, "to be sold on the open market without restriction" -- 'speaks for itself.'"

Affidavit of Ulysses T. Ware
December 10, 2019
Submitted to the United States Probation Office (SDNY) regarding 04cr1224 and 05cr1115 (SDNY) matters.

Page 11

Hence, the Government admitted via the admissions contained in GX 1-4, 5 and through Rabinowitz's testimony:

1) Alpha purchased IVG Notes (GX 1-4) and Promissory Notes, "with a view to a 'public offering' ", *Cavanaugh*, 445 F.3d at 111 citing *Wolfson*, 405 F.2d at 782; and

3.   any persons (Rabinowitz, Kenneth A. Zitter, Esq., ("Zitter"), Edward Grushko, Esq., ("Grushko"), Barbara R. Mittman, Esq., ("Mittman"), Ari Kluger, Dennis Meir, Esq., ("Meir"), Kilpatrick & Stockton, LLP, Thomas V. Sjoblom, Esq., Prokauser & Rose, LLP, and District Judge Sand, acting in his personal capacity without subject-matter jurisdiction, were also §2(a)(11) principal underwriters of GPMT's restricted securities (GX 1-4). *Kern*, 425 F.3d at 152; *R.A. Holman & Co., Inc.*, 366 F.2d at 449; *Geiger*, 363 F.3d at 487.

4.   By "engag[ing] in steps necessary to the distribution of [IVG] securities [,]" the participants were aiders and abettors in the distribution of [IVG] securities. *SEC v. Murphy*, 626 F.2d 633, 649 (9th Cir. 1980) (Secondarily liable for enabling the distribution); *SEC v. Management Dynamics, Inc.*, 515 F.2d 801, 810-11 (2d Cir. 1975)(Discussing *Spectrum*, recklessness is sufficient to establish negligence as an aider or abettor liability.); *SEC v. Spectrum, Ltd.*, 489 F.2d 535, 541 (2d Cir. 1975) (Issuer's attorney thought to be negligent for recklessly issuing legal opinion enabling an unregistered distribution of issuer's securities.); *SEC v. North American R&D Corp.*, 424 F.2d 63, 72 (2d Cir. 1970)(Substantial assistance will Impose secondary liability as aider and abettor).

Fact #30

At trial in 1224 Rabinowitz, an admitted Section 2(a)(11) underwriter, admitted at Tr. 199, 204; and Zitter, Tr. 481, that 1,351,351 **unregistered** shares of GPMT [valued at +$15 million dollars] **"were sold into the open market" in June 2003** [an illegal unregistered public offering], thus confessing to §5, 77x, and a §15(a)(1) violations since he and Alpha were admitted unregistered brokers and dealers, Tr. 206.

Nathan Landenberg, Esq., according to Rabinowitz's trial testimony, Tr. 219, supplied the extortion money and laundered the profits and proceeds for his and Alpha's "private placement business", a "few hundred times".

Fact #31

At trial in 1224 Rabinowitz testified to hiring Zitter, Tr. 196; and Zitter hired Dennis S. Meir, Esq.[25] in GPMT's Chap 11, Tr. 376-82, and also hired Grushko & Mittman, P.C., Tr. 493-94;

Zitter performed steps necessary to the distribution of GPMT's securities and was a Section 2(a) (11) underwriter, *Kern*, 425 P.3d at 152; and procured through Grushko & Mittman, P.C. a fraudulent Rule 144 legal opinion, Tr. 494-95, and sent a false and fraudulent -- mail and wire fraud -- letter (GX 52-B) to GPMT's transfer agent demanding free trading shares, Tr. 301-02; *Geiger*, 363 F.3d at 487 quoting:

"It was [Zitter] who procured those [GPMT's] certificates [Tr. 322-326]; GX-16 (June 16, 2003 ltr. from Ware to Zitter);

GX-17 (Zitter's June 3, 2003 letter sent to Rabinowitz, "I got shares [4,026,695 unregistered shares of GPMT which were unlawfully sold pursuant to Rule 144(k) in June 2003 in violation of Section 5 and 77x, pursuant to fraudulent legal opinion of Grushko & Mittman, P.C., Tr. 493-94.]]"

Zitter further admitted, Tr. 368, of requesting that Mr. Ware be arrested on 09/01/2004 in Atlanta, GA for not issuing the fraudulent Rule 144(k) legal opinions.

---

[25] Meir was employed by the Atlanta, GA law firm of Kilpatrick, Townsend, and Stockton, LLP; Zitter's class mate from Harvard Law School.

Zitter further admitted, Tr. 368, of requesting that Mr. Ware be arrested on 09/01/2004 in Atlanta, GA for not issuing the fraudulent Rule 144(k) legal opinions.

Zitter testified, Tr. 370, of contacting the Marshals to illegally and fraudulently arrest Mr. Ware on 09/01/2004 for not issuing the fraudulent Rule 144(k) legal opinions.

Zitter, Tr. 322, went before Judge Sand on June 2, 2003 to get Sand to force the fraudulent issuance of bogus Rule 144(k) legal opinion, GX-16, GX-17.

Zitter, Tr. 332-33, admitted he participated in a telephone conference on June 16, 2003 and July 2, 2003, to cause the illegal issuance and distribution of GPMT's unregistered securities.

Zitter's admitted participation in steps necessary to the June 2003 illegal unregistered distribution of GPMT's unregistered securities, by a Section 2(a)(11) statutory underwriter. Which imposed criminal liability on Zitter and Meir for taking steps in GPMT's Chapter 7 (GX-250), Tr. 376-82; Tr. 400-01, DX-Q, to cause the illegal June 2003 issuance of GPMT's restricted securities.

(i) Grushko and Mittman, P.C. presented fraudulent Rule 144(k) legal opinions to the court, Tr. 493-94, in an attempt to aid and abet Zitter and Judge Sand to conduct an unregistered distribution of IVG securities.

The illegal unregistered distribution did take place by the public sale of GPMT's in June 2003 of more than **4,026,695** unregistered shares of IVG/GPMT, (valued at +$40 million dollars) Tr. 322-25; GX-55, Tr. 480-81;Tr. 325-333; GX-16, GX-17, GX-19;

and pursuant to *Kern*, 425 F.3d at 152; *Geiger*, 363 F.3d at 487; *Murphy*, 626 F.2d at 649; *Spectrum*, 489 F.2d at 541; 15 U.S.C. §78ff; *Wolfson*, 405 F.2d at 783-84; and *Abrams*, 357 F.2d at 547, imposed criminal liability on Edward Grushko, Esq. (a convicted felon for securities fraud), and Barbara R. Mittman, Esq., for signing a fraudulent Rule 144(k) legal opinion as a step in the unregistered distribution of GPMT's securities in June 2003, Tr. 493-94.

### End of Document

I Ulysses T. Ware have this 10th day of December, 2019 in New York, NY set my hand and seal, under oath, subject to the penalty of perjury, having personal knowledge of the facts, and pursuant to 28 USC 1746 have made the foregoing sworn statements of fact and certify each Fact is true and correct based on the records in the referenced proceedings.

_____  
Ulysses T. Ware

_____  
Notary

12 / 10 / 2019  
Date

Notary Seal

06 / 20 / 2020  
Commission Expiration

---

Affidavit of Ulysses T. Ware       Page 13  
December 10, 2019  
Submitted to the United States Probation Office (SDNY) regarding 04cr1224 and 05cr1115 (SDNY) matters.