From:   Ulysses T. Ware

To: The Hon. William H. Pauley, III

Date:   May 28, 2021

RE: Filing the enclosed pleadings on the 04cr1224 and 05cr1115 (SDNY) dockets.

Judge Pauley:

Please file the enclosed pleadings:

**Ulysses T. Ware, et al., May 28, 2021, Technical Memorandum of Law and Analysis #1.06.**

on the applicable dockets.

In the future, please serve Mr. Ware via email at utware007@gmail.com with all of your orders or directives entered in this matter, due to the slowness of the U.S. Mail.

**Mr. Ware and the estate of Mary S. Ware will file a brief in opposition to the Government's Dkt. #250 not later than June 20, 2021.**

/s/ Ulysses T. Ware

# Case Nos. 05cr1115 (SDNY) and 04cr1224 (SDNY)

Submitted on May 28, 2021, by:

/s/ Ulysses T. Ware
_____
Ulysses T. Ware, individually, and as
the legal representative for the estate
of Mary S. Ware.
123 Linden Blvd.
Suite 9-L
Brooklyn, NY 11226
(718) 844-1260 phone
utware007@gmail.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

**United States of America, et al.,**
    Plaintiff, Petitioner,
    Cross Respondent,


v.

**Ulysses T. Ware, et al.,**
    Defendant, Respondent,
    And Cross Petitioner.

---

# Ulysses T. Ware, et al., May 28, 2021, Technical Memorandum of Law and Analysis #1.06.

Page 1 of 8
May 28, 2021 prepared
RE: United States Article II litigation position regarding February 20, 2001 contemplated public offering of GPMT's restricted securities, GX-1, GX-2, GX-3, and GX-4, purchased pursuant to para. 10.1(iv) of GX-5 (the so-called subscription agreement): Section 2(a)(11) statutory underwriter status ineligibility for Rule 144(k) conferred on each 02cv2219 (SDNY) plaintiff.

# Office of Ulysses T. Ware

123 Linden Blvd.
Suite 9-L
Brooklyn, NY 11226
(718) 844-1260
Utware007@gmail.com

May 28, 2021
Via email to : Audrey_strauss@usdoj.gov and Melissa_childs@usdoj.gov

## Technical Memorandum of Law and Analysis #1.06.

Office of the United States Attorney
For the Southern District of New York
1 St. Andrews Plaza
New York, NY 10007

RE: ***United States v. Ware***, 04cr1224 (SDNY), 18 USC 401(3) criminal contempt prosecution regarding now annulled, vitiated, and abrogated orders and judgments entered in 02cv2219 (SDNY), (the "**2219 Case**"), to wit: **GX-7** (November 25, 2002, judgment), **GX-11** (January 2003 order), and **GX-65** (August 13, 2003, order); and the December 20, 2007, Dkt. #90, superseding **voluntary,** *after the statute of limitation had run on all claims in the 2219 Case*, Fed. R. Civ. P. Rule 41(a)(2) final order-judgment of dismissal of the 2219 Case.[1] (see Exhibit C).

Ms. Strauss:

---

[1] See ***A.B. Dick Co. v. Marr***, 197 F.2d 197, 501-02 (2d Cir. 1952 ("But at the same time that the court denied the defendant's petition to vacate and set aside the decree and judgment, it granted the plaintiff's motion to dismiss its entire case and entered an order of dismissal with prejudice. And this action of the court was the equivalent of vacation of the judgment theretofore entered in the case in the plaintiff's favor, so that, perhaps, the court would have been well advised to have entered on its own motion an order vacating that judgment. See ***Ericson v. Slomer***, 7 Cir., 1938, 94 F.2d 437, 439. ***The reason for this is that voluntary dismissal of a suit leaves the situation so far as procedures therein are concerned the same as though the suit had never been brought, Maryland Casualty Co. v. Latham, 5 Cir., 1930, 41 F.2d 312, 313, thus vitiating and annulling all prior proceedings and orders in the case, and terminating jurisdiction over it for the reason that the case has become moot. Bryan v. Smith, 7 Cir., 1949, 174 F.2d 212, 214, 215***. See also ***United States v. Alaska S.S. Co.***, 1920, 253 U.S. 113, 116, 40 S.Ct. 448, 449, 64 L.Ed. 808, wherein it is said: "**Where by an act of the parties, or a subsequent law, the existing controversy has come to an end, the case becomes moot and should be treated accordingly.**"). (emphasis added).

