From:  Ulysses T. Ware


To: The Office of the District Clerk (SDNY)


Date:   July 11, 2021


RE: Filing the enclosed pleadings on the  04cr1224 (SDNY) and 05cr1115 (SDNY) dockets.


Please file the enclosed **pleading** and please properly and correctly identify the enclosed as a pleading rather than a "letter":

**Re: Ulysses T. Ware's July 11, 2021, Supplemental Memorandum of Law #1.0 to
Rule 33 Motion for a New Trial (Dkt. 263) (#39)**

# Relief requested by July 14, 2021, at 12:00 noon.


on the applicable dockets.


/s/ Ulysses T. Ware

## Case Nos. 04cr1224 (SDNY) and  05cr1115 (SDNY) (#36)

Submitted on July 11, 2021,  by email to: Temporary_Pro_Se_Filing@nysd.uscourts.gov

/s/ Ulysses T. Ware

Ulysses T. Ware, individually, and as
the legal representative for the estate
of third-party surety Mary S. Ware.
123 Linden Blvd., Suite 9-L
Brooklyn, NY 11226
(718) 844-1260 phone
utware007@gmail.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

**United States of America, et al.,**
      **Plaintiff, Petitioner,**
      **Cross Respondent,**

      **v.**

**Ulysses T. Ware, et al.,**
      **Defendant, Respondent,**
      **And Cross Petitioner.**

**Ulysses T. Ware's July 11, 2021, Supplemental Memorandum of Law #1.0 to
Rule 33 Motion for a New Trial (Dkt. 263) (#39)**

# Relief requested by July 14, 2021, at 12:00 noon.

### Certificate of Service

**I Ulysses T. Ware certify that I have this 11th day of July 2021 served the persons listed below with a
copy of this pleading:**

    AUSA Jeffrey R. Ragsdale, Counsel DOJ's Office of Professional Responsibility
    AUSA Melissa Childs, AUSA John M. McEnany, Acting USA Audrey Strauss
    USAG The Hon. Merrick Garland

**Supplemental Memorandum of Law #1.0 to
Rule 33 Motion for a New Trial (Dkt. 263) (#39).**

**I.**

**A.      Governing Legal Principles: The Legal Standards.**

"Brady requires that the government disclose material evidence favorable[1] to a criminal

defendant." ***United States v. Mahaffy***, 693 F.3d 113, 127 (2d Cir. 2012) (citation omitted).

"Evidence is favorable if it is either exculpatory or impeaching, ... and it is material if 'there

is a reasonable probability that, had the evidence been disclosed to the defense, the result of the

proceeding would have been different.'" Id.[2] (citations omitted). "[T]he adjective [reasonable] is

important." ***Kyles v. Whitley***, 514 U.S. 419, 434 (1995). "[A] showing of materiality does not

require demonstration by a preponderance that disclosure of the suppressed evidence would

have resulted ultimately in the defendant's acquittal." Id.; accord ***Mahaffy***, 693 F.3d at 127. Nor

---

[1] In both ***United State v. Ware***, 04cr1224 (August 10, 2007, Dkt. 32 at page 2)( Sweet, J.)  and in Id., 05cr1115 (SDNY) (May 19, 2006, Dkt. 17, Tr. 5-9) (Pauley, J.), (the "**Brady Orders**"), the Government was <u>**ordered**</u> to disclose all Brady evidence "prior to trial." Specific written Brady court orders were willfully, in bad faith, intentionally, and deliberately disobeyed and are currently being actively resisted by the Government's lawyers (Acting USA Audrey Strauss, AUSAs Melissa Childs and John M. McEnany) and agents to deprive Mr. Ware of a fair trial as an intentional criminal overt act in furtherance of the retaliatory Jim Crow racially-motivated hate crime RICO money laundering and obstruction of justice conspiracy, (the "**Jim Crow Conspiracy**"), that involved as indirect and/or direct knowing and willful participants ***UNINDICTED CO-CONSPIRATORS*** District Judges Robert W. Sweet (**deceased**), William H. Pauley, III (**deceased**), Leonard B. Sand (**deceased**), and Barbara S. Jones; **Circuit Judges** Peter W. Hall, Robert D. Sack, Amalya L. Kearse, Robert A. Katzmann (**deceased**); and Judges Colleen McMahon, Andrew J. Peck, Michael H. Dolinger, Kent J. Dawson, Thomas W. Thrash, Jr., Margaret H. Murphy, Joyce Bihary, C. Ray Mullins, Wendy L. Hagenau, Gerald B. Tjoflat, Stanley Marcus, Charles R. Wilson, Adelburto Jordan, Loretta Preska, Linda T. Walker, Orinda D, Evans, Gerrilyn G. Brill, and Clayton Scofield; **Government prosecutors** employed by the USAO; and **SEC lawyers** Jeffrey B. Norris, Spencer C. Barasch, John C. Martin, Stephen Webster, Robert Hannan, Steven Korotash, William Smith-Grieg, Joan E. McKown, and others.

[2] See Dkt. 273, 274, and 275 (05cr1115) for undisclosed and deliberately concealed and suppressed material Brady exculpatory evidence withheld by the Government's lawyers.

is materiality a sufficiency of the evidence test—"[a] defendant need not demonstrate that after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been enough left to convict." ***Kyles***, 514 U.S. at 434-35. Instead, "***a conviction must be reversed 'upon a showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict***.'" ***Mahaffy***, 693 F.3d at 127; accord ***Kyles***, 514 U.S. at 434. (emphasis added).[3]

When "deciding whether to grant a motion for a new trial," unlike when deciding a Rule 29 motion, "the judge is not required to review the evidence in the light most favorable to the prosecution." ***United States v. Walker***, 289 F. Supp. 3d 560, 567 (S.D.N.Y. 2018).   "**The prosecution**, which alone can know what is undisclosed, must be assigned the consequent responsibility to gauge **the likely net effect of all such evidence** and make disclosure when the point of 'reasonable probability' is reached. This in turn means **that the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police**." ***Kyles***, 514 U.S. at 437. (emphasis added).

The prosecutor's good or bad faith is irrelevant: "the prosecution's responsibility for failing to disclose known, favorable evidence rising to a material level of importance is

---

[3] See Dkt. 273: the intentionally and willfully suppressed and concealed favorable SEC Brady Email that "put the case in a different light." Had the 05cr1115 grand jury and trial juries been presented with Dkt. 273 and the suppressed and concealed favorable testimony of the five (5) Caucasian SEC lawyers involved in its Las Vegas 03-0831 D. NV pre-textual litigation there is no possibility that a reasonable and rational **all-white jury** would have voted to convict Mr. Ware on fabricated conspiracy charges. The SEC and the Government's lawyers and Judges Pauley and Dawson would have been exposed for their illegal collusion and conspiracy to frame Mr. Ware in furtherance of the criminal objectives of the Jim Crow Conspiracy.

inescapable." Id. at 438. "This Case means, naturally, that … '[t]he prudent prosecutor will resolve

doubtful questions in favor of disclosure.' This is as it should be." Id. at 439 (citation omitted).

Doing so "will tend to preserve the criminal trial, as distinct from the prosecutor's private

deliberations, as the chosen forum for ascertaining the truth[4] about criminal accusations." Id. at

440 (citations omitted).

