UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ULYSSES T. WARE, | 22-cv-3409 (ER) |
| Petitioner, | 22-cv-10566 (ER) |
| -against- | 04-cr-1224 (ER) |
| UNITED STATES OF AMERICA, | 05-cr-1115 (ER) |
| Respondent. | **AMENDED ORDER** |

Ramos, D.J.:

  Petitioner Ulysses T. Ware ("Ware") brought this *pro se* petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2241, challenging the validity of two federal convictions in this Court. Ware initially filed his petition on March 21, 2022, in the United States District Court for the Eastern District of New York; however, on April 21, 2022, the Eastern District transferred the action to this Court. No. 22-cv-3409, Doc. 22; Doc. 23.

  In his petition, Ware challenged (1) his April 30, 2007, conviction for securities fraud and conspiracy to commit securities and wire fraud, and (2) his November 21, 2007, conviction on three counts of criminal contempt of court. Among other things, the petition specifically asked the Court to: order the respondents to cease all enforcement of the final judgments in his criminal cases; vacate his convictions and sentences; grant him a new trial; dismiss the underlying indictments for several alleged violations; schedule and hold evidentiary hearings; and grant him "a compensatory civil contempt money judgment in the sum certain amount of $2.225 billion dollars." No. 22-cv-3409, Doc. 1 at 1–4.

  On December 12, 2022, the Court issued an order: (1) denying Ware's motions for the undersigned's recusal; (2) severing the petition into two separate motions brought pursuant to 28 U.S.C. § 2255, the appropriate vehicle to challenge the legality of a federal

conviction and sentence; (3) directing the Clerk of Court to open a new civil action to consider Ware's challenge to the conviction under docket number 04-cr-1224; (4) providing Ware with the opportunity to withdraw the two motions; (5) directing Ware to submit an amended motion in each action stating all grounds for relief and showing that the applications were timely; (6) dismissing the improperly named respondents; and (7) directing the Clerk of Court to terminate all other pending matters in this action.

Since then, Ware has filed a number of pleadings. *See, e.g.*, No. 22-cv-3409, Docs. 133, 150, 152, 155, 159, 161, 163, 166, 170, 177, 181, 182, 188, 202; *see also* No. 22-cv-10566, Doc. 5. However, none of those documents properly amend his *habeas corpus* motions or otherwise show—or tend to show—that his applications are timely. To the contrary, Ware's pleadings indicate that his *habeas corpus* motions are indeed time-barred, and they otherwise affirm that he was not in custody when he initially filed his petition, as required by the applicable statute. 28 U.S.C. § 2255(a) (providing that a *habeas corpus* petitioner must be in custody when he asserts his rights); *Maleng v. Cook*, 490 U.S. 488, 490 (1989) ("We have interpreted the statutory language as requiring that the habeas petitioner be 'in custody' under the conviction or sentence under attack at the time his petition is filed.") (citation omitted); *see, e.g.*, Doc. 128 ¶¶ 2, 3 (indicating that Ware was not in the physical custody of the Bureau of Prisons nor designated a federal prisoner when he filed his petition). Additionally, Ware's pleadings set out a series of implausible and fantastical allegations that are otherwise frivolous and vexatious.

For these reasons, the Court hereby denies each of Ware's pending requests, denies Ware's *habeas corpus* motions challenging his prior criminal convictions, and respectfully directs the Clerk of Court to close both cases, Nos. 22-cv-3409, 22-cv-10566.

**I.      BACKGROUND**

The Court assumes familiarity with its prior orders in Ware's actions. It restates the factual and procedural background here in light of Ware's pending motions and requests.

2

Ware has a two decade-long history as a party to numerous civil and criminal actions in this Court. Throughout that time, Ware has challenged and failed to comply with numerous orders issued by Judge Leonard B. Sand, Judge Robert W. Sweet, Judge William H. Pauley III, Judge Colleen McMahon, and the undersigned.