Page 2 of 8
May 28, 2021 prepared
RE: United States Article II litigation position regarding February 20, 2001 contemplated public offering of GPMT's restricted securities, GX-1, GX-2, GX-3, and GX-4, purchased pursuant to para. 10.1(iv) of GX-5 (the so-called subscription agreement): Section 2(a)(11) statutory underwriter status ineligibility for Rule 144(k) conferred on each 02cv2219 (SDNY) plaintiff.

# I.

Ulysses T. Ware and the estate of Mary S. Ware, (the "**Sureties**"), are writing to you pursuant to Fed. R. Civ. P. Rule 11(b)(1-4) and 28 USC 1927 in an attempt to determine the Article II current litigation position of the United States in regard to the proceedings in 04cr1224, (the "**1224 Case**"), vis-à-vis 15 USC 77b(a)(11), SEC Release 33-7190, *Gilligan, Will & Co. v. SEC*, 267 F.2d 461, 466-67 (2d Cir. 1959)[2] and **Berckeley**, 455 F.3d at 220[3] (citing SEC Release 33-7190: Section 2(a)(11) statutory underwriters required to register all distribution of securities [pursuant to Section 5.]). See n.3, Exhibits A and B, infra.

Binding circuit precedent, *Gilligan, Wills*, 267 F.2d at 467 found the plaintiffs to be statutory underwriters in the sale of the convertible debentures purchased; and further found that it was the legal obligation of the party [the 2219 Case plaintiffs and the Government at trial in 1224] to prove eligibility for any claimed exemption from Section 5.[4] Furthermore, the Court

---

[2] *Gilligan, Will Co. v. Sec. and Exch. Com'n*, 267 F.2d 461, 466 (2d Cir. 1959) ("Petitioners assert that they were not "underwriters" within the meaning of the exemption provided by the first clause of § 4(1). Since § 2(11), 15 U.S.C.A. § 77b(11) defines an "underwriter" as "any person who has purchased from an issuer with a view to * * * the distribution of any security" and since a "distribution" requires a "public offering," see H.R.Rep. No. 1838, 73d Cong., 2d Sess. (1934) at p. 41, the question is whether there was a "public offering." Petitioners, disclaiming any reliance on the exemption of the second clause of § 4(1) for "transactions by an issuer not involving any public offering," assert that whether there was a "distribution" must be judged solely by their own acts and intention, and not by the acts or intention of the issuer or others. In other words, they claim that whether the total offering was in fact public, their purchases and resales may be found to be exempt on the ground that they were not underwriters if their own resales did not amount to a public offering.

In the view we take of this case we need not decide whether, if the petitioners had purchased with a view to only such resales as would not amount to a distribution or public offering, their acts would be exempt even though the issue was in fact a public offering. *We find that the <u>resales contemplated and executed</u> by petitioners [ cf., 02cv2219 plaintiffs' February 20, 2001 intent as specified at para. 10.1 (iv) in GX-5] were themselves a distribution or public offering as the latter term has been defined by the Supreme Court, <u>and we therefore find that petitioners were underwriters and that their transactions were not exempt under § 4(1)."</u>*. (emphasis added).

[3] See Problematic Practices Under Regulation S, **SEC Release No. 33-7190**, 60 Fed. Reg. 35663 (July 10, 1995). ("The SEC made clear in the release that the forty-day restricted period could not be used for this purpose, i.e., to "wash off" <u>resale restrictions such as the 2-year holding requirement under Rule 144</u>. *The release concluded by stating that "<u>any distributions by a statutory 'underwriter' [the 02cv2219 plaintiffs as pleaded by the Government at para. 9, 10, 11, and 12 of the 04cr1224 Indictment] must be registered pursuant to Section 5" unless subject to a statutory exemption</u>.").* (emphasis added).

[4] **Gilligan, Will Co.**, 267 F.2d at 466 ("In *S.E.C. v. Ralston Purina Co., 1953*, 346 U.S. 119, 73 S.Ct. 981, 97 L.Ed. 1494, the Supreme Court considered the exemptions provided by § 4(1). Two of its holdings are significant here. First, it held that an issuer who claims the benefit of an exemption from § 5 for the sale of an unregistered security has the burden of proving entitlement to it. *The rationale of this result applies as well to a <u>broker-dealer</u> who claims the benefit of a similar exemption. <u>We therefore find that the burden was upon the petitioners to establish that they were not underwriters within the meaning of § 4(1)"</u>*. (emphasis added).