The materiality of suppressed evidence is "considered collectively, not item-by-item." Id.

at 436.[5] "[T]he government cannot satisfy its Brady obligation to disclose exculpatory evidence

by making some evidence available and claiming the rest would be cumulative." *Carriger v.*

*Stewart*, 132 F.3d 463, 481 (9th Cir. 1997) (en banc). Nor can the government rely on late

disclosures during trial, or mid-trial ad hoc remedies for such disclosures, to excuse suppression.

---

[4] The "truth" regarding 04cr1224 and 05cr1115 proceedings is that the USAO's and SEC's lawyers, and the Unindicted Co-conspirators all have been and currently are active participants in the international Hobbs Act money laundering criminal conspiracy run by NYC based LH Financial Services and **unregistered investment adviser** and **unregistered broker-dealer** Ari Rabinowitz (i.e., government trial witness in 04cr1224). The Unindicted Co-conspirators have all knowingly and willfully aided, abetted, assisted, and facilitated using the processes of the federal courts the laundering of billions of dollars in profits and proceeds generated by LH Financial Services and **unregistered broker-dealer** Alpha Capital, AG (Anstalt), see Exhibit #1 attached hereto.

[5] Taking the cumulative effects of Dkt. 273, 274, and 275 jointly there is no doubt that the outcome of the trial would have been different had the jury been permitted to hear the evidence. Which is the exact reason the Government's lawyers deliberately and in bad faith colluded and conspired and suppressed the evidence. The means and illegal and unconstitutional methods to obtain a false and bogus conviction and sentence of Mr. Ware in retaliation against Mr. Ware for his refusal to not criminally violate the federal securities laws and sign and issue fraudulent and bogus Rule 144(k) legal opinions to Judge Leonard B. Sand's clients, the 02cv2219 (SDNY) plaintiffs, judicially admitted and confessed 15 USC 77b(a)(11) **statutory underwriters** and ***unregistered broker-dealers*** legally ineligible for any Rule 144(k) or other exemption to the strict-liability registration requirements of Section 5 of the 1933 Securities Act. Cf., **SEC Release 33-7190 n. 17** (1995); see also *Berckeley*, 455 F.3d at 220 (same) (Section 2(a)(11) statutory underwriters **required to register with the SEC all distribution [public offering] of securities** pursuant to Section 5). (emphasis added).

See *United States v. Thomas*, 981 F. Supp. 2d 229, 239-40 (S.D.N.Y. 2013). Collective analysis requires assessing the effect of the entire iceberg, not merely the tip disclosed at trial. Collectively, the undisclosed evidence is material under Brady if "there is 'any reasonable likelihood' it could have 'affected the judgment of the jury.'" *Wearry v. Cain*, 136 S. Ct. 1002, 1006 (2016) (quoting *Giglio v. United States*, 405 U.S. 150, 154 (1972), and *Napue v. Illinois*, 360 U.S. 264, 271 (1959)).[6]

Furthermore, the Government commits a Brady violation when it fails to disclose the crimes committed by one of its witnesses. *Crivens v. Roth*, 172 F.3d 991 (7th Cir. 1999)[7], see n. 7, 8, infra for Zitter's suborned perjurious testimony in 04cr1224 (SDNY) regarding his crimes in conspiracy with District Judge Leonard B. Sand (SDNY) (deceased).[8] Moreover, the government

---

[6] See Exhibit #1 attached hereto.

[7] At trial in 04cr1224 under brutal cross-examination by Mr. Ware, government witnesses Ari Rabinowitz, Tr. 182-250, and Kenneth A. Zitter, Esq., both admitted and confessed to multiple criminal violations of the federal securities laws, Sections 5, 77x, and 78ff, regarding the **unregistered** sale of IVG and GPMT's securities and other victims.

[8] At trial in 1224 Zitter, testified under brutal and devastating cross-examination by Mr. Ware as follows, to wit:

1.    that he did not heed Ware's advice and proceeded to taking additional steps to conduct the illegal distribution of IVG/GPMT securities, including having Ware illegally arrested and kidnapped on September 1, 2004, GX-34 (Tr. 360-61); GX-35 (Tr. 363); GX-251 (Tr. 343);

2.    Tr. 371 (Zitter admits Ware's [09/01/2004 Atlanta, GA] arrest was illegal);

3.    Tr. 466 (Zitter stated "his motion to **punish** [threats of violence on Mr. Ware] for contempt.");

4.    **Tr. 468 (Zitter stated: "I know we [he and Judge Sand] took further action ... [b]ut we did take further actions to punish you [Ware] for contempt because there were different ....");**

5.    Tr. 456 (Zitter testified that his steps were taken to compel (extort) GPMT by holding Ware in contempt of court.

6.    Zitter testified at Tr. 457 of his steps in furtherance of the illegal [criminal] distribution of IVG/GPMT securities as follows:

Mr. Ware: What were those steps?

must adequately respond to a defendant's Brady request. Id. at 997 (Cf., Dkt. 283 and 284: Mr. Ware's Brady requests to purported "Criminal Evidence Coordinator" AUSA John M. McEnany, Esq. (SDNY)). Mr. McEnany has refused to respond regarding Mr. Ware's Brady requests, even having full knowledge of the Brady Orders entered in 04cr1224 (Dkt. 32) and 05cr1115 (Dkt. 17).[9]

In sum, a Brady violation has three components: (1) the evidence must be favorable to the accused[10], (2) the government must have suppressed it, and (3) it must be material. See ***Strickler v. Greene***, 527 U.S. 263, 281-82 (1999); accord ***United States v. Rivas***, 377 F.3d 195, 199 (2d Cir. 2004); ***United States v. Coppa***, 267 F.3d 132, 140 (2d Cir. 2001).[11]

---

Zitter: We [Judge Sand and the four plaintiffs] attempted to compel [extort] you [Mr. Ware] to issue the [GPMT free-trading] stock [in **criminal** violation of Section 4(1) and Sections 5, 77x, and 78ff].

Mr. Ware: How did you attempt to compel [extort] Mr. Ware to issue the stock?
**Zitter: By applying to [Judge Sand]  to hold you in civil contempt [kidnapping] if you [Mr. Ware] didn't do so**.

[9] "Neither party disputes that this impeachment information would have been favorable to Crivens. The state, however, argues that no violation occurred because it did not suppress or withhold this information *deliberately* and, therefore, should not be found to have violated the first aspect of the *Brady* test. We disagree. The state failed to respond adequately to Crivens' request."

[10] The Government's lawyers conspired and did knowingly, willfully, and in bad faith concealed and suppressed numerous items of material Brady exculpatory evidence ordered to be disclosed "prior to trial." See Dkt 273, 274, and 275.

[11] Dkt. 273, 274, and 275 have been suppressed to this day. The Government has never disclosed the Brady evidence regarding the 05cr1115 and 04cr1224 proceedings; the evidence was clearly favorable to Mr. Ware's litigation position there was not conspiracy and there was no securities fraud (1115); and there was no legal requirement to issue Rule 144(k) legal opinions to Section 2(a)(11) statutory underwriters (1224); and the evidence was without any doubt material. Which is why the Government's lawyers in bad faith and deliberately suppressed any evidence that undermined or impeached it risible and bogus trial theory.