The first of these cases was *Alpha Capital Aktiengesellschaft et al. v. Group Management Corp. et al.*, No. 02-cv-2219, wherein several plaintiffs claimed that defendant Group Management Corp. ("GMC"), a party to a number of loan agreements, was in default of those agreements. *See* No. 1:04-cr-1224, Doc. 1 ¶¶ 9–12. Ware served as the chief executive officer of GMC. *See id.* ¶¶ 15–17. Judge Sand entered judgment against GMC on November 25, 2002, citing "Defendant's repeated and willful violations of the Court's orders, its precarious financial position, and its failure to propose any reasonable alternative to secure Plaintiffs' claims," thereby concluding that plaintiffs were entitled to recover the requested damages.[1]  *See* No. 02-cv-2219, Docs. 50, 54.

Thereafter, Judge Sand held GMC and its directors, including Ware, in civil contempt for "their disobedience of the Order and Judgment of this Court of 11/25/02." *Id.*, Doc. 58. The Court ordered Ware's arrest. *Id.*, Doc. 61. Ware continued to disregard the Court's orders throughout 2003, and Judge Sand referred the matter to the United States Attorney to prosecute criminal contempt against Ware and other defendants.[2] No. 1:04-cr-1224, Doc. 1 ¶¶ 26; No. 02-cv-2219, Docket Entry dated Dec. 4, 2003.

Thereafter, the Government brought two criminal cases against Ware. First, upon the reference from Judge Sand, the Government brought criminal contempt charges against him in 2004. *United States v. Ware*, No. 1:04-cr-1224, Doc. 1. The Government

---

[1] The Court noted that it considered the Second Circuit's "caution that default judgment is 'strong medicine.'" No. 02-cv-2219, 50. "In this case, however," the Court stated, "strong medicine is entirely appropriate." *Id.*

[2] *Alpha Capital Aktiengesellschaft et al. v. Group Management Corp. et al.* was reassigned to Judge McMahon in April 2019. In an order dated May 17, 2019, Judge McMahon reiterated the Court's multiple orders prohibiting Ware from flooding the Court with frivolous motions, letters, and memoranda. No. 02-cv-2219, 120.

subsequently brought securities fraud charges against him in 2005. *United States v. Ware*, No. 1:05-cr-1115, Doc. 7. The Court briefly discusses the convictions and subsequent litigation that stemmed from those cases.

### A. *United States v. Ware*, No. 05-cr-1115 (S.D.N.Y. Oct. 30, 2007) (*Ware I*)

On April 30, 2007, following a jury trial before Judge Pauley, Ware was convicted of securities fraud, in violation of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and conspiracy to commit securities fraud and wire fraud, in violation of 18 U.S.C. § 371. On October 26, 2007, Ware was sentenced to 97 months' imprisonment, to be followed by a three-year term of supervised release, a fine of $25,000, and forfeiture of $228,388. *See Ware I*, No. 1:05-cr-1115, Doc. 96. Ware appealed the conviction to the United States Court of Appeals for the Second Circuit, and the Second Circuit affirmed the conviction but remanded the matter for further proceedings regarding Ware's sentence—specifically for a determination regarding whether there was a sufficient factual basis for applying a four-level role enhancement under Section 3B1.1(a) of the Sentencing Guidelines. *United States v. Ware*, 577 F.3d 442 (2d Cir. 2009), *cert. denied*, 562 U.S. 995 (2010), *rehearing denied*, 562 U.S. 1174 (2011). On August 12, 2010, Judge Pauley declined to alter Ware's sentence, concluding that the four-level leadership role enhancement was warranted. *Ware I*, No. 1:05-cr-1115, Doc. 149. Ware appealed, and on January 28, 2011, the Second Circuit affirmed the judgment. *United States v. Ware*, 415 F. App'x 259 (2d Cir. 2011). Ware then filed a series of applications and motions that were unsuccessful.[3]