Page 3 of 8
May 28, 2021 prepared
RE: United States Article II litigation position regarding February 20, 2001 contemplated public offering of GPMT's restricted securities, GX-1, GX-2, GX-3, and GX-4, purchased pursuant to para. 10.1(iv) of GX-5 (the so-called subscription agreement): Section 2(a)(11) statutory underwriter status ineligibility for Rule 144(k) conferred on each 02cv2219 (SDNY) plaintiff.

noted in regard to the **purchaser's intentions at the time of purchase of the restricted securities**[5] (the convertible debenture, i.e., GX 1-4), that intention was determined by the facts and circumstances required by the purchasers on the sellers.[6] Ms. Strauss the law and the facts are not in dispute. The Government admitted in its 04cr1224 indictment, (the "**Indictment**"), at para. 9-10, that IVG's Notes (GX 1-4) were sold on or about "February 2001" pursuant to the "Loan Agreements" which included "a subscription agreement [GX-5]." Accordingly, the face of the Indictment pleaded binding judicial admissions and confession; and affirmative negating defenses which precluded as a matter of law the Government from establishing probable cause, and from proving beyond a reasonable doubt each factual element of the 18 USC 401(3) charges

---

[5] See Exhibit A, para. 12 of the Indictment, para. 10.1(iv) of GX-5, and para. 12-13 of the 02cv2219 complaint: the purchasers [the 02cv2219 plaintiffs] required IVG, a/k/a GPMT, to register its conversion securities on "Form SB-2" with the SEC not later than 180 days from the purchase date of February 20, 2001. The purchasers had no intention of holding the restricted securities (GX-1, GX-2, GX-3, and GX-4) as a bona fide investment; rather the convertible debentures were purchased on February 20, 2001 "**with a view to a distribution**" a public offering. Ergo, the purchasers (the 2219 plaintiffs) indisputably were Section 2(a)(11) statutory underwriters ineligible for any Rule 144(k) exemption to Section 5 registration requirements. Which the Government pleaded on the face of its 04cr1224 indictment on its face at paragraphs 9-10, i.e.**, negating and affirmative defenses to all 18 USC 401(3) criminal contempt charges.** See n. 6, infra.

[6] *Gilligan, Will Co.,* 267 F.2d at 461, 467-68 ("The Commission also found that 'The sales by Gilligan and registrant of the underlying common stock on the American Stock Exchange in May 1956, clearly constituted a public distribution.' Petitioners contest this conclusion on the ground that since the conversion and sales occurred more than ten months after the purchase of the debentures the Commission was bound to find that the debentures so converted had been held for investment, and that the sales were therefore exempt under § 4(1) since made by a person other than an issuer, underwriter or dealer. ***Petitioners [the 02cv2219 plaintiffs] concede that if such sales were intended at the time of purchase ["February 2001" (quoting paragraph 9 of the 04cr1224 indictment)], the debentures [GX-1, GX-2, GX-3, and GX-4] would not then have been held as investments***; but it argues that the stipulation reveals that the sales were undertaken only after a change of the issuer's circumstances as a result of which petitioners, acting as prudent investors, thought it wise to sell. The catalytic circumstances were the failure, noted by Gilligan, of Crowell-Collier to increase its advertising space as he had anticipated that it would. *We agree with the Commission that in the circumstances here presented the intention to retain the debentures only if Crowell-Collier continued to operate profitably was equivalent to a "purchased * * * with a view to * * * distribution" within the statutory definition of underwriters in § 2(11).* To hold otherwise would be to permit a dealer who speculatively purchases an unregistered security in the hope that the financially weak issuer had, as is stipulated here, "turned the corner," to unload on the unadvised public what he later determines to be an unsound investment without the disclosure sought by the securities laws, although it is in precisely such circumstances that disclosure is most necessary and desirable. The Commission was within its discretion in finding on this stipulation that petitioners bought "**with a view to distribution**" despite the ten months of holding."). (emphasis added).

May 28, 2021 prepared
RE: United States Article II litigation position regarding February 20, 2001 contemplated public offering of GPMT's restricted securities, GX-1, GX-2, GX-3, and GX-4, purchased pursuant to para. 10.1(iv) of GX-5 (the so-called subscription agreement): Section 2(a)(11) statutory underwriter status ineligibility for Rule 144(k) conferred on each 02cv2219 (SDNY) plaintiff.

in Counts I, II, and III of the Indictment. Ergo, the Government pleaded itself out of court. The indictment, conviction, and sentence in 04cr1224 are all null and void ab initio, the proceedings are moot[7].