Under Rule 16(a), the government has a legal duty and obligation to disclose, on request, "any relevant written or recorded statements made by the defendant ... within the possession, custody, or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government." Fed. R. Crim. P. 16(a)(1)(A).[12] Statements covered by Rule 16(a)(1)(A) include written correspondence to third persons that come into the possession of the government.[13] *See United States v. Caldwell,* 543 F.2d 1333, 1352-53 (D.C.Cir.1974), *cert. denied,* 423 U.S. 1087, 96 S.Ct. 877, 47 L.Ed.2d 97 (1976); *United States v. Bailleaux,* 685 F.2d 1105, 1113 (9th Cir.1982) (custody requirement satisfied when tape was in possession of FBI). The Rule imposes no disclosure obligation, however, when the evidence is in the hands of a person who is not a government agent, and the government has no reason to suspect that the evidence exists. *See, e.g., Thor v. United States,* 574 F.2d 215, 220-21 (5th Cir.1978) (federal government did not violate 16(a) when evidence was in the control of local police).

The duty of disclosure created by Rule 16(a) continues throughout the trial, so that "[i]f, prior to or during trial, a party discovers additional evidence or material previously requested or

---

[12] The USAO's lawyers had a Rule 16 duty to disclose all statements of alleged co-defendant Jeremy Jones made to the Securities and Exchange Comm'n, (the "**SEC**"), that were favorable (exculpatory) to Mr. Ware. Jones and the Government's 05cr1115 trial witnesses, Carlton Epps, Myron Williams, Elrico Sadler, and Charles H. Jackson, (the "**Employees**") all made statements to the that SEC, that were "believed by the Comm'n" (quoting disgraced former SEC lawyer Jeffrey B. Norris in an official SEC email sent to Jones before trial in 05cr1115 that informed Jones that " ... the reason you and the [E]mployees were not added to the Comm'n's Las Vegas lawsuit is that we believed your deposition testimony that you were not involved in any conspiracy with Mr. Ware and would not have gotten involved had you known about it ....") (emphasis added), (the "**SEC Brady Email**").

[13] See Exhibit #1-16, Rule 16 violation by the Government (04cr1224).

ordered, which is subject to discovery or inspection under this rule, such party shall promptly notify the other party or that other party's attorney or the court of the existence of the additional evidence or material." Fed R. Crim. P. 16(c); *see also* ***United States v. Stevens,*** 985 F.2d 1175, 1180 (2d Cir.1993). The "duty of `prompt notification'" is satisfied if the prosecutor tells the defendant about the statement as soon as the prosecutor becomes aware of it. ***United States v. Ferrer-Cruz,*** 899 F.2d 135, 140 (1st Cir.1990). If the government has failed to meet its obligations under Rule 16(a)(1)(A), a new trial will be required only if the defendant can show "***that the failure to disclose caused him substantial prejudice****.*" ***United States v. Stevens,*** 985 F.2d at 1181. (emphasis added).[14]

**B.     Conclusion.**

The Petitioner has presented overwhelming proof of willful and deliberate Brady and Rule 16 violations by the Government's lawyers in both 04cr1224 and 05cr1115. Material Brady and Rule 16 evidence was in bad  faith and in willful violation of the Brady Orders suppressed by the Government's lawyers as overt acts in furtherance of the RICO Hobbs Act conspiracy to obstruct

---

[14] Mr. Ware was substantially prejudiced by the USAO, and SEC's lawyers deliberate and willful and bad faith concealment and suppression of the SEC Brady Email that was required to have been disclosed "prior to trial" as ordered by the May 19, 2006, Dkt. 17, Tr. 5-6, Brady order (Pauley, J.) (05cr1115). Had Mr. Ware been allowed access to the **SEC Brady Email** all of the government's trial witnesses would have been impeached and discredited with their prior statements made to the SEC under oath. Moreover, all of the SEC's lawyers involved in the illegal and commingled Las Vegas (03-0831 D. NV) litigation if Mr. Ware would have not been denied his Sixth Amendment constitutional right to compel and confront them by District Judge Pauley's Jan. 6, 2007, Dkt. 35, order (05cr1115), with the reason the Employees were not added to the Las Vegas litigation, the trial jury would have had two conflicting views of the Government's trial theory of whether or not there was a conspiracy between Mr. Ware and the Employees; and the all-white trial jury is likely to have believed the five Caucasian SEC lawyers' version of events over the perjured and fabricated version suborned by the Government's lawyer advanced by the five black Government witnesses.

justice and launder the criminal profits and proceeds derived from the conspiracy to commit securities fraud being concealed by the SEC and USAO (SDNY)'s executive management and leadership teams. (See Exhibit ##1-1 to 1-8).

LH Financial Services and Alpha Capital, AG (Anstalt) are criminal enterprises[15] that the Government's lawyers were well aware of and actively aided, abetted, assisted, and facilitated the Hobbs Act extortion of small publicly-traded companies, and the laundering of the profits and proceeds derived from the criminal extortion conspiracy operated, directly or indirectly, by LH Financial Services, Ari Rabinowitz, Kenneth A. Zitter, Esq., convicted felon Edward M. Grushko, Esq., William H. Pauley, III, Leonard B. Sand, Robert W. Sweet, Colleen McMahon, David N. Kelley, Alexander H. Southwell, Steve R. Peikin, Robert A. Katzmann, Peter W. Hall, Barbara S. Jones, Michael J. Garcia, Joon Kim, Preet Bharara, Audrey Strauss, John M. McEnany, Melissa Childs, Maria E. Douvas, Sarah E. Paul, Katherine Polk-Failla, Steven D. Feldman, Andrew L. Fish, Amalya L. Kearse, Robert D. Sack, Andrew J. Peck, Michael H. Dolinger, Michael F. Bachner, Ari Kluger, Kilpatrick, Townsend, & Stockton, LLP,  Nicholas S. Goldin, Joan E. McKown, Thomas W. Thrash, Jr., Gerald B. Tjoflat, Margaret H. Murphy, C. Ray Mullins, M. Regina Thomas, Patricia Sinback, Joyce Bihary, Kent J. Dawson, and others known and unknown.

---

[15] See  Exhibit #1-18: April 21, 2021, FINRA email that confirmed the **unregistered broker-dealer status** of Alpha Capital, AG (Anstalt). Material Brady exculpatory evidence suppressed by the Government's lawyers that would have changed the outcome of the 04cr1224 (SDNY) proceedings: there would have been no indictment of Mr. Ware had the Government's lawyers not deliberately suppressed the unregistered broker-dealer and Section 2(a)(11) statutory underwriter status of the 02cv2219 (SDNY) plaintiffs; Cf., **SEC Release 33-7190 n. 17** (1995) (Section 2(a)(11) statutory underwriters **required to register pursuant to Section 5** with the SEC all distribution of securities). (emphasis added)

The willfully and deliberately suppressed Brady and Rule 16 evidence was material to the defense's trial theory and issue of Government fraud and prosecutorial and judicial corruption. Material to the defense trial theory there was no "offense" (required by 18 USC 3231) committed as charged in the Government's bogus and fraudulent indictments. Material to the impeachment and undermining of the Government's trial witnesses' suborned perjury and fabrication of grand jury and trial evidence. Material to establish the egregious and bad faith judicial misconduct committed by District Judges William H. Pauley, III, Leonard B. Sand, and Robert W. Sweet in furtherance of the criminal objectives of the Hobbs Act RICO obstruction of justice and money laundering conspiracy's participants' and profits and proceeds protection.