---

[3] On November 27, 2013, Judge Pauley issued an order directing the Clerk of Court to close all pending motions in his case and refrain from opening any new motions absent an order from the Court. *Ware I*, No. 1:05-cr-1115, Doc. 222 (S.D.N.Y. Nov. 26, 2013). Judge Pauley emphasized that after Ware was convicted, he had filed "almost one hundred *pro se* letters and motions – all equally without merit." *Id.* Ware was prohibited from filing new motions and other correspondence in *Ware I*, the criminal action, without leave of court. *Id*. Judge Sweet also cautioned Ware about burdening the Court with frivolous filings in *Ware II*, and eventually directed that no further action would be taken on his submissions. *See United States v. Ware*, No. 1:04-cr-1224 (RWS), 2014 WL 1330656, at *1 (S.D.N.Y. Mar. 28, 2014). The Second Circuit has also entered a leave-to-file sanction against Ware. *See United States v. Ware*, Nos. 07-5222 (L), 07-5670 (Con) (2d Cir. Nov. 5, 2010).

### B. *United States v. Ware*, No. 04-cr-1224 (S.D.N.Y. Feb. 2, 2009) (*Ware II*)

On November 21, 2007, following a jury trial before Judge Sweet, Ware was convicted of three counts of criminal contempt, in violation of 18 U.S.C. § 401(3), for disobeying and resisting three lawful orders entered by Judge Sand in *Alpha Capital Aktiengesellschaft v. Group Management Corp.*, No. 02-cv-2219 (LBS) (S.D.N.Y. Dec. 22, 2003). On February 2, 2009, Ware was sentenced to 97 months' imprisonment, 37 months to run concurrently with his sentence in *Ware I*, No. 05-cr-1115, and 60 months to be served consecutively. *See Ware II*, No. 1:04-cr-1224, Doc. 90. On appeal, the Second Circuit affirmed the judgment. *See United States v. Ware*, 399 F. App'x 659 (2d Cir. Nov. 4, 2010). Ware's subsequent motions and requests for reconsideration in this case were also unsuccessful.

### C. The Government's Motion Regarding Outstanding Custody Debt

More than a decade later, in May 2021, the Government filed a motion to apply money from Ware's appearance bond to his outstanding debts in *Ware I* and *Ware II*, pursuant to 28 U.S.C. § 2044 and 18 U.S.C. § 3613. *See Ware II*, No. 1:04-cr-1224, Doc. 169. It also requested that any surplus funds go toward reimbursement of the cost of his representation pursuant to the Criminal Justice Act ("CJA").[4] *Id.* The Court granted in part and denied in part the Government's motion on July 28, 2021.[5] *See United States v. Ware*, Nos. 1:04-cr-1224, 05-cr-1115 (ER), 2021 WL 3188248, at *1 (S.D.N.Y. July 28, 2021). The Court also noted that Ware made "dozens of submissions to this Court about

---

[4] While the motion was pending, both *Ware I* and *Ware II* were transferred to the undersigned. *Ware II*, No. 1:04-cr-1224, 206; *Ware I*, No. 1:05-cr-1115, 288.

[5] The Court specifically found that the Government had a sufficient interest in applying the money posted by Ware toward his outstanding fines. *Ware*, 2021 WL 3188248, at *1. It therefore granted the Government's motion as to the portion of the bail posted by Ware himself, namely, $25,000. *Id.* However, the Court noted that half of Ware's bail, the other $25,000, was posted by his mother, Mary Sue Ware. *Id.* at *2. It added that, "ordinarily," the money posted by Ms. Ware would "not be subject to § 2044 because it was not posted by Ware himself." *Id.* (citation omitted). However, because the Court was presented with evidence that Ware's mother had passed away in January 2011, the Court granted the Government's motion as to one third of the amount posted by Ms. Ware, $8,333.33, given that her Last Will and Testament bequeathed her estate to her three children—including Ware—in equal parts. *Id.*

5

issues bearing no relation to the bail motion, many of which appear to be requests to re-litigate years-old determinations in the underlying criminal cases." *Id.*, at *2. The Court further noted as follows:

> A review of the docket makes clear that this is not the first time that Ware has inundated presiding judges with frivolous and vexatious filings, and prior judges in each of these cases have specifically prohibited him from making new motions or letters without leave of the Court.

*Id.* (citation omitted).