II.

**Conclusion.**

Ms. Strauss, the law, the purpose for, the lawful need, the legal objective, and the record facts (the Government's own Indictment, Exhibit A, and its trial exhibit, para. 10.1(iv) of GX-5, Exhibit B) are overwhelming against the Government's Article II litigation position currently being advanced in the federal court regarding Dkt. #250. There the Government currently has falsely and fraudulently claimed to be a **lawful** "judgment creditor"[8] with respect to the moot and abrogated 1224 proceedings within the scope and context of Rule 11(b)(1-4) and 28 USC 1927 sanctions.

Please respond to the issues, facts, and claims raised herein in compliance with your official duty under the DOJ's Rules of Professional Conduct and Rule 11(b)(1-4) so that a joint stipulated statement of material fact can be presented to the Court.

Sincerely,


/s/ Ulysses T. Ware

---

[7] The Government's negating affirmative defenses pleaded on the face of the Indictment at para. 9-10, negated as a matter of law the elements of "willful" and "lawful" required to have indicted ( probable cause was a legal impossibility) or convicted Mr. Ware beyond a reasonable doubt ("willful" and "lawful" were legal impossibilities) in the context of 18 USC 401(3) criminal contempt as charged in the Indictment's Counts I, II, and III. (see Exhibit A), infra.

[8] By necessary converse implication, ostensibly, to be a **lawful** "judgment creditor" with respect to the 1224 case requires the Government to possess currently an **extant** "lawful" judgment obtained in the prosecution of an "offense" within the scope of statutory 18 USC 3231 subject matter jurisdiction, where **lawful** fines, restitution, or other penalties were lawfully imposed before the Government has prosecutorial statutory Article II (cf., 28 USC 547(1, 2)) and constitutional Article III standing as a purported "judgment creditor." The Government's own negating affirmative defenses pleaded at para. 9-10 on the face of the Indictment, and its admission of para. 10.1(iv) of GX-5, see Exhibit B, ipso facto as a matter of law, and the application of the absolute finality of the Double Jeopardy Clause prohibited the Government from establishing Article II and III standing to appear as a petitioner, "judgment creditor" in Dkt. #250 and request any judicial relief from the District Court. The claim in Dkt. 250 (05cr1115) is moot.

May 28, 2021 prepared
RE: United States Article II litigation position regarding February 20, 2001 contemplated public offering of GPMT's restricted securities, GX-1, GX-2, GX-3, and GX-4, purchased pursuant to para. 10.1(iv) of GX-5 (the so-called subscription agreement): Section 2(a)(11) statutory underwriter status ineligibility for Rule 144(k) conferred on each 02cv2219 (SDNY) plaintiff.

# Exhibit A: 1224 Indictment's para. 9-10.

P. 48

that time. The title of the lawsuit was <u>Alpha Capital Aktiengesellschaft, Bank International, S.A., Markham Holdings, Ltd., and Stonestreet Limited Partnership v. Group Management Corp., Thomas Ware, Len Churn and Harry Corker</u>, 02 Civ. 2219 (LBS) (the "Civil Action"). The Civil Action was filed in the United States District Court for the Southern District of New York and was assigned to United States District Judge Leonard B. Sand (the "Court").

9. The Civil Action involved loan agreements entered into by each of the Civil Plaintiffs and Internet Venture Group, Inc. in or around February 2001 (the "Loan Agreements") under which Internet Venture Group, Inc. borrowed a total of approximately $1.1 million collectively from the Civil Plaintiffs. These Loan Agreements were essentially identical except for the amount of loan principal. They provided for the Civil Plaintiffs to purchase convertible notes from Internet Venture Group, Inc., which were due on January 1, 2003, absent a default by Internet Venture Group, Inc., in which case the maturity date of the notes would be accelerated. Each Loan Agreement consisted of a convertible note, [a subscription agreement,] and, beginning in or around September 2001, a security agreement.

10. Among other things, the Loan Agreements (obligated) Internet Venture Group, Inc. to convert, upon the request of a Civil Plaintiff, a certain portion of the loan principal or

3

P. 49

interest into common stock of Internet Venture Group, Inc. (hereinafter a "Conversion Request"). The number of shares that Internet Venture Group, Inc. was (obligated) to convert upon a Conversion Request would be determined in part by the stock's prevailing market price. The Loan Agreements provided that Internet Venture Group, Inc. could not refuse to honor Conversion Requests without first obtaining an order from a court and posting a bond for 130 percent of the loan amount.