C.      **Requested relief.**

Petitioner is respectfully requesting the Court enter an Order directed to the Government's lawyers to file a written response in opposition to the claims and arguments presented in Dkt. 263 (Rule 33 motion for a new trial) no later than **July 14, 2021, at 12:00 noon**, and serve a copy of the same of the Petitioner at email address: utware007@gmail.com.

Else if no written response is filed in opposition to Dkt. 263 by **July 14, 2021 at 12:00 noon**, by the Government, the Court will consider and deem the Government consents to the Court granting the Petitioner a new trial in 04cr1224 and 05cr1115 (SDNY); and the Court will reverse and vacate the conviction and sentence entered in both 04cr1224 and 05cr1115 (SDNY); and additionally, the Court will **sua sponte,** pursuant to its supervisory powers, annul and dismiss the

04cr1224 and 05cr1115 (SDNY) indictments **<u>with prejudice</u>** for prosecutorial misconduct; and

order additional fact-finding and additional relief dependent on the fact-finding.

Respectfully submitted by:

/s/ Ulysses T. Ware

_____
Ulysses T. Ware (pro se)
July 11, 2021

**Exhibit #1-1**



# The Jewish Daily FORWARD

**Home   Sections   Blogs   Videos   Podcasts   Local   Yiddish   פֿאָרווערטס**

Breaking News

# Death of N.Y. Jewish Millionaire — Murder or Suicide?

**By Natasha Mozgovaya (Haaretz)**
Published June 21, 2010.

🖨 PRINT   ✉ EMAIL   ⊞ SHARE

The mysterious death of an Orthodox Jewish millionaire on June 9 in New York has sparked a whirlwind of rumors, even though the medical examiner ruled the death a suicide.

Solomon (Shlomo) Obstfeld fell to his death from the 19th floor of his posh Manhattan apartment, and while New York police have yet to close the case, Obstfeld's family members and close friends believe he was murdered and have hired a private investigator to look into his death.

A friend of the Obstfeld family told Haaretz on Sunday that Obstfeld, 55, was murdered as the result of a conflict with an Israeli rabbi who had cast a "pulsa denura" death curse on Obstfeld.

According to the police investigation, no ladder or chair was found near the spot from which Obstfeld plunged to his death, a fact that bolsters the family's belief that he was murdered.

At this point, however, it does not appear that police are taking the family's suspicions seriously.

Many in New York's Jewish community are wondering whether a devout Orthodox father of five would take his own life.

"Suicide is not a common act by an Orthodox person – it is forbidden in Judaism," a friend of the Obstfeld family told Haaretz. "He was a very happy and successful man, who contributed to the community. There were no signs that he suffered from depression. On the contrary, he did not leave a note, will, letter or any other sign of suicide. If he had committed suicide, he certainly would have left something behind."

According to his associates, Obstfeld had several regular business chats in the hours before his death, including a long telephone conversation with a business colleague and had recently three luxury apartments up for sale for a combined 6.5 million dollars.

A person close to Obstfeld said he had complained of an Israel rabbi living in the United States to whom he had rented an apartment at a below-market price. The rabbi allegedly did not pay the rent over a long period of time and this led to a serious feud between him and Obstfeld.

After Obstfeld evicted the rabbi, the rabbi allegedly told friends that he had cast a "pulsa dinura" death curse on Obstfeld.

A friend of Obstfeld claimed that the rabbi returned to Israel around the time of Obstfeld's death.

"We spoke with Obstfeld a lot recently, and despite the fact that the rent dispute disturbed him, he did not seem depressed and it did not seem like he had problems," Obstfeld's friend said. "He had many plans, he was young, he had a good family and good business. I have no doubt that these men [the rabbi and his associates] were behind this and I could be next in line, because they have no inhibitions."

The New York Daily News reported that Obstfeld was connected with former Israeli prime ministers Ariel Sharon and Ehud Olmert and also had ties with Austrian businessman Martin Schlaff, who attended Obstfeld's funeral.

Israeli police suspect Schlaff of having bribed Sharon and want to question him.

It has also been reported that Olmert visited Obstfeld's office two weeks before Obstfeld's death.

# Exhibit #1-2

The Alpha Capital scam is estimated to have fleeced the public of more than $3-4 billion (US Dollars). Ari Rabinowitz testified for the Government in 1224(RWS) at Tr. 206 (Ex. #5) under cross-examination by Ware as follows:

Q: Approximately how many companies have you assisted Alpha Capital with, let's say the last 5 years?

A. A good few hundred.

Q. A good few hundred?

A. Yes.

Rabinowitz further testified, Tr. 217-19, as follows:

Q: Did you on behalf of Alpha Capital invest in a company by the name Cybernaut?

A: Yes.

Q: How much did you invest in Cybernaut?

A: A few million over a few years.

Q: How much did you make on this investment?

A: We made alot of money. I don't remember.

Q: How much is alot?

A: Maybe $10 million.

Q: So you made $10 million on a [few] million investment?

A: Give or take.

Q: Now, when you started investing in [Cybernaut] wasn't the stock trading over $9 and went to 42 cents a share [after you and Alpha Capital shorted the stock]?

* * *

Taking Rabinowitz' testimony at Tr. 206, "a good few hundred" companies he and Alpha Capital AG invested in, with the amount of money Rabinowitz admitted to making on Cybernaut, Tr. 218-19, "[m]aybe $10 million," the Badian Gang's insider-trading scam has criminally profited by: (300-400 companies) multiplied by ($10,000,000) equals $3-4 billion (US Dollars) in ill-gotten gain: a continuing criminal financial enterprise operated from within the U.S. Courthouse at 500 Pearl St, New York, NY, and One St. Andrews Plaza, New York, by Art. III judicial officers and DOJ Officials and staff.

U.S. v. Ware, 04-CR-1224(RWS) and 05-CR-1115(WHP) were both brought by officials of the DOJ and SEC involved in the billion dollar insider-trading scam to protect the ill-gotten profits of the criminal enterprise,

# Exhibit #1-3



Need Password Help?

## Kenneth A. Zitter (Attorney)

No tags have been applied so far. Sign in to add some.

| Profile | Clients (24) | Dockets (29) | Patent Assignments (0) | Trademark Assignments (0) | Reviews (0) |

Kenneth A. Zitter has been involved in the following cases:

| ▾ Date Filed | Case Number | Title | Client | Role |
|---|---|---|---|---|
| 7/14/2014 | 1:15-cv-05443 | Alpha Capital Anstalt v. Oxysure Systems, Inc. et al | Alpha Capital Anstalt | Plaintiff |
| 6/1/2015 | | Westminister Securities Corporation v. Uranium Energy Corpor... | Westminister Securities Corporation | Plaintiff |
| 6/1/2015 | | Westminister Securities Corporation v. Uranium Energy Corpor... | MD David R. Holbrooke | Consolidated Pla |
| 6/1/2015 | | Westminister Securities Corporation v. Uranium Energy Corpor... | AWM Holding, L.L.C. | Consolidated Pla |
| 6/1/2015 | | Westminister Securities Corporation v. Uranium Energy Corpor... | John O'Shea | Consolidated Pla |
| 2/19/2015 | 1:15-cv-01197 | Brio Capital Master Fund, Ltd. v. Real Goods Solar, Inc. et ... | Brio Capital Master Fund, Ltd. | Plaintiff |
| 1/28/2015 | 1:15-cv-00615 | Alpha Capital Anstalt v. Real Goods Solar, Inc. et al | Alpha Capital Anstalt | Plaintiff |
| 12/15/2014 | 1:14-cv-09878 | Smithline et al v. Real Goods Solar Inc. et al | Alpha Capital Anstalt | Consolidated Pla |
| 12/15/2014 | 1:14-cv-09878 | Smithline et al v. Real Goods Solar Inc. et al | Brio Capital Master Fund, Ltd. | Consolidated Pla |
| 9/15/2011 | 1:11-cv-06458 | Alpha Capital Anstalt v. Advanced Cell Technology, Inc. | Alpha Capital Anstalt | Plaintiff |
| 12/21/2010 | 1:10-cv-09490 | Whalehaven Capital Fund, Ltd. et al v. Radient Pharmaceutica... | Whalehaven Capital Fund, Ltd. | Plaintiff |
| 11/12/2010 | 5:10-cv-01218-D | Alpha Capital Anstalt v. Ness Energy International Inc et al | Alpha Capital Anstalt | Plaintiff |
| 9/30/2010 | 7:10-cv-07493 | Szymczak v. Nissan North America Inc., | Mr. David Russell | ADR Provider |
| 9/30/2010 | 7:10-cv-07493 | Szymczak v. Nissan North America Inc., | Mr. Jay Domenic | Objector |
| 1/23/2009 | 1:09-cv-00670 | Alpha Capital Anstalt v. Advanced Cell Technology, Inc. | Alpha Capital Anstalt | Plaintiff |
| 1/7/2009 | 1:09-cv-00118 | Anwar et al v. Fairfield Greenwich Limited et al | Brian Francouer | Defendant |
| 1/7/2009 | 1:09-cv-00118 | Anwar et al v. Fairfield Greenwich Limited et al | Brian Francoeur | Consolidated Def |
| 8/19/2008 | 1:08-cv-07336-VM | Alpha Capital Anstalt v. Xechem International, Inc | Alpha Capital Anstalt | Plaintiff |
| 6/24/2008 | 1:08-cv-05686-AKH | Alpha Capital Anstalt et al v. Ness Energy International, In... | Alpha Capital Anstalt | Plaintiff |
| 6/24/2008 | 1:08-cv-05686-AKH | Alpha Capital Anstalt et al v. Ness Energy International, In... | Bristol Environmental Inc. | Plaintiff |
| 6/24/2008 | 1:08-cv-05686-AKH | Alpha Capital Anstalt et al v. Ness Energy International, In... | Ellis International, Ltd | Plaintiff |
| 4/4/2008 | 1:08-cv-03369-DAB | Alpha Capital Anstalt v. Brilliant Technologies Corporation | Alpha Capital Anstalt | Plaintiff |
| 2/14/2008 | 1:08-cv-01543-GBD | Double U Master Fund L.P. v. Millenium Biotechnologies Group... | Double U Master Fund L.P. | Plaintiff |
| 12/20/2007 | 1:07-cv-11430-CM-THK | Alpha Capital Ansalt v. Silver Dragon Resources, Inc. | Alpha Capital Ansalt | Plaintiff |
| 5/2/2007 | 1:07-cv-03493-CM | Alpha Capital Aktiengesellschaft v. Fellows Energy, Ltd. | Alpha Capital Aktiengesellschaft | Plaintiff |
| 6/28/2004 | 1:04-cv-05096 | Stonestreet Limited Partnership v. Armitec, Inc. | Stonestreet Limited Partnership | Plaintiff |
| 9/24/2003 | 03-09266 | Enron Creditors Recovery Corp., et al- Adversary Proceeding | Arthur Andersen LLP | Third Party Defer |
| 5/5/2003 | 1:03-cv-03120 | Sedona Corporation v. Ladenburg Thalmann, et al | Dr. Herbert Batliner | Defendant |
| 1/30/2000 | 1:00-cv-00648 | Auction Houses Anti., et al v. , et al | Beverly Berry | Consolidated Pla |

29 Rows Total



Issues   Laws   Cases   Pro   Home Map   Pro Se   Articles   Firms   Entities

A joint venture of Think Computer Corporation and Think Computer Foundation, a 501(c)(3) non-profit organization.
Non-Government Works Copyright © 2001-2020 Think Computer Corporation. All Rights Reserved.

About   Research Solutions   Privacy   Security   Contact Us

**Exhibit #1-4**

**Supplemental Memorandum of Law #1.0 to Dkt.263 (Rule 33 Motion for a New Trial)**

# Exhibit #1-5.1



 



Sarah E. Paul, Partner
sarahpaul@eversheds-sutherland.com
New York +1.212.301.6587

Sarah Paul's practice spans all areas of white-collar defense, with a particular focus on government, internal, and cross-border investigations, tax controversy, and cybersecurity and privacy law.  She has extensive experience litigating complex criminal and civil cases.

Sarah joined Eversheds Sutherland from the United States Attorney's Office for the Southern District of New York, where she served for over nine years as an Assistant United States





# Exhibit #1-5.2

Case 1:07-cv-03493-CM   Document 1   Filed 05/02/2007   Page 1 of 16

United States District Court
Southern District of New York
------------------------------------------------x

Alpha Capital Aktiengesellschaft,

                                    Plaintiff,

          vs.

Fellows Energy, Ltd.,

                                    Defendant.

------------------------------------------------x

## Judge McMahon

## 07 CV 3493

Complaint

RECEIVED
MAY 0 2 2007
U.S.
CASHIERS

Plaintiff Alpha Capital Aktiengesellschaft, by its attorneys, for its Complaint herein,

respectfully alleges:

the parties

1.  Plaintiff Alpha Capital Aktiengesellschaft ("Alpha Capital") is a Liechtenstein

corporation with its principal place of business Vaduz, Liechtenstein.

2.  Upon information and belief, Defendant Fellows Energy, Ltd. ("Fellows") is a Nevada

corporation with its principal place of business in Broomfield, Colorado.

# Exhibit #1-6



**Alpha Capital Ansalt**, Plaintiff

- Represented by Unknown Firm

| Name | Phone | Fax | E-Mail |
|---|---|---|---|
| Kenneth A. Zitter | +1 212 532 8000 | +1 212 679 8998 | kzitter@aol.com |

**V.**

**Silver Dragon Resources, Inc.**, Defendant

- Represented by **Dorsey & Whitney, LLP**

| Name | Phone | Fax | E-Mail |
|---|---|---|---|
| Brooke Ellen Pietrzak | +1 212 415 9200 | | pietrzak.brooke@dorsey.com |

| | |
|---|---|
| Office | Foley Square |
| Filed | 12/20/2007 |
| Jury Demand | None |
| Demand | |
| Nature of Suit | 190 - Contract: Other Contract Actions |
| Cause | § 28 U.S.C. § 1332 Diversity-Other Contract |
| Jurisdiction | Diversity |
| Disposition | Dismissed - Voluntarily |
| County | XX Out of U.S. |
| Terminated | 7/18/2008 |
| Origin | 1 |
| Reopened | None |
| Lead Case | None |
| Related Case | |
| Other Court Case | None |
| Def Custody Status | |
| Flags | CASREF, CLOSED, ECF |

Entries (34)   Calendar Events   Related (0)   Tools

Save 25% on a pre-paid one year subscription.