The day after the Court issued its Opinion and Order, Ware filed two letters making applications for emergency relief and otherwise challenging the Court's jurisdiction over his cases. *See Ware II*, No. 1:04-cr-1224, Docs. 223–224. The Court thus issued an additional short order on August 5, 2021, reiterating the earlier orders of Judge Pauley and Judge Sweet wherein Ware was prohibited from opening any further motions without leave of Court. *Ware II*, No. 1:04-cr-1224, Doc. 225; *see also Ware II*, No. 1:04-cr-1224, Docs. 118, 130, 152, 160; *Ware I*, No. 1:05-cr-1115, Doc. 222.

Shortly thereafter, Ware filed a motion to reconsider the Court's decision to grant in part and deny in part the Government's motion to apply money from Ware's appearance bond to outstanding debts on August 25, 2021, which was denied several days later. *See Ware II*, No. 1:04-cr-1224, Doc. 227.

### D.  Ware's § 2241 Petition

On March 21, 2022, Ware filed a 618-page petition that included multiple attachments and memoranda of law. No. 22-cv-3409, Doc. 1. He named as respondents the United States of America; the United States Attorney General, Merrick B. Garland; six government attorneys—Lisa O. Monaco, Vanita Gupta, Damian Williams, Margaret M. Garnett, Daniel Gitner, and Audrey Strauss; the Chief Judge of this Court, Laura Taylor Swain; and the undersigned. Ware made numerous challenges to his convictions, including contentions that his 2004 and 2005 prosecutions were the product of government and judicial misconduct, he received ineffective assistance of counsel, he is

6

the target of a wide ranging conspiracy, and he is innocent of the offenses of which he was convicted. Ware sought, among other things, the dismissal of the indictments and the vacatur of his convictions in both *Ware I* and *Ware II*.

The Court severed the petition into two separate 28 U.S.C. § 2255 motions, terminated all parties that were improperly listed as respondents, and provided Ware with the opportunity to pursue the motions properly. *See* Doc. 126.

## II.      DISCUSSION

### A. The Instant Motions

In its December 12, 2022, Order, the Court directed Ware to either withdraw the two *habeas corpus* motions challenging his prior convictions or to submit an amended motion in each action stating all of his grounds for relief. Doc. 126 at 17. If Ware elected to pursue the amended motions, the Court directed him to show that they were timely filed. *Id.* It made clear that if Ware failed to comply with the Court's order within the allotted time and he could not show good cause to excuse his failure, the motions would be denied. *Id.*

Since then, Ware has not withdrawn his *habeas corpus* motions. Instead, he has once again inundated the Court with a series of meritless letters, motions, briefs, and requests. *See* Docs. 127–212. Importantly, those pleadings neither properly amend his *habeas corpus* motions nor demonstrate that such applications are timely. Rather, they indicate that: (1) Ware was not in custody at the time that he filed his *habeas corpus* petition, Doc. 127 at 1 (indicating that the Government cannot show that Ware was in custody on March 21, 2022); Doc. 128 ¶¶ 2–3 (indicating that Ware was not in custody for the purposes of 28 U.S.C. 2255(a) on March 21, 2022); and (2) Ware seeks to use his § 2255 motions to relitigate issues relating to his prior convictions—requests that are frivolous and have been repeatedly put to rest by multiple judges over the course of the past two decades, *see, e.g.*, Doc. 129 (requesting *Brady* materials for Ware's 2004 and 2005 criminal cases); Doc. 130 (same); Doc. 131 (stating that there is exists probable

cause to search the chambers of Judges Amalya L. Kearse, Robert D. Sack, Laura Taylor Swain, Debra Ann Livingston, and the undersigned); Doc. 132 (same); Doc. 133 (requesting that the Department of Justice appoint a special counsel to investigate the Attorney General of the United States as well as numerous federal officials).

Accordingly, Ware once again failed to comply with the Court's orders within the ample time provided for him to do so. At the same time, the record makes clear that each of Ware's subsequent pleadings lack an arguable basis in law and fact. Ware has continued to consume limited judicial resources in pursuit of baseless and fantastical allegations, and he has made no effort to correct the deficiencies in his *habeas corpus* applications. His motions are thus denied.