11. On or about August 17, 2001, Internet Venture Group, Inc. changed its name to Group Management Corporation ("GMC").

12. In or around February 2002, the Civil Plaintiffs declared GMC in default of the Loan Agreements based on GMC's failure to fulfill certain of its (obligations) under the Loan Agreements <u>related to having the stock underlying the Loan Agreements registered with the United States Securities and Exchange Commission.</u> In addition, in or around February 2002, Alpha Capital Aktiengesellschaft submitted a Conversion Request to GMC which GMC failed to honor.

13. In or about March 2002, the Civil Plaintiffs filed the Civil Action seeking, among other things, an injunction directing GMC to honor all Conversion Requests. On or about April 29, 2002, the Court entered a written order directing GMC to honor outstanding Conversion Requests.

4

12/19/2012

May 28, 2021 prepared
RE: United States Article II litigation position regarding February 20, 2001 contemplated public offering of GPMT's restricted securities, GX-1, GX-2, GX-3, and GX-4, purchased pursuant to para. 10.1(iv) of GX-5 (the so-called subscription agreement): Section 2(a)(11) statutory underwriter status ineligibility for Rule 144(k) conferred on each 02cv2219 (SDNY) plaintiff.

# Exhibit B: Paragraphs 12-13 of the 02cv2219 complaint.

9
13

12. Plaintiffs purchased the Notes pursuant to the terms of the Subscription Agreement (the "Subscription Agreement") entered into between and among the parties on or about February 2, 2001. Plaintiffs collectively paid $1.1 million to IVG and each Plaintiff received a Note in proportion to its investment, as set forth in the paragraph 10.

13. Pursuant to Section 10.1(iv) of the Subscription Agreement, IVG was obligated to file on or before May 3, 2001, a form SB-2 Registration Statement with the United States Securities and Exchange Commission registering the stock underlying the Notes so that upon conversion the stock could be sold on the open market without restriction. IVG was obligated to

4

121

have such registration statement declared effective on or before June 17, 2001. Thus Section 10.1(iv) of the Subscription Agreement provides:

> "The Company shall file with the Commission within 90 days of the Closing Date (the 'Filing Date'), and use its reasonable commercial efforts to cause to be declared effective a Form SB-2 registration statement (or such other form as it is eligible to use) within 135 days of the Closing Date in order to register the Registrable Securities for resale and distribution under the Act. The registration statement described in this paragraph must be declared effective by the Commission within 135 days of the Closing Date (as defined herein)('Effective Date')."

IVG failed to comply with its obligations and to date has not had its registration statement declared effective.

May 28, 2021 prepared
RE: United States Article II litigation position regarding February 20, 2001 contemplated public offering of GPMT's restricted securities, GX-1, GX-2, GX-3, and GX-4, purchased pursuant to para. 10.1(iv) of GX-5 (the so-called subscription agreement): Section 2(a)(11) statutory underwriter status ineligibility for Rule 144(k) conferred on each 02cv2219 (SDNY) plaintiff.

# Exhibit C: December 20, 2007, 02cv2219 Rule 41(a)(2) superseding final order-judgment.



May 28, 2021 prepared
RE: United States Article II litigation position regarding February 20, 2001 contemplated public offering of GPMT's restricted securities, GX-1, GX-2, GX-3, and GX-4, purchased pursuant to para. 10.1(iv) of GX-5 (the so-called subscription agreement): Section 2(a)(11) statutory underwriter status ineligibility for Rule 144(k) conferred on each 02cv2219 (SDNY) plaintiff.

## Certificate of Service

I Ulysses T. Ware certify that I have this 28th day of May 2021 served a copy of:

**Ulysses T. Ware, et al., May 28, 2021, Technical Memorandum of Law and Analysis #1.06.**

on AUSA Melissa A. Childs at her purported official DOJ email account: melissa.childs@usdoj.gov; and also served the same on Acting United States Attorney (SDNY) Ms. Audrey Strauss at audrey.strauss@usdoj.gov.; and served Notice of Motion via the U.S. Mail addressed to:

AUSA Melissa A. Childs, Esq.
Office of the United States Attorney
86 Chambers St.
3rd Floor
New York, NY 10007

/s/ Ulysses T. Ware
_____
Ulysses T. Ware