🗐 28  **Filed:** 7/18/2008, **Entered:** 7/18/2008          Stipulation and Order of Dismissal 🏛

STIPULATION AND ORDER OF DISMISSAL WITH
PREJUDICE, pursuant to FRCP 41(a)(1) with
prejudice and without costs or disbursements as
between plaintiff and defendant. (Signed by Judge
Colleen McMahon on 7/17/08) (cd)

# Exhibit #1-7

*UNITED STATES v. WARE*, CASE NO. 09-0851 (2D CIR.) (2010)
ON APPEAL FROM *UNITED STATES v. WARE*, 04cr1224 (Sweet, J.)
18 USC 401(3) CRIMINAL CONTEMPT PROSECUTION
APPELLANT WARE'S OPENING BRIEF

1  Moreover, being unregistered brokers-dealers operating in violation of 15 U.S.C.
2  S78o(a)(1), Tr. 204-05, Rabinowitz testified as follows at Tr. 204:

3

4  **ADMISSION OF BROKER-DEALER STATUS BY**
5  **ARI RABINOWITZ UNDER CROSS EXAMINATION.**
6
7  **Mr. Ware: What is the name of your company?**

8  **Rabinowitz: LH Financial Services.**

9  **Mr. Ware: What business is that company?**

10  **Rabinowitz: We are in the private placement business.**

11  **Tr. 206**

12  **Mr. Ware: Approximately how many companies have you assisted Alpha Capital**
13  **with over, let's say, the last five years?**

14  **Rabinowitz: A good few hundred.**

15  **Mr. Ware: A good few hundred?**

16  **Rabinowitz: Yes,**

17  Rabinowitz' testimony of being in the private placement business, and assisting
18  Alpha Capital with "a good few hundred" transactions: pursuant to 15 U.S.C.
19  §77b(a)(12) Rabinowitz and Alpha were "dealers" not eligible for any exemption
20  under Title 15 Section 4, and thus not eligible for 17 C.F.R. §240.144(k)/(Rule 144(k)
21  regarding the purchase of the Notes of IVG/GPMT (GX 1-4).

Page 4 of 12
Appellant Ware's Statement of Facts
U.S. v. Ware, 09-0851cr (2d Cir.)
Opening Appeal Brief





EVERSHEDS
SUTHERLAND

BRACEWELL

Barbara S. Jones
Partner

📞 +1.212.508.6105
📠 +1.212.938.3804



**Exhibit #1-8**

## Commission Partially Settles Microcap Fraud Manipulation Action

T. Gorman  |  📅 Posted on February 10, 2019  |
Posted in SECActions

The Commission and the staff may have returned to the office in time to pack-up. By all reports there is no deal on funding the government past the end of the week, February 15, 2015. If that continues the stalemate could begin anew at the close of business on Friday.

Since the government returned the Commission has continued to move forward in court, partially settling a large microcap fraud action – the type of case that is central to its retail investor focus. The settlements were in *SEC v. Honig,* Civil Action 18-cv-08175 (S.D.N.Y. Filed Sept. 7, 2018) with Defendants Mark Groussman, his firm Melechdavid and Alpha Capital Anstalt, a Lichtenstein hedge fund managed by an unnamed New York based unregistered investment adviser.

# Exhibit #1-9



## Exhibit #1-10



to Mr. Ware, " … I will have Judge Sand throw your ass in prison, nigger, and you will never get out … who do you think that you are fucking with … I want that stock and those opinions, else I will have the marshals arrest your ass … you better give them to us … I'm not playing around with you … don't do it and see what happens to you …."[10] (emphasis in original) (quoting Kenneth A. Zitter, Esq. in March 2003; see also the transcript of the September 1, 2004 illegal arrest (kidnapping) proceedings of Mr. Ware in Atlanta, GA, on the admitted request of Zitter and Rabinowitz, by the U.S. Marshals (NDGA) held before District Judge Thomas W. Thrash, Jr.; cf. Doc. #88 order in 2219 (Sand, J.) ruling Thrash and the Marshals lacked authority and jurisdiction to have entered Mr. Ware's law office in Atlanta, GA on September 1, 2004 demanding the issuance of bogus Rule 144(k) legal opinions and more than 10 million free-trading shares of GPMT's stock)[11].

---

States in 2002-2007 attempting to extort GPMT and Mr. Ware out of more than $500 million dollars in

# Exhibit #1-11

| 75. | 9/1/04 | Contempt of Court | Atlanta, Georgia | 10/15/04: |
| | Age: 44 | | | Dismissed pursuant to order of Judge Leonard B. Sand |



76. According to Sr. U.S. Probation Officer Atonya M. Craft of the Northern District of Georgia, on September 1, 2004, the defendant was arrested in the Northern District of Georgia in response to an order issued by the Honorable Leonard B. Sand, U.S. District Judge, Southern District of New York, in 02 CV 2219 (LBS). On December 22, 2003, Judge Sand ordered the defendants in this civil matter (which included the defendant) to deliver Silver Screen Studios, Inc. common stock to honor all of the conversion requests for Group Management Corp. or Silver Screen Studios, Inc. stock duly submitted by the plaintiffs. On June 21, 2004, Judge Sand issued a warrant for the defendant's arrest for contempt of court, for failure to obey the December 22, 2003, order. This arrest order indicated that the defendant was to be arrested by the U.S. Marshals Service and detained until the defendant purged himself of contempt by delivering the above-referenced

## Sept. 1, 2004 kidnapping

WARE, ULYSSES THOMAS

15

P47014 - C. Tyler

common stock. On July 1, 2004, the defendant was arrested by the U.S. Marshals Service in the Northern District of Georgia. He appeared before the Honorable Thomas W. Thrash, Jr., in that district, refused to purge himself of contempt and offered no acceptable reason to prevent enforcement of the contempt order. On September 2, 2004, the Honorable Thomas W. Thrash, Jr., ordered the defendant to remain in the custody of the U.S. Marshals Service until he purged himself of contempt or was ordered released by either Judge Thrash or Judge Sand. The defendant's request for bond was granted, and he was released on September 3, 2004, after posting $150,000 in cash and a $100,000 bond, cosigned by two other individuals.

77. On September 28, 2004, the Honorable Leonard B. Sand vacated the June 21, 2004, order in part to the extent that it authorized the arrest of the defendant outside of the state of New York and more than 100 miles from the U.S. Courthouse located at 500 Pearl Street, New York, New York. The order remained in effect insofar as it could be served on the defendant in the state of New York or within 100 miles of the U.S. Courthouse located at 500 Pearl Street, New York, New York.

78. On October 7, 2004, the defendant moved to vacate and release the bail of $250,000 set on September 2, 2004. On October 15, 2004, the defendant's motion was granted by the Honorable Thomas W. Thrash, Jr.; $150,000 was refunded to the defendant, and the corporate surety bond was discharged.



**Exhibit #1-12**

Douvas Perjury
P. 18

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
- - - - - - - - - - - - - - - - - - -x
UNITED STATES OF AMERICA,                    :

                 Appellee,                   :      09-0851-cr

            v.                               :

THOMAS WARE,                                 :

            Defendant-Appellant.             :.
- - - - - - - - - - - - - - - - - - -x

        MARIA E. DOUVAS, pursuant to Title 28, United States

Code, Section 1746, hereby declares under penalty of perjury:

        1.    I am an Assistant United States Attorney in the

Office of Lev L. Dassin, Acting United States Attorney for the

Southern District of New York, and I am one of the attorneys

responsible for representing the Government in this appeal. This

affirmation is submitted in support of the Government's motion

for a 30-day extension of time in which to file its affirmation

in response to Appellant's Motion for the Government to Certify

Compliance with Brady and Giglio and Motion for Bail in 07-5222-

cr and 09-0851-cr.