### B. Filing injunction

As the Court has previously noted, a review of this and related dockets makes clear that "this is not the first time that Ware has inundated presiding judges with frivolous and vexatious filings, and prior judges in each of those cases have specifically prohibited him from making new motions or letters without leave of Court." *Ware*, Nos. 1:04-cr-1224, 05-cr-1115 (ER), 2021 WL 3188248, at *2 (citations omitted). Accordingly, the Court will not consider any further relief sought by Ware absent an order granting him leave to file additional submissions.

Additionally, the Court hereby issues a filing injunction preventing Ware from filing any new action stemming from his criminal prosecutions in this District. It is well settled that "courts may resort to restrictive measures that except from normally available procedures litigants who have abused their litigation opportunities." *In re Martin-Trigona*, 9 F.3d 226, 228 (2d Cir. 1993). A court's power to restrict the litigation of abusive and vexatious litigants is an "ancient one" that is now codified at 28 U.S.C. § 1651(a), the All Writs Act. *Polur v. Raffe*, 912 F.2d 52, 57 (2d Cir. 1990) (quoting *In re Hartford Textile Corp.*, 681 F.2d 895, 897 (2d Cir. 1982) (per curiam) (internal quotation marks omitted)).

A "district court not only may but should protect its ability to carry out its constitutional functions against the threat of onerous, multiplicitous, and baseless litigation." *Abdullah v. Gatto*, 773 F.2d 487, 488 (2d Cir. 1985). Therefore, the Second Circuit has held that "[t]he issuance of a filing injunction is appropriate when a plaintiff abuses the process of the Courts to harass and annoy others with meritless, frivolous, vexatious or repetitive proceedings." *Lau v. Meddaugh*, 229 F.3d 121, 123 (2d Cir. 2000) (internal quotation marks and citation omitted).

In determining whether Ware's behavior merits a filing injunction the Court examines five factors:

> (1) The litigant's history of litigation and in particular whether it entailed vexatious, harassing, or duplicative lawsuits;
>
> (2) The litigant's motive in pursuing the litigation, *e.g.*, does the litigant have an objective good faith expectation of prevailing?
>
> (3) Whether the litigant is represented by counsel;
>
> (4) Whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and
>
> (5) Whether other sanctions would be adequate to protect the courts and other parties.

*Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986). Ultimately, the question is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties. *Id.*

Here, the factors weigh in favor of a filing injunction, as it is abundantly clear that Ware is likely to continue to abuse the judicial process. Over the course of more than ten years, Ware has flooded the Court's dockets with countless frivolous filings. He has repeatedly set out the same type of implausible allegations pertaining to his criminal convictions, and he has disregarded the orders of multiple judges instructing him to follow their directives and put an end to his vexatious litigation tactics. Instead of heeding the Court's warnings and orders, Ware has defiantly persisted to drown the Court with letters, motions, briefs, and requests. Time and time again, judges of this Court have

dismissed and denied those filings and have made it very clear that Ware has continued to violate the Court's directives. Ware has incurred civil and criminal sanctions, yet he has refused to put an end to his abusive behavior.

Given this extensive history, a filing injunction is warranted here. Ware is thus enjoined from filing, without leave of Court, any new action in the Southern District of New York against the United States or any current or former New York judge, official, or employee arising out of his prior federal criminal convictions.

### III. CONCLUSION

For the reasons stated herein, Ware's *habeas corpus* motions are denied. The Clerk of Court is respectfully directed to terminate all pending requests or motions in this action, No. 22-cv-3409 (ER), Docs. 133, 150, 152, 155, 159, 161, 163, 166, 170, 177, 181, 182, 188, 202. It is also directed to terminate the motion pending in No. 22-cv-10566 (ER), Doc. 5.[6] The Clerk of Court is further directed to close both cases, No. 22-cv-3409 (ER) and No. 22-cv-10566 (ER).

Because Ware has not at this time made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253. The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

It is SO ORDERED.

Dated:   April 3, 2023
         New York, New York

                                            _____
                                            EDGARDO RAMOS, U.S.D.J.

---

[6] The Clerk of Court is also respectfully directed to terminate the corresponding motion in the criminal docket, No. 04-cr-1224, Doc. 229.