        2.    This request for an extension represents the first

request for an extension by the Government in connection with

Appellant's instant motion.

        3.    Appellant has appealed from an order entered on

November 27, 2007, in the United States District Court for the

Southern District of New York, by the Honorable Robert W. Sweet,

United States District Judge, which ordered the Appellant to be

- 47

# Exhibit #1-13



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 15, 2009

By HAND
Honorable Robert W. Sweet
United States District Judge
500 Pearl Street
New York, New York 10007

Re:   United States v. Thomas Ware, 04 Cr. 1224 (RWS)

Dear Judge Sweet:

The Government respectfully responds to the defendant's July 9, 2009 application seeking referral of certain assistant U.S. Attorneys for criminal contempt prosecution based on a purported violation of this Court's August 10, 2007 Order[1] insofar as the Order concerned disclosure of exculpatory and impeachment material. As set forth below, the application is wholly without merit and should be denied.

Initially, Ware's application is yet another reminder of the following passage in a decision by then-District Judge Cabranes:

It is well documented in this district and in courts around the country that [the litigant] has attempted, through a pattern and practice of suing judges and making irrelevant and unfounded allegations about them and their families, to clog the legal system by filing countless costly and time-consuming documents which obscure the issues and place extraordinary burdens on the parties, the attorneys and the judges (who are often the subject of [the litigant's] motions for recusal). . . . It may be that [the litigant], recognizing his legal and factual problem, is attempting by his wild accusations of venal conduct on the part of all the lawyers, trustees, and bankruptcy judges involved in the administration of the estates in both Massachusetts and Connecticut, in the words of former Justice Jackson, to pound loudly on the table in the hope that if he becomes enough of a problem, that by either intimidation or weariness, he may accomplish some part of his purpose. Since he ____ ___ in bankruptcy, what does he have to lose? The result is

[1]. The Order is dated August 8, 2007 and was docketed on August 10, 2007. (See Aug. 8, 2007 Order, attached hereto).

12/16/2012

# Exhibit #1-14

Brady Enaud

that the accusations increase, the motions, pleadings, complaints, and suits multiply, courts and lawyers are buried in mountains of time-consuming paper. If there is one truth, it is that the estate will be bled white by the costs and legal fees engendered by his 'crusade.'

Discovery Ov

*In re Martin-Trigona*, 573 F. Supp. 1237, 1242 (D. Conn. 1983).[3]

Turning to Ware's July 9, 2009 application, Ware claims that this Court's August 10, 2007 Order directed the Government to produce all *Brady* and *Giglio* material by October 31, 2007. That, however, is incorrect. The face of the Order stated that "the Government shall produce all exculpatory and impeachment evidence prior to trial" (see Order at 7), as opposed to October 31, 2007. The trial began on November 14, 2007. Indeed, as the Order itself recounts, it was the defendant himself who had requested production of all exculpatory and impeachment material on this timetable. (See Order at 2.)

By *ex parte* letter submitted on or about November 9, 2007 (which was approximately one week before trial began), the Government informed this Court about certain matters it had learned about one of its trial witnesses, Jeffery Norris, including two instances when Norris was disciplined by his employer, the Securities and Exchange Commission. In its letter the Government sought a ruling that it did not need to disclose to the defendant the material described in the letter or, to the extent disclosure was required, a ruling that the material could not be used for cross-examination purposes. This procedure used by the Government for seeking this ruling was consistent both with this Court's orders and Second Circuit law. *See United States v. Kiszewski*, 877 F.2d 210, 216 (2d Cir. 1989) (approving procedure of having court conduct *in camera* review of government agent's personnel file, to determine whether any information was discoverable under *Giglio*); *United States v. Saiameh*, 152 F.3d 88, 131-32 (2d Cir. 1998) (affirming court's refusal, after *in camera* review, to disclose government witness's prior disorderly conduct violations).

On or about November 16, 2007, before Norris's direct examination began, this Court provided the defendant with a copy of the Government's November 9, 2007 letter. This Court gave the defendant time to review the letter and then heard argument from the defendant on why the material described in the letter was relevant to Norris's credibility as a witness in this case and was a proper basis for cross-examination. After hearing from Ware, this Court precluded

[3] On August 18, 2009 the Court of Appeals affirmed the securities fraud conviction of the defendant Ulysses Thomas Ware in the case before Judge Pauley, and rejected all of his claims on appeal with the exception of whether there was a factual basis for applying one of the role enhancements under the Sentencing Guidelines, as to which issue the Court of Appeals remanded. *See United States v. Ware*, __ F.3d __, 2009 WL 2512321 (2d Cir. Aug. 18, 2009). In addition, over the last several months, the Court of Appeals also has denied various motions filed by Ware, including motions for, among other things, dismissal of the indictment before Judge Pauley on grounds of "judicial corruption" and prosecutorial misconduct; referral of various AUSAs for criminal prosecution and ethics charges; referral of Circuit Judges Kearse, Sack, and Hall for criminal prosecution; various arrest warrants, and bail.

2

54

RK <

## Exhibit #1-15



Brady Fraud

P. 20

cross-examination on the matters described in the Government's letter. (*See* trial tr. 534-35, 571-75, attached hereto.) In the course of doing so, this Court stated the following: "It doesn't constitute Giglio material" (tr. 534); "[In] my view these matters do not go to veracity or truth" (tr. 573); and "I don't think it is Giglio material, but I turned it over to you so that you can – I turned the letter over to you so that you would be aware, but I don't think the material is Giglio material" (tr. 574).

Contrary to the defendant's instant claim that the Government somehow acted improperly in connection with disclosure of this information about Norris, the Government acted properly in terms of both the manner and timing of its handling of this information. Moreover, before Norris began his direct testimony, the defendant was given ample opportunity to review the Government's letter and was permitted to argue why he believed this information could be used for cross-examination. Only then did this Court preclude him from using this material to cross-examine. Thus, the Government did not act improperly and, in any event, the defendant suffered no prejudice as a result of the nature or timing of the disclosure.

In sum, as this Court repeatedly stated, the material at issue was not *Giglio* material; to the extent it was, consistent with this Court's August 10, 2007 Order and Second Circuit precedent, the Government disclosed it to the Court prior to trial for a determination as to whether it was *Giglio* material; and before precluding cross-examination using it, the Court disclosed it to the defendant and heard argument from him. Thus, the Government did not violate the Court's August 10, 2007 Order, either intentionally or unintentionally.

Accordingly, the Court should deny Ware's application for a referral of certain prosecutors for criminal contempt prosecution.

Respectfully submitted,

PREET BHARARA
United States Attorney
Southern District of New York

by:

Nicholas S. Goldin
Assistant United States Attorney
(212) 637-2334

cc:     Ulysses Thomas Ware, *pro se*
        Reg. No. 56218-019
        Atlanta Prison Camp
        PO Box 150160
        Atlanta, GA. 30315

55

3

# Exhibit #1-16

Mr. Ware: What were those steps?

Zitter: We [Judge Sand and the four plaintiffs] attempted to compel [extort] you [Mr. Ware] to issue the [GPMT free-trading] stock [in violation of Section 4(1)].

Mr. Ware: How did you attempt to compel [extort] Mr. Ware to issue the stock?

Zitter: By applying to [Judge Sand] to hold you in civil contempt [kidnapping] if you [Mr. Ware] didn't do so.

### Fact #28

At trial in 1224 the following events regarding AUSA Nicholas S. Goldin's conspiracy to obstruct justice took place:

1. AUSA Goldin made the binding judicial admission when in direct examination of Zitter at Tr. 305, Goldin, ostensibly totally ignorant to the elements of criminal securities fraud as well as §77b(a)(11), introduced into evidence GX-9, Mr. Ware's letter dated January 28, 2003 addressed to Zitter, in regard to Zitter's Hobb Act extortion attempts on Mr. Ware and GPMT (GX-52, 52A, 52B, i.e., Hobb Act extortion demands).
2. AUSA Goldin actually had Zitter read into the record at  GX-9, Tr. 305 L13, Mr. Ware's January 28, 2003 letter: "Dear Mr. Zitter, we are in receipt of a fax originating from your office requesting an **illegal issuance of [GPMT's] free trading** shares to your clients." (emphasis added).
3. AUSA Goldin's faux pas is a confession by Goldin and Zitter, that the plaintiffs through Zitter were on notice of the illegality of their actions as early as January 28, 2003, and took "steps" to further the Hobbs Act conspiracy money laundering criminal activities.
4. At Tr. 306-07, AUSA Goldin foolishly introduced into evidence GX-10 (Zitter's letter of January 29, 2003 addressed to Ware in reply to Ware's January 28, 2003 letter).
5. In GX-10 Zitter admits to taking "steps" necessary for the unregistered distribution of IVG/GPMT's securities on behalf of his clients (the four plaintiffs in 02-CV-2219(LBS)) thus, conferring §2(a)(11) statutory underwriter status on them as well.

### Fact #29

At trial in 1224 the Government via AUSAs Nicholas S. Goldin and Maria E. Douvas made the following judicial admissions, to wit:

1.      The Government admitted via its indictment ¶9-10, the Notes (GX 1-4) were sold pursuant to GX-5, the subscription agreement.

The Government introduced GX-1 and GX-5, at trial, through its own witness Rabinowitz at Tr. 182, Tr. 190 respectively; and AUSA Goldin, Tr. 252, stated as an officer of the court:

> "These are very complex areas of the law. There is no one [associated with the Government] in this courtroom [other than Mr. Ware] qualified to discuss these matters. The document [GX-5 (the subscription agreement)] speaks for itself." (emphasis added). Mr. Goldin apparently did not understand or realize exactly what para. 10.1(iv) of GX-5 was in fact speaking.

2.      Therefore, the Government's judicially admitted content -- ¶10.1(iv), requested IVG **to file a Form SB-2 registration statement within 90 days of February 7, 2001**, the purchase date of the Notes [GX 1-4], to enable the conversion shares, "to be sold on the open market without restriction" -- 'speaks for itself.'"

Hence, the Government admitted via the admissions contained in GX 1-4, 5 and through Rabinowitz's testimony:

# Exhibit #1-17



# Exhibit #1-18.1

 Gmail                                        Ulysses Ware <utware007@gmail.com>

## Alpha Capital, A.G.
2 messages

**Ombudsman's Office** <Ombuds@finra.org>                    Wed, Apr 21, 2021 at 2:51 PM
To: "UTware007@gmail.com" <UTware007@gmail.com>

Good afternoon,

Pursuant to our conversation, I have reviewed FINRA's BrokerCheck and Central Registration Depository databases and was unable to locate a FINRA member firm named Alpha Capital, A.G. that was registered with FINRA.

If you have concerns that Alpha Capital A.G. is claiming to be a FINRA member, you may want to consider filing a Regulatory Tip with FINRA's National Cause and  Financial Crimes Detection Program for further review.  Those regulatory tips warranting additional review and investigation will be subject to a regulatory response.  FINRA may forward any regulatory tips that fall outside its jurisdictional reach to the appropriate regulatory or law enforcement agencies.  In the future, you can notify FINRA of any unfair practices or violations of FINRA rules by filing a regulatory tip online via http://www.finra.org/industry/file-tip.

FINRA Regulatory Tip Form

http://www.finra.org/industry/file-tip

FINRA - Regulatory Tips

1735 K Street, NW

Washington, DC 20006-1500

Fax:  (866) 397-3290

If you require further assistance, please contact the Office of the Ombudsman at 888-700-0028 or ombuds@finra.org.

By way of background, FINRA's Office of the Ombudsman provides a neutral and confidential forum for member firms and their employees, public investors, and any other business or individual who interacts with FINRA to voice their concerns about operations, enforcement, or other FINRA activities or staff.  Individuals who are unsure of the proper channel for addressing a concern or feel that the issue cannot be resolved through other channels may also contact the Ombudsman's Office. Additional information can be found online at: http://www.finra.org/about/office-ombudsman.

*Upon conclusion of your contact with the Ombudsman's office, please take five minutes to complete our anonymous survey at https://www.surveymonkey.com/s/FINRAOmbudsman. We actively use your anonymous and confidential feedback to constantly improve and provide our visitors the best possible service.*

# Exhibit #18-1.2

5/18/2021                                         Gmail - Alpha Capital, A.G.

Regards,


**Danielle Derrick**

Associate Director

FINRA®Office of the Ombudsman

9509 Key West

Rockville, MD 20850

Tel: (888)700-0028 or (240)386-6270

Fax: (240) 386-6271



Confidentiality Notice:: This email, including attachments, may include non-public, proprietary, confidential or legally privileged information. If you are not an intended recipient or an authorized agent of an intended recipient, you are hereby notified that any dissemination, distribution or copying of the information contained in or transmitted with this e-mail is unauthorized and strictly prohibited. If you have received this email in error, please notify the sender by replying to this message and permanently delete this e-mail, its attachments, and any copies of it immediately. You should not retain, copy or use this email or any attachment for any purpose, nor disclose all or any part of the contents to any other person. Thank you.

---

**Thomas Ware** <utware007@gmail.com>                    Wed, Apr 21, 2021 at 3:56 PM
To: Ombudsman's Office <Ombuds@finra.org>
Bcc: mydefimatters@gmail.com

Thank you for the information.
[Quoted text hidden]

---

**2 attachments**

 image001.png
3K

 image001.png
3K

https://mail.google.com/mail/u/0?ik=88278c65b2&view=pt&search=all&permthid=thread-f%3A1697677152676806957&simpl=msg-f%3A16976771526...   2/2

Offices of Ulysses T. Ware
123 Linden Blvd.
Suite 9-L
Brooklyn, NY 11226

Mailed on July 11, 2021
US v. Ware, 04cr1224 and
05cr1115. Supp. Memo. of
law #1 to Dkt. 263 (1115)

The Hon. Merrick Garland (05cr1115 SDNY)
(#39)
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Ave.
Washington, D.C. 20530



CS Scanned with CamScanner

Page **33** of **33**
**July 11, 2021**
**Supplemental Memorandum of Law #1.0 to Dkt.263 (Rule 33 Motion for a New Trial)**